1  BRETT A. AXELROD, ESQ.
   Nevada Bar No. 5859
2  **FOX ROTHSCHILD LLP**
   1980 Festival Plaza Drive, Suite 700
3  Las Vegas, Nevada 89135
   Telephone: (702) 262-6899
4  Facsimile: (702) 597-5503
5  Email: baxelrod@foxrothschild.com
   *Counsel for the Debtor*
6

| | Electronically Filed August 19, 2020 |

7                    **UNITED STATES BANKRUPTCY COURT**

8                           **DISTRICT OF NEVADA**

9  In re                                    Case No. BK-S-20-12814-mkn

10     RED ROSE, INC.,                      Jointly Administered with
                                            Case No. BK-S-20-12815-mkn
11     ☐ Affects Beachhead Roofing and Supply, Inc.   Case No. BK-S-20-12816-mkn
12     ☐ Affects California Equipment Leasing          Case No. BK-S-20-12818-mkn
          Association, Inc.                 Case No. BK-S-20-12819-mkn
13     ☐ Affects Fences 4 America, Inc.    Case No. BK-S-20-12820-mkn
       ☐ Affects James Petersen Industries, Inc.       Case No. BK-S-20-12821-mkn
14     ☐ Affects PD Solar, Inc.            Case No. BK-S-20-12822-mkn
       ☐ Affects Petersen Roofing and Solar LLC        Case No. BK-S-20-12823-mkn
15     ☐ Affects Petersen-Dean, Inc.       Case No. BK-S-20-12824-mkn
16     ☐ Affects PetersenDean Hawaii LLC   Case No. BK-S-20-12825-mkn
       ☐ Affects PetersenDean Roofing and Solar        Case No. BK-S-20-12826-mkn
17        Systems, Inc.                     Case No. BK-S-20-12827-mkn
       ☐ Affects PetersenDean Texas, Inc.  Case No. BK-S-20-12829-mkn
18     ☐ Affects Red Rose, Inc.            Case No. BK-S-20-12831-mkn
19     ☐ Affects Roofs 4 America, Inc.     Case No. BK-S-20-12833-mkn
       ☐ Affects Solar 4 America, Inc.
20     ☐ Affects Sonoma Roofing Services, Inc.   Chapter 11
21     ☐ Affects TD Venture Fund, LLC
       ☐ Affects Tri-Valley Supply, Inc.   **DEBTORS' MOTION FOR APPROVAL**
22     ☒ Affects All Debtors               **OF COMPROMISE, PURSUANT TO**
                                            **FED. R. BANKR. P. 9019, BY AND**
23                                          **AMONG TD VENTURE FUND, LLC,**
                                            **JAMES P. PETERSEN, TRICIA YEH**
24                                          **PETERSEN AND ACF FINCO I, LP**
25                                          Hearing Date:    September 17, 2020
26                                          Hearing Time:    9:30 a.m.
27
28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1

Active\113153289

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    Petersen-Dean, Inc. ("PDI"), Beachhead Roofing & Supply, Inc., California Equipment

2    Leasing Association, Inc., Fences 4 America, Inc., James Petersen Industries, Inc., PD Solar, Inc.,

3    Petersen Roofing and Solar LLC, PetersenDean Hawaii LLC, PetersenDean Roofing and Solar

4    Systems, Inc., PetersenDean Texas, Inc., Red Rose, Inc., Roofs 4 America, Inc., Solar 4 America,

5    Inc., Sonoma Roofing Services, Inc., TD Venture Fund, LLC ("TD Venture"), and Tri-Valley

6    Supply, Inc., the debtors and debtors in possession (collectively, the "Debtors"), in the above

7    captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"), hereby file this motion

8    (the "Motion") for the entry of an order, pursuant to Bankruptcy Rule 9019(a)[1], approving the

9    *Settlement Agreement and Release of all Claims* ("Settlement Agreement") executed July 30, 2020

10    by and between debtor TD Venture, James P. Petersen ("J. Petersen"), Tricia Yeh Petersen ("T.

11    Petersen") and ACF Finco I, LP ("ACF" or "Lender" and collectively with TD Venture, J. Petersen,

12    and T. Petersen, the "Settling Parties").  The Settlement Agreement resolves any claims or disputes

13    between the Settling Parties, including the guaranteed obligations of TD Venture, J. Petersen, and T.

14    Petersen (collectively, the "Guarantors") to the Lender.    The Settlement Agreement also

15    beneficially affects the remaining Debtors as its approval is a condition precedent for ACF to be

16    willing to enter into a restructuring support agreement that will lead to a consensual plan of

17    reorganization.  Without the support of ACF, these Debtors will be unable to reorganize.

18    By this Motion, Debtors request approval of the Settlement Agreement and authorization

19    from the Court to take all actions contemplated by the Settlement Agreement (as described below).

20    The Motion is made and based upon the following memorandum of points and authorities, the

21    *Declaration of Jeffrey C. Perea* (the "Perea Declaration") filed concurrently herewith, the papers

22    and pleadings on file with the Court in these Chapter 11 Cases, and any oral arguments the Court

23    ///

24    ///

25    ///

26

27    [1] All references to "chapter" and "section" herein shall be to the "Bankruptcy Code" appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local

28    Rules of Bankruptcy Practice of the U.S. Bankruptcy Court for the District of Nevada.

2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    may entertain at the hearing on the Motion.  A true and correct copy of the Settlement Agreement

2    is attached as **Exhibit 1** to the Perea Declaration.

3         DATED this 19th day of August 2020.

4    **FOX ROTHSCHILD LLP**

5         By: _____*/s/Brett A. Axelrod*_____

6           BRETT A. AXELROD, ESQ.
       Nevada Bar No. 5859

7           1980 Festival Plaza Drive, Suite 700
       Las Vegas, Nevada 89135

8           *Counsel for Debtors*

9

10

11    **MEMORANDUM OF POINTS AND AUTHORITIES**

12    **I.**

13    **PRELIMINARY STATEMENT**

14         1.     The Settlement Agreement provides a comprehensive resolution of the disputes

15    between the Settling Parties.  Moreover, the Settlement Agreement is necessary for the Debtors to

16    have the continued use of cash collateral from ACF, and it also forms the foundation for a

17    consensual plan and path towards confirmation.  Therefore, the Settlement Agreement should be

18    approved because it is in the best interests of the Debtors' estates and creditors.

19    **II.**

20    **JURISDICTION**

21         2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

22    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

23         3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

24         4.     The statutory bases for the relief requested herein are Bankruptcy Code section 105

25    and Bankruptcy Rule 9019(a).

26

27

28

3

Active\113153289

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## III.

## FACTUAL BACKGROUND

**A.    General Background**

5.    On June 11, 2020 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby initiating the Chapter 11 Cases.

6.    Debtors are continuing in possession of their property and are operating and managing their business, as debtors in possession, pursuant to Bankruptcy Code sections 1107 and 1108. See generally Chapter 11 Case Docket.

7.    On June 23, 2020, this Court entered its Order directing the joint administration of the above-captioned Chapter 11 Cases. See Dkt. No. 94, Case No. bk-s-20-12814-mkn.

8.    On June 27, 2020, the United States Trustee for the District of Nevada appointed the Official Committee of Unsecured Creditors (the "Committee") for Debtors Red Rose, Inc., PD Solar, Inc., PDI, PetersenDean Hawaii LLC, PetersenDean Roofing and Solar Systems, Inc., and PetersenDean Texas, Inc. See Dkt. No. 151.

9.    The factual background relating to Debtors' commencement of the Chapter 11 Cases is set forth in detail in the *Omnibus Declaration of Jeffrey Perea in Support of First Day Motions* [Dkt. 20, Case no. BK-S-20-12814-mkn] (the "Omnibus Declaration"), which is incorporated herein by reference in its entirety.[2]

**B.    The Guaranteed Obligations and the Settlement Agreement**

10.    On June 29, 2017, Borrowing Debtors[3] and Lender entered into that certain Loan and Security Agreement (the "Loan Agreement"), pursuant to which Lender extended loans (the " Loan") to Borrowing Debtors under a revolving credit facility at an aggregate principal sum of no

---

[2] All capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Omnibus Declaration.

[3] California Equipment Leasing Association, Inc.; Fences 4 America, Inc.; PD Solar, Inc.; Petersen-Dean, Inc.; PetersenDean Hawaii, LLC; PetersenDean Roofing and Solar Systems, Inc.; PetersenDean Texas, Inc.; Red Rose, Inc.; Roofs 4 America, Inc.; Solar 4 America, Inc.; Sonoma Roofing Services, Inc.; and Tri-Valley Supply, Inc. are both borrowers under the ACF Loan Agreement (defined above) and debtors in the above-captioned bankruptcy cases (collectively, the "Borrowing Debtors").

Active\113153289

greater than $30 million which, by subsequent amendment, was increased to $35,000,000 (the "Revolving Credit Note"). See Perea Declaration, ¶ 6.

11.   The Loan Agreement, among other things, granted ACF a security interest in all of Borrowing Debtors' personal property in order to secure Borrowing Debtors' obligations under the ACF Loan Agreement (the "ACF Collateral"), including, but not limited to: all cash, Money (as defined in Section 1-201(24) of the UCC), Accessions, Accounts (including without limitation all Receivables and unearned premiums with respect to insurance policies insuring any of the Collateral and claims against any Person for loss of, damage to, or destruction of any or all of the Collateral), Certificates of Title, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Health-Care-Insurance Receivables, Instruments, Inventory, Investment Property, Letter-Of-Credit Rights, Proceeds, Records, Software and Supporting Obligations, and all rights to payment for money or funds advanced or sold. See Perea Declaration, ¶ 7.

12.   The Borrowing Debtors' obligations to ACF are further secured by that certain Collection Account Agreement, dated June 16, 2017, entered into between Borrowing Debtors, ACF and Wells Fargo Bank, National Association (the "Bank"), pursuant to which Borrowing Debtors granted ACF control over all of Borrowing Debtors' deposit accounts held at the Bank. See Perea Declaration, ¶ 8.

13.   As of June 30, 2020, ACF asserts that the Borrowers owe ACF the approximate amount of $28.4 million (the "ACF Secured Claim"), which sum ACF alleges is properly secured by a valid, perfected and enforceable first priority security interest in the ACF Collateral. See Perea Declaration, ¶ 9.

14.   On or about June 22, 2018, as a result of a covenant violation arising from a loan to J. Petersen, and in exchange for an interest rate reduction in the Loan and an extension of the Revolving Credit Termination Date under the Loan Agreement, and certain other covenant relief, J. Petersen executed that certain Amended and Restated Continuing Guaranty dated June 22, 2018 (together with all amendments, restatements, supplements and other modifications thereto, the "Petersen Guaranty"), whereby J. Petersen agreed to guarantee the Borrowing Debtors' obligations

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\113153289

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1   under the Loan, the Loan Agreement and all other agreements entered into in connection with the

2   Loan by Borrowing Debtors, as amended, restated, supplemented or otherwise modified from time

3   to time (the "Loan Documents"), including without limitation, all promissory notes and security

4   agreements (the "Petersen Guaranteed Obligations"). J. Petersen is the founder of PDI. See Perea

5   Declaration, ¶ 10.

6        15.    On or about November 15, 2018, in exchange for accommodations by Lender to

7   Borrowing Debtors, TD Venture executed that certain Continuing Guaranty (Secured by Deed of

8   Trust) dated November 15, 2018 (together with all amendments, restatements, supplements and

9   other modifications thereto, the "TD Venture Guaranty" and, together with the Petersen Guaranty,

10  the "Guaranties"), whereby TD Venture agreed to guarantee the Borrowing Debtors' obligations

11  under the Loan, the Loan Agreement  (the "TD Venture Guaranteed Obligations" and, together with

12  the Petersen Guaranteed Obligations, the "Guaranteed Obligations"). TD Venture is an affiliate of

13  PDI and was the acquisition entity for pursuing certain transactions, including solar and roofing

14  company purchases. However, TD Venture has no employees, nor does it install any roofing/solar

15  projects. See Perea Declaration, ¶ 11.

16       16.    The Petersen Guaranty is secured by (i) that certain Deed of Trust, Assignment of

17  Rents, Security Agreement and Fixture Filing, dated November 15, 2018, granted by J. Petersen and

18  T. Petersen (collectively, the "Trustors") in favor of Lender (the "Truckee Deed of Trust"),

19  encumbering that certain property located in the County of Placer, State of California, more

20  particularly described in the Truckee Deed of Trust (the "Truckee Property"), and (ii) that certain

21  Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, dated November 15,

22  2018, granted by the Trustors in favor of Lender (the "Aptos Deed of Trust"), encumbering that

23  certain property located in the County of Santa Cruz, State of California, more particularly

24  described in the Aptos Deed of Trust (the "Aptos Property" and, together with the Truckee

25  Property, the "Trustors' Properties"). Payments are not being made to the senior lienholders on the

26  Trustors' Properties. See Perea Declaration, ¶ 12

27       17.    The TD Venture Guaranty is secured by that certain Mortgage, Assignment of Rents,

28  Security Agreement and Fixture Filing, dated November 15, 2018, granted by TD Venture in favor

Active\113153289

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    of Lender (the "Hawaii Mortgage"), encumbering that certain property located in the County of

2    Maui, State of Hawaii, more particularly described in the Hawaii Mortgage (the "Hawaii Property"

3    and, together with the Trustors' Properties, collectively the "Properties"). See Perea Declaration,

4    ¶ 13.

5          18.    In addition to the Hawaii Property, TD Venture also owns an unencumbered

6    membership interest in the Calistoga Ranch Club, a California Nonprofit Mutual Benefit

7    Corporation, specifically identified as being Membership No. 035 (the "Membership Interest"). See

8    Perea Declaration, ¶ 14.

9          19.    TD Venture has no revenue or other source of cash to pay the expenses required to

10   own and maintain the Hawaii Property and the Membership Interest, which exceed $350,000 on an

11   annual basis.   Annual costs for insurance, property maintenance, taxes and other expenses exceed

12   $200,000 for the Hawaii Property alone.   Another $136,000 is payable in annual debt service for a

13   $3.5 million mortgage loan secured by the Hawaii Property.   Payments are not being made to the

14   senior lienholder on the Hawaii  Property. Annual dues payable on the Membership Interest exceed

15   $20,000.   See Perea Declaration, ¶ 15.

16         20.    The Loan is currently in default under the Loan Documents.   The various defaults

17   alleged by the Lender, as well as various allegations of improprieties that they have made against J.

18   Petersen, are set forth in detail in the *Declaration of Andres Pinter* [Dkt. 45, Case no. BK-S-20-

19   12814-mkn].   The Lender has also opposed the Debtors' use of cash collateral on a final basis. See

20   *Secured Creditor ACF Finco I, LP's Opposition to Final Order on Emergency First Day Motion for*

21   *Interim and Final Orders Pursuant to 11 U.S.C. §§ 361, 362, 363 and 552 and Fed. R. Bankr. P.*

22   *4001(b) and 4001(d): (I) Determining Extent of Cash Collateral; (II) Authorizing Borrowing*

23   *Debtors to Use Cash Collateral and Provide Adequate Protection; (III) Granting Related Relief;*

24   *and (IV) Scheduling Final Hearing* [Dkt. 440, Case no. BK-S-20-12814-mkn].

25         21.    After significant negotiations, the Settling Parties determined that it is in their best

26   interests to settle all of their respective disputes and controversies, including all of the Guaranteed

27   Obligations and Cash Collateral disputes.   Approval of the Settlement Agreement shall also clear a

28   path forward to confirmation.   Therefore, on July 23, 2020, the Settling Parties executed the

7

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Settlement Agreement, the terms of which are outlined below.  Subject to this Court's approval, the Settlement Agreement globally resolves all disputes between the Settling Parties, including the Guaranteed Obligations.

**IV.**

**THE SETTLEMENT TERMS**

1.  The Settlement Agreement sets forth the following material terms:[4]

   a.  Guarantors and Trustors agree to execute a deed-in-lieu of foreclosure and any related documents required to vest title in the Properties in the name of Lender or its designee as more fully set forth below; provided, however, in the event that the preliminary title report on the Properties does not show title vested in the Guarantors and Trustors, as applicable, free and clear of all liens and encumbrances except for taxes which are a lien but not due and payable and liens, encumbrances, easements, covenants and restrictions of record which were of record at the time of the recording of the Deeds of Trust, including any existing deeds of trust on the Properties which were of record at the time of the recording of the Deeds of Trust, or are otherwise acceptable to Lender (the "Permitted Exceptions"), Guarantors and Trustors agree to stipulate and consent to Lender's foreclosure of any of the Properties, and not to oppose, by litigation, clouding of title or otherwise, Lender's exercise of its rights to the Properties, all as more fully set forth below.

      i.  Deed in Lieu.  Upon satisfaction of the conditions set forth in Section 3 of the Settlement Agreement, including without limitation delivery of title free and clear of all liens and encumbrances except for the Permitted Exceptions, or otherwise upon the direction of Lender, the Guarantors and Trustors shall deliver to Lender executed and notarized "grant, bargain, sale deeds" in lieu of foreclosure with respect to the Properties in the form attached as Exhibit "A" to the Settlement Agreement (each, a "Deed-In-Lieu") and to the extent applicable a customary bill of sale, assignment of contracts, licenses, permits, insurance policies and warranties as such Lender may reasonably require, certificate of non-foreign status, and any and all other documents reasonably required by Lender in connection therewith, each of which shall be in form and substance acceptable to Lender (collectively, the "Transfer Documents").  Neither Guarantors nor Trustors shall be responsible whatsoever for any costs associated with any transfer pursuant to such Transfer Documents, with all such costs to be the responsibility of Lender.  Except for contracts or other obligations expressly assumed in writing by Lender or its designee on the date of any conveyance of title to the Properties, neither Lender

---

[4] This summary is qualified by the more specific terms of the Settlement Agreement.  To the extent of any discrepancy, the Settlement Agreement controls.

8

nor their designees assume or shall be deemed to have assumed any obligations or liabilities of the Guarantors and Trustors whatsoever, and any agreements not expressly assumed within thirty (30) days of the Effective Date may be terminated by Guarantors and Trustors in their discretion.

ii.    Consensual Foreclosure/Cooperation.    In the event Guarantors and Trustors are unable to deliver title to any of the Properties free and clear of all liens and encumbrances except for the Permitted Exceptions and the condition set forth in Section 3(e) of the Settlement Agreement is not satisfied, Lender may elect to foreclose on any such Property (which Guarantors and Trustors acknowledge that Lender has the right to do), the Guarantors and Trustors, and their respective members, officers, employees, agents, representatives, and affiliates shall (i) not contest, oppose or otherwise attempt to delay or prevent such foreclosure, (ii) cooperate with Lender in all respects with respect to such foreclosure, and (iii) execute and deliver such assignments of contracts, licenses, permits, and other agreements as Lender may require, so long as such execution and delivery is at no cost to Guarantors and Trustors.    If Lender elects to proceed with a foreclosure sale on any or all of the Properties, the Guarantors and Trustors acknowledge and agree that Lender may undertake a sale of any or all of the Properties pursuant to the power of sale provided for in each of the Deeds of Trust (and a sale under the applicable Uniform Commercial Code of personal property) to an entity designated by Lender or another winning bidder.    Guarantors and Trustors hereby consent in advance to such sale and agree not to take (or suffer or permit any affiliate or any other person under their control to take) any action (i) to seek any legal or equitable remedy to prevent, delay, contest or avoid any such sale, or to contest the manner in which such sale takes place, (ii) otherwise directly or indirectly to hinder or to delay any such sale, or (iii) to conspire with any third party to do any of the foregoing.    Without limiting the generality of the foregoing, (a) Guarantors and Trustors waive the right to any injunctive relief to prevent the sale, (b) to the extent permitted by applicable law, Guarantors and Trustors waive any objection to the foreclosure proceedings or to the bid price at the foreclosure sale, (c) Guarantors and Trustors waive the right to file any post-foreclosure action to set aside the sale, (d) Guarantors and Trustors specifically agree that in light of the COVID crisis there is no equity in the Properties, and (f) Guarantors and Trustors waive the automatic stay and irrevocably consents in advance to the lifting of the automatic stay in any insolvency proceeding, including the Bankruptcy Case.    In addition, Guarantors and Trustors affirmatively agree to execute such documents as Lender shall request to confirm or ratify such sale, and shall take such other actions as Lender shall request to facilitate such sale, so long as all such actions are at no cost whatsoever to Guarantors and Trustors.    In connection with any Uniform

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

9

Active\113153289

Commercial Code sale, Guarantors and Trustors agree that ten (10) days is a reasonable period of notice of such sale.

iii. <u>No Merger Upon Deed in Lieu of Foreclosure</u>.    The Parties acknowledge and agree that execution and delivery of the Transfer Documents shall not create or constitute a merger of the Deeds of Trust with the fee title to the Properties and the liens held by Lender against the Properties created by the Deeds of Trust will remain at all times valid and continuous liens against the Properties, as applicable. Lender has specifically reserved the right to assert all claims held by Lender against the collateral from time to time.  Notwithstanding the foregoing, should Lender accept delivery of the Transfer Documents and actually record the deeds included therewith, in consideration for the transfer by Guarantors and Trustors of any or all of the Properties to Lender or Lender's designees, and subject to the terms, provisions, and conditions herein contained, upon such recordation Lender shall deliver to Guarantors and Trustors a duly executed covenant not to sue Guarantors and Trustors ("<u>Covenant Not to Sue</u>"), which Covenant Not to Sue shall be in the form attached to the Settlement Agreement as <u>Exhibit "B"</u>.

iv. <u>Bankruptcy Court Approval</u>.  TD Venture shall obtain the approval of the Settlement Agreement from this Court, including without limitation, TD Venture's agreement to transfer the Hawaii Property to Lender or its designee by Deed-In-Lieu in accordance with <u>Section 2(a)</u> of the Settlement Agreement, subject to any Permitted Exceptions, including without limitation any deed of trust encumbering the Hawaii Property.  TD Venture acknowledges and agrees that such transfer will benefit the estate of TD Venture and the other Debtors as part of Lender's agreement to allow Debtors' continued use of its cash collateral during the Bankruptcy Case.

b. <u>Membership Interest</u>.  Subject to the right of first refusal contained in <u>Section 3.5</u> of the Second Amended and Restated Bylaws of Calistoga Ranch (the "<u>Bylaws</u>"), TD Venture agrees to execute a Membership Transfer Agreement (the "<u>Assignment</u>"), which Assignment shall be in the form attached to the Settlement Agreement as <u>Exhibit "C"</u>, and any related documents required to vest title in the Membership Interest in the name of Lender or its designee.  TD Venture shall comply and fulfill the conditions for transfer of the Membership Interest set forth in <u>Section 3.5</u> of the Bylaws, including presenting the Offering Notice (as defined in the Bylaws) to the Association or Declarant, as applicable (and as such terms are defined in the Bylaws), solely to the extent required under the Bylaws.  In the event the Association or Declarant, as applicable, exercises its rights to purchase the Membership Interest pursuant to such Offering Notice under <u>Section 3.5</u> of the Bylaws (the "<u>Exercise of the Offering Notice</u>"), then TD Venture agrees that proceeds for the transfer of the Membership Interest shall be paid directly to Lender, and if TD Venture is in receipt of any proceeds for the sale of the Membership Interest, TD Venture shall hold such funds in trust for, and immediately deliver such funds to, Lender.  TD Venture shall further obtain

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

10

Active\113153289

the approval of this Court to transfer the Membership Interest, or the proceeds thereof, to Lender or its designee in accordance with Section 2(b) of the Settlement Agreeemnt.  TD Venture acknowledges and agrees that such transfer will benefit the estate of TD Venture and the other Debtors as part of Lender's agreement to allow Debtors' continued use of its cash collateral during the Bankruptcy Case.

c. <u>Covenants of Guarantors and Trustors</u>.  As a material inducement for Lender to enter into the Settlement Agreement, Guarantors and Trustors covenant and agree that:

i. Neither Guarantors nor Trustors shall directly or indirectly, interfere with the operations or governance of the Borrowing Debtors, or take any action inconsistent with the rights of Lender or the terms of the Settlement Agreement.  Until the earlier to occur of (i) the confirmation of a plan of reorganization in the Bankruptcy Case and the effective date of such confirmed plan of reorganization has occurred, or (ii) the dismissal or conversion of the Bankruptcy Case from a case under Chapter 11 of the Bankruptcy Code, Guarantors and Trustors agree to cooperate with any reasonable request by Borrowing Debtors with respect to the business operations of Borrowing Debtors, so long as such requests are either at no cost to Guarantors and Trustors, or are pursuant to an executed consulting agreement.

ii. Guarantors and Trustors will not object to or interfere in any way with, any decision by the Board of Directors of each Borrowing Debtor to wind down the businesses of the Borrowing Debtors or any other operational decisions by the Board of Directors unless such decision violates or is not consistent with the terms and conditions set forth in this Agreement.

iii. The vacant director positions on each of the Board of Directors of the Borrowing Debtors shall be filled with an independent director acceptable to Lender, in Lender's sole and absolute discretion.

iv. Neither Guarantors nor Trustors, nor any affiliate of either Guarantor or Trustor, other than the Borrowing Debtors who have filed bankruptcy who Guarantors and Trustors do not control, nor any party acting on any Guarantor's or Trustor's behalf, directly or indirectly (each, a "<u>Guarantor Party</u>"), shall do anything to circumvent a potential bankruptcy sale transaction of the Borrowing Debtors' assets through the bankruptcy process.  Without limiting the foregoing, (i) no Guarantor Party shall work directly with a third party to conduct a transaction outside of the Bankruptcy Court for the assets of the Borrowing Debtors, (ii) any sale of the assets of the Borrowing Debtors shall be conducted either through a bankruptcy sale under Section 363 of the Bankruptcy Code or through a plan of reorganization of the Debtors, and (iii) Trustors shall not go to work

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

11

Active\113153289

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

for any third party who purchases the assets of any of the Borrowing Debtors unless said purchase of the assets of any of the Borrowing Debtors is through a bankruptcy sale transaction, in which case Trustors are completely free to work with any such purchaser without limitation.

    v. From the Effective Date of the Settlement Agreement through the date the Transfer Documents are executed by Trustors and TD Venture and delivered to Lender, all rents, issues and profits received by or on behalf of Trustors or TD Venture from the Properties shall be held in trust for Lender and shall be paid to Lender within one (1) business day of receipt.

    d. After entry of a final, non-appealable order on the cash collateral motion in the Bankruptcy Case, Lender agrees to file a notice of withdrawal of the declaration of Andres Pinter, filed at docket number 45 in the Bankruptcy Case.

    e. On or before the Closing Date, the Settling Parties shall each execute that certain Mutual Release of Claims, attached to the Settlement Agreement as Exhibit "D", thereby releasing any and all claims against each other.

See Perea Declaration, Ex. 1.

## V.

## LEGAL AUTHORITY

### A.    Legal Standard.

"Compromises are a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations and internal quotation marks omitted). Accordingly, Bankruptcy Rule 9019 provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

The Court is afforded "great latitude in approving compromise agreements." Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1380-81 (9th Cir. 1986). Moreover, "[t]he law favors compromise and not litigation for its own sake . . . ." Id. at 1381. Accordingly, to approve a settlement agreement, a bankruptcy court need not conduct a mini-trial on the merits of the claims or an exhaustive

12

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1   investigation into the underlying dispute between the parties.  United States v. Alaska Nat'l Bank (In

2   re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).  It is sufficient that the court find that

3   the settlement was negotiated in good faith and that it is fair and equitable.  A&C Props., 784 F.2d

4   at 1381.

5          The Ninth Circuit has identified four factors that a bankruptcy court must consider in

6   determining whether a proposed settlement agreement is reasonable, fair and equitable:

7                  (a)     the probability of success in the litigation;

8                  (b)     the difficulties, if any, to be encountered in the matter of collection;

9                  (c)     the complexity of the litigation involved, and the expense, inconvenience and

10                         delay necessarily attending it; and

11                 (d)     the paramount interest of the creditors and a proper deference to their

12                         reasonable views in the premises.

13  A & C Props., 784 F.2d at 1381 (citations omitted).

14         In considering these factors, bankruptcy courts need only canvass the issues, not decide

15  disputed facts and questions of law.  See Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423

16  (B.A.P. 9th Cir. 1997).  "If the court were required to do more than canvass the issue[s], 'there

17  would be no point in compromising; the parties might as well go ahead and try the case.'"  Suter v.

18  Goedert (In re Suter), 396 B.R. 535, 548 (D. Nev. 2008) (quoting 10 Collier on Bankruptcy, ¶

19  9019.02).  Additionally, "while creditors' objections to a compromise must be afforded due

20  deference, such objections are not controlling."  A & C Props., 784 F.2d at 1382.  Indeed, the

21  settlement need not be the best that could have been achieved, but only must not fall "below the

22  lowest point in the range of reasonableness."  In re Pac. Gas & Elec. Co., 304 B.R. 395, 417 (Bankr.

23  N.D. Cal. 2004) (quoting In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr.

24  S.D.N.Y. 1991) (citations and internal quotation marks omitted)); accord Redwood Trust v. Am.

25  Bldg. Storage, LLC (In re Am. Bldg. Storage, LLC), No. CC-06-1259-MOPAD, 2007 WL

26  7532281, at *5 (B.A.P. 9th Cir. Apr. 2, 2007) (not for publication).

27  ///

28  ///

13

Active\113153289

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**B.     The *A&C Properties* Factors Weigh in Favor of Approving the Settlement Agreement.**

The Settlement Agreement should be approved because the A&C Properties factors favor the approval.  The Debtors believe that the Settlement Agreement is in the best interests of all of their estates and creditors and therefore should be approved.  Specifically, if the Settlement Agreement is approved, then the Lender will continue to permit the use of cash collateral in the Chapter 11 Cases on a consensual basis and allow them to proceed towards a plan of reorganization, thus saving significant legal fees and expenses associated with a cash collateral battle.  If the Settlement Agreement is not approved, the Debtors anticipate that the Lender will contest the continued use of cash collateral in the Chapter 11 Cases, and an expensive cash collateral battle will ensue.  Furthermore, by divesting the Hawaii Property and the Membership Interest through the Settlement Agreement, TD Venture will not only be able to reduce the balance of the Loan for the collective benefit of the Borrowing Debtors' estates, but it will also shed non-income producing assets that it does not have the financial wherewithal to maintain.  See Perea Declaration, ¶ 19.

Each of the A&C Properties factors is analyzed below:

- First, with respect to the probability of success in litigation, the Debtors believe that both the Borrowing Debtors and the Lender have put forth solid arguments and evidence to support their positions in the pending cash collateral fight.  While the Debtors believe that the evidence presented thus far demonstrated a reasonable likelihood of success on contested issues before the Court, there is always uncertainty with litigation, and resolving the issues will provide it and all of the other Borrowing Debtors with the ability to proceed in the Chapter 11 Cases in a manner that does not prejudice them, their estates or any other creditor.

- Second, with respect to any difficulties to be encountered in the matter of collections, this factor does not apply to this Court's analysis of the Settlement Agreement, as there are no amounts owed to TD Venture or any other Debtors which are affected by this settlement.

- Third, "the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it," is arguably the most important factor when analyzing

14

Active\113153289

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1  the pending Settlement Agreement in this matter. If the Settlement Agreement is not

2  approved or does not become effective for any reason, resolution of the pending

3  contested matters between the Borrowing Debtors and the Lender will require such a

4  substantial investment of Debtors' time and resources as to jeopardize – if not

5  destroy altogether – Debtors' ability to reorganize. See Perea Declaration, ¶ 20.

6  • Finally, when analyzing the paramount interest of the creditors and a proper

7  deference to their reasonable views in the premises, it is of utmost importance to note

8  that the Lender is far and away Debtors' largest creditor, and it has approved the

9  terms of the Settlement Agreement after extensive negotiations. The terms of the

10  Settlement Agreement were reached in good faith, and with the goal of reaching a

11  compromised resolution so that the Chapter 11 Cases can proceed. Since the cost of

12  the Settlement Agreement primarily affects TD Venture through its disposition of the

13  Hawaii Property and the Membership Interest, none of the other Debtors' estates or

14  creditors will be materially affected. See Perea Declaration, ¶¶ 15-19.

15  Therefore, it is in all of Debtors' best interests for TD Venture to proceed with the

16  Settlement Agreement on the terms set forth above and detailed in the Settlement Agreement itself.

17  **VI.**

18  **NOTICE**

19  Notice of this Motion will be served upon: (a) the Office of the United States Trustee for the

20  District of Nevada; (b) counsel to the Committee; (c) counsel to the Lender; (d) all secured

21  creditors; and (d) all parties that have filed a request for special notice in these Chapter 11 Cases,

22  pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors

23  respectfully submit that no further notice is necessary and that any additional notice should be

24  excused.

25  **VII.**

26  **CONCLUSION**

27  The Settlement Agreement should be approved for the reasons set forth above. The

28  Settlement Agreement is fair and equitable and was by all accounts negotiated in good faith and

15

Active\113153289

1    otherwise satisfactorily meets the Ninth Circuit's test for approving compromises of controversies

2    under Bankruptcy Rule 9019.

3         WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that this

4    Court enter an Order, in the form attached as **Exhibit A** hereto: (i) approving the Settlement

5    Agreement; (ii) authorizing the Debtors to take all actions contemplated by the Settlement

6    Agreement; and (iii) granting such further relief as the Court deems just and proper.

7         DATED this 19th day of August, 2020.

8                              **FOX ROTHSCHILD LLP**

9                              By: _____*/s/Brett A. Axelrod*_____

10                                 BRETT A. AXELROD, ESQ.
                                   Nevada Bar No. 5859
11                                 1980 Festival Plaza Drive, Suite 700
                                   Las Vegas, Nevada 89135
12                              *Counsel for Debtors*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

16

Active\113153289

1

**EXHIBIT A**
**\*\*PROPOSED ORDER\*\***

2

3

4

5

6

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for Debtors*

7

8

9

10

11

**UNITED STATES BANKRUPTCY COURT**

12

**DISTRICT OF NEVADA**

13

In re

Case No. BK-S-20-12814-mkn

14

RED ROSE, INC.,

Jointly Administered with
Case No. BK-S-20-12815-mkn

15

☐ Affects Beachhead Roofing and Supply, Inc.
☐ Affects California Equipment Leasing
   Association, Inc.
☐ Affects Fences 4 America, Inc.
☐ Affects James Petersen Industries, Inc.
☐ Affects PD Solar, Inc.
☐ Affects Petersen Roofing and Solar LLC
☐ Affects Petersen-Dean, Inc.
☐ Affects PetersenDean Hawaii LLC
☐ Affects PetersenDean Roofing and Solar
   Systems, Inc.
☐ Affects PetersenDean Texas, Inc.
☐ Affects Red Rose, Inc.
☐ Affects Roofs 4 America, Inc.
☐ Affects Solar 4 America, Inc.
☐ Affects Sonoma Roofing Services, Inc.
☐ Affects TD Venture Fund, LLC
☐ Affects Tri-Valley Supply, Inc.
☒ Affects All Debtors

Case No. BK-S-20-12816-mkn
Case No. BK-S-20-12818-mkn
Case No. BK-S-20-12819-mkn
Case No. BK-S-20-12820-mkn
Case No. BK-S-20-12821-mkn
Case No. BK-S-20-12822-mkn
Case No. BK-S-20-12823-mkn
Case No. BK-S-20-12824-mkn
Case No. BK-S-20-12825-mkn
Case No. BK-S-20-12826-mkn
Case No. BK-S-20-12827-mkn
Case No. BK-S-20-12829-mkn
Case No. BK-S-20-12831-mkn
Case No. BK-S-20-12833-mkn

Chapter 11

**ORDER GRANTING DEBTORS'
MOTION FOR APPROVAL OF
COMPROMISE, PURSUANT TO FED.
R. BANKR. P. 9019, BY AND AMONG
TD VENTURE FUND, LLC, JAMES P.
PETERSEN, TRICIA YEH PETERSEN
AND ACF FINCO I, LP**

Hearing Date:    September 17, 2020
Hearing Time:    9:30 a.m.

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

17

Active\113153289

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    The Court, having reviewed and considered the Debtors' Motion[5] for an order, pursuant to

2  Rule 9019 of the Federal Rules of Bankruptcy Procedure, for approval of the Settlement Agreement

3  as more fully set forth in the Motion; and upon consideration of the *Declaration of Jeffrey C. Perea*

4  in support thereof; and the Debtors having appeared by and through their counsel, Fox Rothschild

5  LLP, and all other appearances having been noted on the record; the Court having stated its findings

6  of fact and conclusions of law on the record at the hearing on the Motion, which findings of fact and

7  conclusions of law are incorporated herein by this reference in accordance with Federal Rule of

8  Civil Procedure 52, as made applicable by Bankruptcy Rule 9014; and it appearing that the relief

9  requested is warranted on the grounds, among others, that the Settlement Agreement: (a) was

10  negotiated in good faith and is fair and equitable, (b) contemplates an immediate resolution of the

11  resolves claims or disputes between the Settling Parties on terms favorable to the Debtors and their

12  estates; (c) avoids litigation which could prove to be protracted and expensive; and (d) is in the best

13  interests of the Debtors, their estates and creditors because it resolves any claims or disputes

14  between the Settling Parties without the incurrence of additional expense and paves the way for the

15  Debtors to proceed with plan formulation and confirmation; after due deliberation and sufficient

16  cause appearing therefor, it is hereby:

17    **ORDERED** that the Motion is GRANTED; and

18    **IT IS FURTHER ORDERED** that:

19    1.    The Settlement Agreement is approved;

20    2.    The Debtors are authorized to take all actions contemplated by the Settlement

21        Agreement;

22    3.    This Court shall, and hereby does, retain jurisdiction with respect to all matters

23        arising from or related to the implementation and interpretation of this Order.

24

25

26

27    [5] All capitalized, undefined terms shall have the meaning ascribed to them in the *Debtors'*
*Motion for Approval of Settlement, Pursuant to Fed. R. Bankr. P. 9019, by and Among TD Venture*

28  *Fund, LLC, James P. Petersen, Tricia Yeh Petersen and ACF Finco I, LP* ("Motion").

18

Active\113153289

1    Prepared and Respectfully Submitted by:

2    **FOX ROTHSCHILD LLP**

3    By____/s/Brett A. Axelrod_____

4        BRETT A. AXELROD, ESQ.
         Nevada Bar No. 5859

5        1980 Festival Plaza Drive, Suite 700
         Las Vegas, Nevada 89135

6        Telephone: (702) 262-6899
     *Counsel for Debtors*

7

8

     APPROVED/DISAPPROVED:

9
     **OFFICE OF THE UNITED STATES TRUSTEE**

10

11   BY: _____
         Edward M. McDonald, Jr.

12       Trial Attorney for United States Trustee,
         Tracy Hope Davis

13

14

15       **CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

     In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

16

17       ☐   The Court has waived the requirement of approval in LR 9021(b)(1).

18       ☐   No party appeared at the hearing or filed an objection to the motion

19       ☒   I have delivered a copy of this proposed order to all counsel who
             appeared at the hearing, any unrepresented parties who appeared at the
20           hearing, and each has approved or disapproved the order, or failed to
             respond, as indicated below:

21

             EDWARD M. MCDONALD, JR.,
22           OFFICE OF THE UNITED STATES
             TRUSTEE
23

24            Approved / Disapproved

25       ☐   I certify that this is a case under Chapter 7 or 13, that I have served a
             copy of this order with the motion pursuant to LR 9014(g), and that no
26           party has objected to the form or content of the order.

27                                              # # #

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

19

Active\113153289