Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
August 28, 2020

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No. BK-S-20-12814-mkn |
| RED ROSE, INC., | Jointly Administered with |
| ☐ Affects Beachhead Roofing and Supply, Inc. | Case No. BK-S-20-12815-mkn |
| ☐ Affects California Equipment Leasing Association, Inc. | Case No. BK-S-20-12816-mkn<br>Case No. BK-S-20-12818-mkn |
| ☐ Affects Fences 4 America, Inc. | Case No. BK-S-20-12819-mkn |
| ☐ Affects James Petersen Industries, Inc. | Case No. BK-S-20-12820-mkn |
| ☐ Affects PD Solar, Inc. | Case No. BK-S-20-12821-mkn |
| ☐ Affects Petersen Roofing and Solar LLC | Case No. BK-S-20-12822-mkn |
| ☐ Affects Petersen-Dean, Inc. | Case No. BK-S-20-12823-mkn |
| ☒ Affects PetersenDean Hawaii LLC | Case No. BK-S-20-12824-mkn |
| ☐ Affects PetersenDean Roofing and Solar Systems, Inc. | Case No. BK-S-20-12825-mkn<br>Case No. BK-S-20-12826-mkn |
| ☐ Affects PetersenDean Texas, Inc. | Case No. BK-S-20-12827-mkn |
| ☐ Affects Red Rose, Inc. | Case No. BK-S-20-12829-mkn |
| ☐ Affects Roofs 4 America, Inc. | Case No. BK-S-20-12831-mkn |
| ☐ Affects Solar 4 America, Inc. | Case No. BK-S-20-12833-mkn |
| ☐ Affects Sonoma Roofing Services, Inc. | |
| ☐ Affects TD Venture Fund, LLC | Chapter 11 |
| ☐ Affects Tri-Valley Supply, Inc. | |
| ☐ Affects All Debtors | **ORDER GRANTING MOTION OF DEBTOR FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, AND FOR RELATED RELIEF** |
| | Hearing Date:  August 18, 2020<br>Hearing Time:  9:30 a.m. |

Active\112660758.

Upon consideration of the *Motion of Debtor for Order Authorizing the Sale of Substantially All of Its Assets Free and Clear of All Liens, Claims and Encumbrances, and for Related Relief*, dated July 27, 2020 (the "Sale Motion") and all pleadings and declarations filed in support thereof, including the *Declaration of James Whitcomb in Support of Good Faith Findings in Connection with Debtor's Motion for Approval of Sale of Assets* filed on August 10, 2020 (ECF 679), and based thereon finding that the *Asset Purchase and Interim Management Agreement* (APA) that is the subject of the Sale Motion was negotiated, proposed and entered into by and between the Debtor and Haleakala Solar without collusion, in good faith, and from arm's-length bargaining positions,

**IT IS HEREBY ORDERED** that the Sale Motion is **GRANTED** as provided herein. All capitalized terms having the meanings ascribed to them in the Sale Motion.

**IT IS FURTHER HEREBY ORDERED** that notice of the Sale Motion as provided for therein is sufficient and other and further notice is waived pursuant to Rules 2002(a)(2) and 9007 of the Federal Rules of Bankruptcy Procedure.  No objection having been submitted in writing or otherwise that was not resolved prior to the hearing, all objections to the Sale Motion are overruled and denied.  All persons and entities given notice of the Sale Motion who failed to object timely to the relief granted hereby are hereby deemed to consent to the relief granted hereby.

**IT IS FURTHER HEREBY ORDERED** that the *Asset Purchase and Interim Management Agreement*, dated July 27, 2020 (the "APA"), between the debtor, PetersenDean Hawaii LLC ("Debtor"), on the one hand, and Haleakala Solar, Inc. and James Whitcomb, on the other hand, a copy of which as signed by the parties, with exhibits, is attached as Exhibit A hereto and is **APPROVED**. The Debtor is hereby authorized to enter into the APA on behalf of the bankruptcy estate, and pursuant to Sections 105(a), 363(b), (f) and (m), and 365 (a) and (f) of the Bankruptcy Code to sell and to assign to Haleakala Solar, Inc. (or its assignee or designee) the Assets, free and clear of all liens, claims, encumbrances and interests of any nature whatsoever, except that the proceeds of the APA (including proceeds received during the Interim Management Period) will retain their status as secured collateral of ACF without further acts required of ACF to secure or perfect such status.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

2

Active\112660758.

**IT IS FURTHER HEREBY ORDERED** that the Debtor is authorized to (a) perform under, consummate and implement the APA; (b) execute and deliver any additional instruments and documents that may be reasonably necessary to implement the APA; and (c) take such further actions as may be reasonably necessary to transfer the Assets to Haleakala Solar, Inc. and James Whitcomb (or their assignee or designee).

**IT IS FURTHER HEREBY ORDERED** that Haleakala Solar is a buyer in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code, and, as such, is entitled to the protections afforded by Section 363(m) of the Bankruptcy Code.

**IT IS FURTHER HEREBY ORDERED** that the transfer and sale of the Assets pursuant to this Order and the APA shall vest Haleakala Solar with good title to the Assets, free and clear of all liens, claims and encumbrances and interests of any nature whatsoever, except as expressly provided by this Order and in the APA, and any and all other rights, claims and interests of any nature whatsoever that may be asserted by any person or entity, including, without limitation, any entity asserting a secured claim against the Assets, other than ACF which as acknowledged above holds a perfected secured claim to the proceeds of the APA.  Any entity hereafter asserting such an interest against the Assets shall be, and hereby is, forever barred from asserting such interest against the Assets and against Haleakala Solar.

**IT IS FURTHER HEREBY ORDERED** that no sales commission or fee shall be due or payable upon closing of the sale by either Buyer or Seller given that no broker or agent was involved or engaged in connection with the sale and assignment of the Assets.

**IT IS FURTHER HEREBY ORDERED** the validity of the transactions arising under the APA as approved by this Order shall not be affected by the appointment of a trustee, the dismissal of the Debtor's case, or the conversion of the Debtor's case to one under Chapter 7 of the Bankruptcy Code.

**IT IS FURTHER HEREBY ORDERED** that any conflict between the terms and provisions of this Order and the APA shall be resolved in favor of this Order.

**IT IS FURTHER HEREBY ORDERED** that this Order shall be binding in all respects upon Haleakala Solar, James Whitcomb, the Debtor, all creditors of the Debtor, including those

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\112660758.

creditors of the Debtor who purport to hold contingent, unliquidated or disputed claims, all holders of equity interests in the Debtor, all holders of Encumbrances and any trustee that may be appointed in the Debtor's Chapter 11 case or upon any conversion of the Debtor's case to one under Chapter 7 of the Bankruptcy Code. Nothing contained in any Chapter 11 plan confirmed in the Debtor's case, or in any order confirming any such Chapter 11 plan, shall conflict with or derogate from the provisions of this Order and this Order shall control to the extent of any such conflict or derogation.

**IT IS FURTHER HEREBY ORDERED** that this Order is and shall be (i) effective as a determination that, at the Closing, any and all liens, claims and encumbrances and interests existing as to the Assets prior to the Closing Date have been unconditionally released, discharged and terminated as charges against the Assets and/or Haleakala Solar (but not as against the proceeds of the sale of the Assets to which the secured claims of ACF attach), and (ii) binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

**IT IS FURTHER HEREBY ORDERED** that the Debtor, Haleakala Solar, James Whitcomb, and all creditors, governmental units and other parties-in-interest are bound by, and shall comply with, the provisions of this Order and are hereby directed to take any and all acts appropriate to facilitate the prompt consummation of the transaction approved hereby.

**IT IS FURTHER HEREBY ORDERED** that the Releases in the APA are approved pursuant to Federal Rule of Bankruptcy Procedure 9019(a).

**IT IS FURTHER HEREBY ORDERED** that in light of the Debtor's need to consummate the sale of the Assets expeditiously in order to preserve and maximize value for the Debtor's estate and its creditors, good cause exists to waive the 14-day stays of orders provided by Rules 6004(h) and 6006(d) of the Federal Bankruptcy Rules, and this Order this Order shall be effective immediately after its entry absent a stay pending appeal of this Order.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\112660758.

**IT IS FURTHER HEREBY ORDERED** that the Court shall retain jurisdiction to enforce this order after notice and a hearing.

**IT IS SO ORDERED.**

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By: ___/s/Brett A. Axelrod_____
      BRETT A. AXELROD, ESQ.
      Nevada Bar No. 5859
      1980 Festival Plaza Drive, Suite 700
      Las Vegas, Nevada 89135
      *Counsel for Debtors*

APPROVED/~~DISAPPROVED~~:

**OFFICE OF THE UNITED STATES TRUSTEE**

By___/s/Edward M. McDonald, Jr._____
      Edward M. McDonald, Jr.,
      Trial Attorney for Tracy Hope Davis,
      United States Trustee
      Foley Federal Building
      300 Las Vegas Boulevard South, Suite 4300
      Las Vegas, Nevada 89101

APPROVED/~~DISAPPROVED~~:

**BROWN RUDNICK LLP**

By___/s/Samuel A. Schwartz_____
      Cathrine M. Castaldi, Esq.
      Max D. Schlan, Esq.
      2211 Michelson Drive Seventh Floor
      Irvine, California 92612

      Samuel A. Schwartz, Esq.
      **SCHWARTZ LAW, PLLC**
      601 East Bridger Avenue
      Las Vegas, NV  89101
*[Proposed] Counsel of the Official Committee of Unsecured Creditors*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\112660758.

APPROVED/~~DISAPPROVED~~:

**GARMAN TURNER GORDON LLP**

By: ____*/s/William M. Noall*____
      GREGORY E. GARMAN, ESQ.
      Nevada Bar No. 6654
      WILLIAM M. NOALL, ESQ.
      Nevada Bar No. 3549
      MARK M. WEISENMILLER
      Nevada Bar No. 12128
      7251 Amigo Street, Suite 210
      Las Vegas, NV 89119
*Counsel for ACF Finco I LP*


APPROVED/~~DISAPPROVED~~:

**SULLIVAN HILL REZ & ENGEL**

By: ____*/s/James P. Hill*____
      JAMES P. HILL, ESQ.
      California Bar No. 090478
      600 B Street, 17th floor
      San Diego, CA 92101
*Counsel for James Whitcomb; Haleakala Solar, Inc.; 220 Lalo Place LLC; and Halawa House of the Sun LLC*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\112660758.

## <u>CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021</u>

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐    The Court has waived the requirement of approval in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion

☒    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

<table>
<tr><td>Edward M. McDonald, Jr.<br>Trial Attorney<br>Office of the United States Trustee</td><td>Approved</td></tr>
<tr><td>Cathrine M. Castaldi, Esq.<br>Max D. Schlan, Esq.<br>BROWN RUDNICK LLP</td><td>Approved</td></tr>
<tr><td>Samuel A. Schwartz, Esq.<br>SCHWARTZ LAW, PLLC<br><i>[Proposed] Counsel of The Official<br>Committee of Unsecured Creditors</i></td><td></td></tr>
<tr><td>William Noall, Esq.<br>GARMAN TURNER GORDON<br><i>Counsel for ACF FinCo I LP</i></td><td>Approved</td></tr>
<tr><td>JAMES P. HILL, ESQ.<br>Sullivan Hill Rez & Engel, APLC<br><i>Counsel for James Whitcomb;<br>Haleakala Solar, Inc.; 220 Lalo<br>Place LLC; and  Halawa House of<br>the Sun LLC</i></td><td>Approved</td></tr>
</table>

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

FOX ROTHSCHILD LLP<br>1980 Festival Plaza Drive, Suite 700<br>Las Vegas, Nevada 89135<br>(702) 262-6899<br>(702) 597-5503 (fax)

Active\112660758.

**EXHIBIT "A"**

## <u>ASSET PURCHASE AND INTERIM MANAGEMENT AGREEMENT</u>

This ASSET PURCHASE AND INTERIM MANAGEMENT AGREEMENT (the "Agreement") is made, entered into and effective this 27th day of July 2020, at 8:00 a.m. PDT ("Effective Date") by and between James Whitcomb ("Principal"), Haleakala Solar, Inc., a Hawaii corporation ("Buyer"), on the one hand, and PetersenDean Hawaii, LLC, a Hawaii limited liability company (the "Debtor"), on the other. Principal, Buyer and Debtor are referred to collectively herein as "Parties".

## RECITALS

A.      On June 11, 2020, the Debtor, among others, filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), Case No. BK-S-20-12826-mkn (the "Bankruptcy Case"). The Bankruptcy Case is jointly administered with other affiliated entities under the lead case of *Red Rose, Inc*, Case No. 20-12814-mkn.

B.      Debtor is in the business of sales and installation of solar and/or solar hot water equipment ("Business"), and Buyer was the seller of the Business to Debtor on March 30, 2018 ("Acquisition"). Principal, the sole shareholder of Buyer, and Buyer allege that they have a variety of claims against Debtor arising from Debtor's failure to make required payments due from the Acquisition, Debtor's failure to pay to Principal compensation as an employee of Debtor and to make full reimbursement for business and related expenses, and to pay rent for use of the premises owned by limited liability companies owned and controlled by Principal upon which the Business is operated (collectively, "Claims")

C.      Pursuant to the Asset Purchase Provisions of this Agreement (Sec. 8 et seq.) Debtor and Buyer hereby intend to enter into a transaction whereby Buyer will purchase all of the operational assets of Debtor ("Assets", as defined in greater detail below, consist generally of all current contractual commitments of Debtor to customers for the purchase and installation of solar equipment, but excluding the Rejected Contracts, as defined below, all accounts receivable, all books, records and systems, all FF&E, including trucks and tools, all inventory, certain leases, and all intellectual property), offer employment to the employees of Debtor , and assume all financial and operational responsibility for the Business, upon the terms and subject to the terms and conditions set forth in this Agreement, with such purchase transaction being subject to Bankruptcy Court Approval, as provided in Sec. 14 below (the "Transaction").

D.      In order to preserve the operational viability and the going concern value of the Business, the Parties have determined that it is in the best interest of the Parties and Debtor's creditors to engage Buyer on an interim basis under the terms in this Agreement to run the Business until the Transaction can be approved by the Bankruptcy Court and closed (the "Interim Management Period"), to complete existing contracts for solar and/or solar hot water installations, and to undertake the collection of the Existing A/R, as defined below.   Buyer will undertake the operations of Debtor, and be responsible for the operating expenses of Debtor as of the Effective Date (as defined below) pursuant to the terms herein, including for such items as post-Effective Date rent on leasehold space, for payment of post-Effective Date payroll and related employee

benefits, for post-Effective Date insurance and for other direct operating costs. Commencing on the Effective Date of this Agreement (as defined below), Buyer will (i) devote commercially reasonable efforts to collect the Existing A/R (as defined below), (ii) perform on behalf of Debtor the work necessary to perform and complete the various contracts, projects or work in process entered into by Debtor prior to the Effective Date that is not yet complete as of the Effective Date (the "Unperformed Contracts", which excludes the "Rejected Contracts", as defined below).   A list of the Unperformed Contracts is attached hereto as Exhibit "A".

E.      During the Interim Management Period, Buyer will undertake to address all claims that may arise under any contract where the work has been completed prior to the Effective Date, under warranty liability or otherwise. Buyer may, on Debtor's behalf, enter into new contracts in the ordinary course of business ("New Contracts") during the Interim Management Period.  Buyer will be entitled to receive all revenue and rights to receive and collect for work performed and goods provided on all Unperformed Contracts and New Contracts from and after the Effective Date, free and clear of any liens, claims or encumbrances of creditors, including any Chapter 11 claims and any claims from debtors' DIP lender.  Buyer shall by virtue of this Agreement commence efforts to realize full value from all accounts receivable of Debtor for work completed prior to the Effective Date (the "Existing A/R", as set forth in the list attached hereto as Exhibit "B"), and collections from such Existing A/R shall be paid over to Debtor and applied to the Purchase Price" (as defined below) to the extent thereof, as provided herein.  Collections of Existing A/R in excess of the Purchase Price shall be and remain the property of Buyer, following the Closing (defined below).

F.      The Parties intend that this Agreement constitute a binding agreement to complete the Transaction, and as provided above, for Buyer to manage and operate the Business during the Interim Management Period until Bankruptcy Court Approval and entry of the Final Sale Order (as defined below) under all applicable provisions of the Bankruptcy Code.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants, agreements, representations and warranties contained in this Agreement, the Parties, intending to be legally bound, agree as follows:

**INTERIM MANAGEMENT PROVISIONS**

1.      Effectiveness of Agreement.  This Agreement is entered into on an emergency basis and subject to its full execution will be effective on the Effective Date.  The underlying sale of the Assets, as provided herein, shall not occur until and unless the Bankruptcy Court shall have entered an order approving the sale of all or substantially all of the Debtor's assets, free and clear of all encumbrances, to Buyer pursuant to section 363 and 365 of the Bankruptcy Code, including the settlement of claims and exchange of mutual releases pursuant to Bankruptcy Rule 9019 (the "Final Sale Order").  Upon the Effective Date, the Parties shall thereafter proceed in good faith to obtain the necessary approvals of the Bankruptcy Court and to complete and consummate the Transaction in accordance with the terms and conditions set forth herein.  If the foregoing conditions are not met, and the sale of the Assets to Buyer is not consummated by August 31,

2020, or such other date as may be agreed to in writing with the written consent of all Parties and ACF FINCO I, PLP ("Secured Party"), this Agreement shall at the election of either of the Parties be of no further force or effect, except as to indemnification and the rights of the Parties  as stated herein.

2.      Performance of Debtor's Obligations.

        a.      Appointment.  Subject to the terms and conditions set forth herein, and commencing as of the Effective Date, Debtor authorizes Buyer, and Buyer agrees to perform, all obligations of the Debtor under each of the Unperformed Contracts to complete the Unperformed Contracts in a satisfactory manner.  Buyer may also enter into New Contracts on behalf of Debtor in the ordinary course of business.  Debtor also authorizes Buyer, and Buyer agrees to, devote commercially reasonable efforts to the collect and into the Debtor's existing lockbox account in the control of Secured Party the Existing A/R (to the extent of the Purchase Price) and all accounts receivable of Debtor arising from work performed during the Interim Management Period.

        b.      Interim Obligations; Terms of Sale.  Commencing on the Effective Date (or as specified below) and during the Interim Management Period, Debtor grants to Buyer the right and the sole and exclusive power and authority to take all actions contemplated by this Agreement and to implement or cause to be implemented all actions necessary to carry out the performance of the Unperformed Contracts and the New Contracts, and the collection of the Existing A/R.  Without limiting the generality of the foregoing, during the term of this Agreement, Buyer shall have the authority and power, and, where specified, the duty, to undertake, in the name of the Debtor, the following actions and shall exercise such powers and authority at the cost, expense and risk of Buyer, except as otherwise specified herein:

                i.      Performance of Work Assignments.  The Buyer shall timely and fully perform all work assignments attributable to the Debtor under each of the Unperformed Contracts and the New Contracts, on the timeline and in the manner specified in the Unperformed Contracts and the New Contracts, from and after the Effective Date.  Buyer shall be under no obligation to undertake performance of, or assume, construction contracts of the Debtor where Debtor has collected prior to the Effective Date more than 50% of the total contract price, but has not commenced or completed any material portion of the work specified under the contract, and Buyer shall notify Debtor within twenty (20) days following the Effective Date of the contracts it will not undertake ("Rejected Contracts").

                ii.      Operating Costs.  Buyer shall make and be responsible for the execution of all decisions concerning the fulfillment and management of the Unperformed Contracts and the New Contracts, and the collection of the Existing A/R.  After the Effective Date, the Buyer shall contract for and pay for all services deemed advisable by Buyer, or specifically required under the Unperformed Contracts and the New Contracts, including but not limited to vendors, suppliers, subcontractors, payroll expenses, reimbursable travel and entertainment expenses, rent, and all utilities such as electricity, gas, fuel, water, sewer, and rubbish removal (collectively, "Operating Costs").  In arranging for such services and supplies, Buyer may enter into contracts for the provision thereof, provided any such contracts shall be in Buyer's own name unless specifically agreed to between the Parties, with the written consent of the Secured Party, as necessitated by the specific Unperformed Contract or New Contract.

iii.    <u>Debtor's Employees</u>.   Upon the Effective Date, Debtor acknowledges and agrees that Buyer will offer at-will employment to all of the Debtor's employees that rendered pre-Effective Date Services to Debtor, and Debtor agrees that such an offer is authorized and shall not constitute a breach of any obligation of Buyer, Principal, or any of the employees hired.   Debtor shall pay each employee in full all pay for work performed before the Effective Date (in accordance with Debtor's normal payroll practices), but Buyer will assume all responsibility to pay or credit employees for all accrued vacation, sick leave or PTO due to employees prior to the Effective Date, under the policies of Debtor (and subject to any other applicable Chapter 11 rules with respect to the payment of vacation or sick leave).   Buyer shall itself employ, pay, train, and supervise such employees at-will and in such capacities as Buyer may designate to perform the Unperformed Contracts and the New Contracts.   Buyer shall comply with all federal, state and local laws, ordinances and regulations applicable to such employees and such operations.   Buyer shall establish policies and procedures for directing all activities of the on-site employees with respect to the Unperformed Contracts and the New Contracts.   All employees of Buyer, whether full time or part-time, shall be carried on the payroll of Buyer, and shall be under the supervision, direction and control of Buyer, who shall fix their compensation and have the exclusive right to hire and discharge any and all such individuals.   Such individuals, once hired by Buyer, shall not be or be deemed to be the employees of Debtor for any purpose whatsoever.   Except as otherwise stated in this paragraph, all liabilities associated with the former Debtor's employees prior to the Effective Date shall be the sole responsibility of the Debtor and all liabilities associated with the former Debtor's employees from the Effective Date forward shall be the sole responsibility of the Buyer.

iv.    <u>Use of Tangible Personal Property and Inventory</u>.   During the Interim Management Period, Buyer shall have full use of the Debtor's real and personal property, including all trucks and tools, subject to payment of rent by the Buyer to third parties as appropriate, and Buyer shall keep all tangible personal property fully insured and maintained.   Buyer shall be able to use from inventory such equipment and supplies as may be necessary or convenient to complete the Unperformed Contracts, without reimbursement to Debtor.

v.    <u>Accounts Receivable</u>.   To complete the purchase of the Assets, Buyer, as buyer of all the Assets, will be obligated to pay a total of $1,800,000 into the Debtor's existing lockbox account in the control of Secured Party, which Buyer expects to pay from the collections of the Existing A/R from and after the Effective Date (the "Collected Amounts"). During the Interim Management Period, Buyer will use commercially reasonable efforts to collect the Existing A/R, and will provide Debtor and Secured Party with a weekly accounting of all such collections, showing the Existing A/R and the application of funds received, and shall pay into the Debtor's existing lockbox account in the control of Secured Party the full amount of the weekly collections of Existing A/R.   Buyer will receive full credit against the Purchase Price (defined below) for all Collected Amounts of Existing A/R paid over to Debtor during the Interim Management Period.   Following the Closing, Buyer will continue to use commercially reasonable efforts to collect of the Existing A/R, and will provide Debtor and Secured Party with a weekly accounting of all such collections, showing the Existing A/R and the application of funds received, and shall pay into the Debtor's existing lockbox account in the control of Secured Party the full amount of the weekly collections of Existing A/R. until the Purchase Price, without interest, is paid in full.

FINAL - 412235-v10

vi.   <u>Accounting</u>.   During the Interim Management Period, Buyer will provide Debtor and Secured Party with full and complete access to all books, records, and accounts of the Business and of Buyer, including but not limited to transmitting to Debtor, at least every two weeks, (a) an accounting of receipts, expenditures, and a summary of the work performed on the Unperformed Contracts and New Contracts entered into, and (b) a detailed accounting of all collections and the application of proceeds from the Existing A/R.  Following the Closing, Buyer will continue to provide a detailed accounting of all collections and the application of proceeds from the Existing A/R until the Purchase Price is paid in full.

vii.   <u>Contractor's License</u>. Prior to the Effective Date, Debtor has operated the Business pursuant to a contractor's license issued by the Professional & Vocational Licensing Division of the Hawaii Department of Commerce and Consumer Affairs, under which Principal is the designated Responsible Managing Employee ("RME") under Title 16 of the Hawaii Administrative Rules, §16-77-69.  During the Interim Management Period Principal shall be and remain the RME of Debtor and may also apply to be the RME of Buyer (under HAR §16-77-72(2)).  Following the Closing of the Transaction, Principal shall immediately withdraw as RME of Debtor and shall have no further responsibility with respect to the affairs of Debtor.

viii.   <u>Conditional Guarantee</u>.   The obligation to pay the Purchase Price is an unsecured contractual obligation of Buyer.  The Parties acknowledge and agree that Debtor is relying on the representation of Buyer and Principal that Buyer (or its successor in interest) will in good faith endeavor to complete its obligations under this Agreement and the Final Sale Order, and will not, so long as any portion of the Purchase Price is unpaid, divert business away from Debtor (during the Interim Management Period) or thereafter to affiliated or unaffiliated entities in which Principal has a direct or indirect current or a contingent interest.

Principal agrees to be personally liable for any unpaid portion of the Purchase Price in the event of a material breach of this subparagraph 2.b (viii), in which event : (i) whether or not Principal shall have any notice or knowledge of any of the following, Debtor may at any time, or from time to time, only with the consent of Secured Party: (a) extend or change the time of payment or performance or the manner, place, or terms of payment or performance of any of Buyer's obligations contained herein; (b) exchange, release, or surrender any collateral security, or any part of it, by whomever deposited, which is now or may later be held by Debtor in connection with any of Buyer's obligations contained herein; (c) sell or purchase any such collateral at public or private sale, or at any broker's board, in the manner permitted by law, and after all costs and expenses of every kind for collection, sale, or delivery, the net proceeds of any sale may be applied by Debtor on any of the Buyer's obligations contained herein; (d) settle or compromise with Buyer, or any other person liable, on any of the Buyer's obligations contained herein, or subordinate the payment of it, or any part of it, to the payment of any other debts or claims, that may at any time be due or owing to Debtor or any other person or corporation; (e)  release Buyer, as to all or any portion of Buyer's obligations hereby guaranteed; and (f) release, substitute or add any one or more guarantors or endorsers; (ii) no exercise, delay in exercising or non-exercise by Debtor of any right hereby given Debtor, no dealing by Debtor with Principal or another guarantor, endorser of the note evidencing the Purchase Price or any other person, and no change, impairment or release of all or a portion of Buyer's obligations under this Agreement or any amendment, supplement or relate document or suspension of any right or remedy of

5

Debtor against any person, including, without limitation, Buyer and any other such guarantor, endorser or other person, shall in any way affect any of the obligations of Principal as guarantor hereunder or any security furnished by Principal or give Principal any recourse against Debtor.  Principal acknowledges that his obligations hereunder are independent of the obligations of Buyer notwithstanding any exculpation of Buyer.  No release of Buyer or any collateral for Buyer's obligations herein, shall in any way impair any subrogation rights of Principal.

     ix. <u>Other Contractual Obligations</u>.  Buyer and Debtor are parties to that certain Asset Purchase Agreement, and Principal and Debtor are parties to that certain Executive Employment Agreement, each dated March 30, 2018, pursuant to which Debtor acquired the Business from Buyer.  Each of these agreements imposes on Buyer or Principal, respectively, certain covenants not to compete with Debtor in the Business, or solicit employees of Debtor.  Upon the Effective Date, Debtor waives the application of all such non-competition or similar provisions to the fullest extent necessary to accomplish the purposes of this Agreement during the Interim Management Period.  Upon the Closing, all continuing obligations under those agreements shall be waived permanently.

     x. <u>Completion of Transaction</u>.  Buyer and Debtor shall, immediately upon the Effective Date, prepare and file the appropriate motion(s) to approve the interim management portion of this Agreement, and in bifurcated hearings, the purchase of the Assets of Debtor and exchange of mutual releases and settlement of claims, as provided below.  The Closing shall occur no later than fifteen (15) business days following the entry of the Final Sale Order.  Buyer, its affiliates and Principal shall upon Closing, waive and release all claims they might have, including without limitation all Claims, and Seller shall waive and release all claims it may have against Buyer, its affiliates and Principal existing as of the date of Closing except for claims relating to our arising out of obligations expressly preserved or provided under this Agreement.

     xi. <u>Insurance</u>.  Buyer shall, at its sole cost and expense, maintain throughout the Interim Management Period, policies of product liability insurance and general liability insurance in an amount not less than Two Million Dollars ($2,000,000), from an underwriter acceptable to and naming as loss payees Debtor and Secured Party, and such policies shall provide they may not be cancelled without 30 days' prior written notice to Debtor and Secured Party at the address for notice as set forth herein.  Buyer shall also obtain, at its sole cost and expense, throughout the term of this Agreement, workers' compensation insurance as required by law.

     xii. <u>Use of Trade Name; Ownership of Intellectual Property</u>. During the Interim Management Period, only Buyer may do business under the name of Debtor.  Buyer's use of the trade names of Debtor is by Debtor's permission only, and the parties agree Buyer has no ownership interest in or to such trade names.  Buyer further acknowledges and agrees that all intellectual property, including any intellectual property developed by Buyer in the operation of the Business during the Interim Management Period, including but not limited to processes, know-how, data, improvements, trade secrets, logos (for use in Hawaii), trademarks (for use in Hawaii), sales and business plans, business methods, budgets, prices, costs, customer list (for Hawaii), suppliers, and similar data shall be the property of Debtor and be included in the Assets, as listed in <u>Exhibit "D"</u>, and transferred to Buyer as of the Closing.

xiii.    <u>Buyer Payments and Liabilities</u>.  Notwithstanding anything to the contrary herein, Debtor shall not be responsible for any payments to Buyer and no liabilities shall be incurred by Debtor based on this Agreement.  Buyer shall only be compensated for fulfillment of Debtor's obligations during the Interim Operating Period by retaining proceeds from operations during the Interim Operating Period and the completion of the Transaction, as set forth herein.

3.    <u>Restrictions Upon Authority of Buyer</u>.    During the Interim Management Period, Buyer is performing the Debtor's duties and obligations in and under the Unperformed Contracts.  Except upon the prior written approval of Debtor, Buyer will not, and has no authority hereunder to:  (a) permit any lien arising from Buyer's management of the Unperformed Contracts to encumber any of the Debtor's assets; (b) incur any indebtedness, obligations or expenses not to be paid by Buyer which would be binding upon Debtor (as opposed to Buyer); or (c) institute, pursue, or defend any legal actions or proceedings on behalf of Debtor, including, without limitation, any legal actions for collection of any amounts due to Buyer with respect to the Unperformed Contracts arising prior to the Effective Date.  Debtor correspondingly agrees (i) during the Interim Management Period, to maintain in good operational condition, all computer-based records, bidding software, databases, and communication systems currently in place needed for the collection of the Existing A/R, the completion of the Unperformed Contracts or to bid New Contracts and to give Buyer complete and unfettered access to all such systems and data, all files, books and records of Debtor relevant to and required in connection with the collection of the Existing A/R and the operation and management of the Unperformed Contracts and the New Contracts; (ii) to execute all documents or instruments which Buyer deems reasonably necessary or advisable to enable Buyer to properly collect the Existing A/R, perform the Unperformed Contracts and initiate the New Contracts under this Agreement; and (iii) otherwise cooperate with Buyer in all respects in connection with activities undertaken by Buyer in accordance with this Agreement, at no expense to Debtor.  Prior to and upon Closing, Debtor and Buyer will work to deliver all such records and systems pertaining specifically to Debtor's operations, separate and apart from the PetersenDean general accounting system, to Buyer, with such delivery to be completed within sixth (60) days following the Close. Debtor acknowledges and agrees that its cooperation in the delivery of such access to the Debtor data and systems is a primary component of the consideration received by Buyer to complete the Transaction.

4.    <u>Control</u>.  Until the Closing, Debtor neither reserves, nor will it exercise any control over, the methods or actual manner by which Buyer operates the Business or performs the Unperformed Contracts.  Buyer, as an independent contractor, has sole control over the methods or manner by which the Business is operated, including but not limited to, whether and on what terms to hire employees, Buyers, or other parties.  Moreover, Buyer is responsible for complying with all Federal, State, and local laws and regulations regarding the operation of the Business and the employment of any employees, including, but not limited to complying with all building codes, statutes, and regulations, including but not limited to the Americans With Disabilities Act and all similar federal, state, or municipal codes, payroll taxes, licenses, permits, workers' compensation, unemployment compensation, and temporary disability insurance.

5.    <u>Lease Obligations</u>.    Notwithstanding any other provision of this Agreement, Debtor acknowledges the Principal's representations that Principal is the owner (either directly or through affiliates) of the leased premises occupied by Debtor in the operation

of the Business, located at 220 Lalo Place, Kahului, HI 96732 and 99-1265 Halawa Valley Street, Aiea, HI 96701, respectively ("Leased Premises").   Buyer agrees that it shall at all times fully and faithfully comply with all terms of any and all leases, including the payment of rent.  Debtor acknowledges and agrees that the payment of rent and all lease related expenses for periods following the Effective Date are part of the operating expenses to be paid by Buyer.  Notwithstanding anything to the contrary herein, in the event that this Agreement is terminated for any reason, nothing herein shall prevent Debtor or Principal, respectively, from exercising any and all rights that either Debtor or Principal may have with respect to the leases of the Leased Premises in the Bankruptcy Case or otherwise.

6.     Indemnification.

        a.     Indemnification of Debtor.   Buyer shall have and hereby accepts full and exclusive responsibility for its own acts and those of its employees, agents, vendors, contractors, and subordinates and agrees to indemnify and hold the Debtor (and its affiliates, officers, directors and shareholders) harmless from and reimburse it for any liabilities, claims, demands, costs, and expenses incident to any claim, loss, damage, or injury of any kind to any person or property because of and due to any act or conduct of Buyer or any of Buyer's employees, agents, vendors, contractors, or other subordinates, or arising out of, or related to the performance of this Agreement, the operation of the Business, and/or the use of the Leased Premises.

        b.     Indemnification of Buyer.  Similarly, Buyer shall have no responsibility for the acts of Debtor and/or its employees, agents, vendors, contractors, and subordinates prior to the Effective Date. Debtor agrees to indemnify and hold Buyer harmless from and reimburse it for any liabilities, claims, demands, costs, and expenses incident to any claim, loss, damage, or injury of any kind to any person or property because of and due to any act or conduct of Debtor or any of Debtor's employees, agents, vendors, contractors, or other subordinates, or arising out of, or related to the operation of the Business and performance of solar and/or solar hot water contracts prior to the Effective Date.

7.     Consideration; Terms of Acquisition.  As set forth in this Agreement, the parties intend to accomplish the Transaction, under which Buyer as buyer will acquire all the Assets of Buyer (excluding the Rejected Contracts) and Buyer as buyer will pay the Purchase Price into the Debtor's existing lockbox account in the control of Secured Party the total sum of $1,800,000, without interest, from the collection proceeds of the Existing A/R, provided, however, that at the end of twelve full calendar months following the Effective Date (i.e., July 27, 2021, the "Due Date"), any unpaid balance of the Purchase Price shall be due and payable.  During the Interim Management Period, all amounts earned by Buyer from the completion of the New Contracts and the Unperformed Contracts in excess of the Existing A/R ("New Revenue") shall be retained by Buyer, and Debtor and its creditors shall have no claims to those revenues.

ASSET PURCHASE PROVISIONS

8.     Transfer of Assets.

        a.     Purchase and Sale of Assets.  On the Closing Date (defined below), in consideration of the covenants, representations and obligations of Buyer hereunder, and

FINAL - 412235-v10

subject to the conditions hereinafter set forth, Debtor shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase all of Estate's right, title and interest as of the Closing Date in and to the Assets, consisting of all of Debtor's right title and interest in and to those assets listed in the attached <u>Exhibits "A" through "D"</u>, inclusive, pursuant to sections 363 and 365 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances.

b.      <u>Instruments of Transfer</u>. The sale, assignment, transfer, conveyance and delivery of the Assets to Buyer shall be made by bill of sale and assignment, and such other instruments as may reasonably be requested by Buyer or Debtor.

c.      <u>No Assumed Liabilities</u>. Except as specifically provided herein, Buyer is not assuming any liability of Debtor or agreeing to assume and perform any contractual obligation of Debtor, and Buyer shall not be liable for any other liabilities or obligations of Debtor by virtue of the Transaction. For the avoidance of doubt, the Interim Management Provisions in this Agreement are intended to be subsumed into and part of the Transaction as set forth above, and particularly with respect to Secs. 2.a, 2.b.v, vi and viii, and 3.

d.      <u>No Representation Regarding Assets</u>.  Buyer acknowledges and agrees that the intent of this Agreement is the sale by Debtor and purchase by Buyer of the Assets, excepting the Rejected Contracts, cash and any other assets that are not specifically identified pursuant to the terms of this Agreement.  Buyer also acknowledges and agrees that Buyer has substantial knowledge of the Assets apart from any information that may have been provided by Debtor or its representatives and agents. Consequently, the sale of the Assets is on an "as-is, where-is, with all faults" basis, including the responsibility of Buyer to verify the nature, quantity, quality and description of the Assets.  The Parties acknowledge and agree that there will be no adjustment of the Purchase Price if the nature, quantity, quality and description of the Assets are other than that anticipated by Buyer, absent fraud.

9.      <u>Purchase Price</u>.  The consideration to be paid by Buyer to Debtor is (i) payment of the Purchase Price, *i.e.* One Million Eight Hundred Thousand Dollars ($1,800,000) (the "Purchase Price"), which shall be evidenced by a promissory note reasonable acceptable to Debtor and Secured Party and paid as provided in Secs. 2.v. and 7 above: (ii) the undertaking and performance of the obligations of Buyer during the Interim Management Agreement; and (iii) the mutual waiver and release by Debtor, Buyer and Principal, respectively, of the Claims, as set forth in Sec. 20.

10.     <u>Closing of Transaction</u>.  The Closing of the Transaction provided for herein (the "Closing") shall take place on the Closing Date, and if required, at such place as mutually agreed upon by Debtor and Buyer, with the written notice to the Secured Party.

a.      <u>Closing Date</u>.  Following execution of this Agreement, the Debtor will file the necessary motion or motions with the Court to obtain Bankruptcy Court Approval (as defined below) and the sale will close no later than five (5) business days following the entry of the Final Sale Order, as provided in Sec. 14, and the effectiveness of such order has not been stayed by a court of competent jurisdiction ("Closing Date").   Alternatively, the Parties may mutually agree to an extended Closing Date with the written consent of the Secured Party.  Until this Agreement is either terminated or the Parties have agreed

upon an extended Closing Date, the Parties shall diligently continue to work to satisfy all conditions to Closing.

b.    Debtor's Deliveries to Buyer at Closing.  On the Closing Date, Debtor shall cause to be delivered to Buyer the following:

i.    An Assignment in the form attached hereto as Exhibit "E" hereto, duly executed by Debtor, pursuant to which Debtor sells and assigns the Assets to Buyer (the "Assignment").

ii.    A  Bill of Sale in the form attached hereto as Exhibit "F";

iii.    Such other instruments of transfer, including without limitation such assignments and consents to assignments as are reasonably requested by Buyer and necessary to transfer to Buyer good, marketable and legal title to all of the Assets, all in forms which are consistent with the terms of this Agreement and are usual and customary for transferring the type of Assets involved under the laws of the jurisdictions applicable to such transfers.

11.    Buyer's Deliveries to Debtor at Closing. On the Closing Date, Buyer shall cause the execution and delivery of the promissory note memorializing the Purchase Price,  the Assignment Agreement (Exhibit "E" hereto) and the Bill of Sale (Exhibit "F").

12.    Sales, Use and Other Taxes.  Buyer shall bear and pay any sales or use taxes imposed by the State of Hawaii on the sale of the Assets based upon and to the extent of the consideration allocated to the tangible personal property.    Debtor shall report the sale of the Assets on a tax return.  Buyer shall reimburse Debtor the full amount of sales taxes due, which Debtor shall in turn pay over to the taxing authority.  Buyer shall indemnify Debtor in the event the amount of sales taxes due is increased in a subsequent audit or examination by the taxing authority and shall promptly upon notice from Debtor to Buyer and Secured Party reimburse Debtor for any additional taxes payable.  Buyer shall indemnify the Debtor and the Estate against, any other taxes, documentary charges, recording fees or similar taxes, charges, fees or expenses that may become payable in connection with the sale of the Assets under this Agreement.

13.    Allocation.  The Parties shall, prior to the Closing, agree to the allocation of the consideration referred to in Sec. 9 among the Assets.  The allocation as agreed among the Parties shall be conclusive and binding for all purposes, and no Party to this Agreement or any affiliate or shareholder thereof, shall file any tax return or other document with, or make any statement or declaration to, any taxing agency that is inconsistent with such allocation.

14.    Conditions Precedent to Closing.

a.    Bankruptcy Court Approval; Hearing.    Debtor's obligation to sell and Buyer's right to buy is conditioned on the approval of the Bankruptcy Court of the Transaction contemplated by this Agreement ("Bankruptcy Court Approval").  The sale of the Assets is on an emergency basis and so shall not be subject to overbid.

b.    Procedure.  The ultimate procedure for the approval of the sale shall be determined by the Bankruptcy Court, provided that within one (1) business day following

the full execution of this Agreement, Debtor shall file a motion with the Bankruptcy Court seeking two(2) separate orders following two hearings: (i) an interim order held on shortened time on an emergency basis approving the Interim Management Provisions of this Agreement and (ii) a final order heard in the ordinary course approving the approval of the Asset Purchase Provisions and Compromise and Settlement (Releases) provided for in this Agreement.  The motion shall ask the Bankruptcy Court to establish the notice to be given of the final hearing and to set a date and time for that hearing before August 31, 2020. The motion shall seek relief under Sections 105, 363 and 365 of the Bankruptcy Code, as complimented by Bankruptcy Rules 2002, 6003, and 6004 and any corresponding Local Rules.

      c.   <u>Order</u>.  The Sale Approval Order shall further find and order that (i) Debtor has conducted the sale of the Assets in accordance with procedures approved by the Bankruptcy Court; (ii) this Agreement was negotiated, proposed and entered into by Debtor and Buyer without collusion, in good faith and from arm's length bargaining positions; (iii) by entering into this Agreement and by closing the sale of the Assets, Buyer is not acquiring or assuming any of the Debtor's or any other person's liabilities; (iv) Debtor has given adequate notice of the proposed bankruptcy sale of the Assets and mutual settlement and release of claims, of the description of the Assets and the principal terms of the sale, and of the date, time and place of the hearing before the Court to approve the sale; (v) the Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement, or the breach thereof; and (vi) Buyer shall acquire the Assets on an "as is, where is, with all faults" basis, free and clear of all liens, claims, encumbrances, and other interests therein at the Closing, with all such liens, claims, encumbrances, and other interests to attach to the net proceeds of the sale of the Assets in order of their validity, priority, enforceability and amount.

15.   <u>Conditions to Debtor's Obligations</u>. Debtor's obligation to make the deliveries required of Debtor at the Closing Date shall be subject to the satisfaction or waiver by Debtor of each of the following conditions:

      a.   All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects.

      b.   Buyer shall have executed and delivered to Debtor all of those documents, instruments and agreements required to be executed by Buyer to Debtor under Sec. 11.

      c.   No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

      d.   The Debtor shall have obtained Bankruptcy Court Approval, as provided above; Debtor reserves the right to abandon the Assets if during his administration of this case, he unilaterally determines there is little or no value in the Assets for the benefit of creditors.

16.    <u>Conditions to Buyer's Obligations</u>. Buyer's obligation to make the deliveries required of Buyer at the Closing shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

a.    Debtor shall have executed and delivered to Buyer all of those documents, instruments and agreements required to be executed by Debtor to Buyer under Sect. 10 hereof.

b.    The Debtor shall have obtained Bankruptcy Court Approval, as provided above.

17.    <u>Debtor's Representations and Warranties</u>. Debtor hereby makes the following representations and warranties to Buyer:

a.    <u>Validity of Agreement</u>. Upon obtaining Bankruptcy Court Approval, this Agreement shall constitute the valid and binding obligation of Debtor, enforceable in accordance with its terms.

b.    <u>Title</u>.  Upon approval of the Bankruptcy Court, at the Closing, Buyer will acquire all of Debtor's right, title and interest in and to all the Assets, free and clear of any liens, claims or encumbrances, as provided in the Sale Approval Order.

c.    <u>No Conflicts or Violations</u>.  The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Debtor do not and will not: (i) conflict with or result in a breach of the articles of organization of Debtor; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Debtor is a party or by which Debtor or its assets or properties may be bound.

18.    <u>Buyer's and Principal's Representations and Warranties</u>.  Buyer and Principal each hereby makes the following representations and warranties to Debtor:

a.    <u>Validity of Agreement</u>.  This Agreement, when executed and delivered by Buyer and Principal, shall constitute the valid and binding obligation of Buyer and Principal, respectively, enforceable in accordance with its terms.

b.    <u>No Conflicts or Violations</u>.  The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Buyer and Principal does not and will not: (i) conflict with or result in a breach of the articles of organization of Buyer; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer or Principal is a party or by which Principal, Buyer or its assets or properties may be bound.

19.    <u>"As Is, Where Is" Transaction</u>.  The Debtor specifically disclaims (and the Buyer expressly agrees that the Debtor is not making or giving) any covenant, undertaking, representation or warranty, express or implied, in connection with the nature, quantity,

FINAL - 412235-v10

quality and description of the Assets, or the condition, quality, suitability, value, or merchantability of Debtor's interest in or rights to the Assets:

**THE BUYER ACKNOWLEDGES AND AGREES THAT: (A) THE SALE OF THE ASSETS TO THE BUYER IS: ON AN "AS IS, WHERE IS" BASIS; WITHOUT ANY REPRESENTATION OR WARRANTY AS TO THE NATURE, QUANTITY, QUALITY OR DESCRIPTION OF THE ASSETS; (B) DEBTOR IS MAKING NO REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE CONDITION OR VALUE OF THE ASSETS; (C) THE SOLE REPRESENTATIONS AND WARRANTIES OF DEBTOR REGARDING THE ASSETS ARE THOSE SPECIFICALLY PROVIDED IN WRITING IN THIS AGREEMENT AND NO OTHER REPRESENTATIONS OR WARRANTIES ARE TO BE IMPLIED OR INFERRED. BUYER FURTHER ACKNOWLEDGES THAT PRIOR TO THE CLOSING DATE, BUYER HAS CONDUCTED AN INDEPENDENT INVESTIGATION OF ALL RELEVANT MATTERS RELATING TO OR AFFECTING THE ASSETS AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ASSETS, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INVESTIGATIONS. ACCORDINGLY, BUYER WILL ACCEPT THE ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."**

JCP
————————          ————————
DEBTOR'S INITIALS          BUYER'S INITIALS

20.    <u>Release</u>.    Except as to such rights or claims as may be created by this Agreement, and only upon the Closing, each of the parties, on behalf of themselves, their officers, partners, members, representatives, agents, assigns, attorneys, heirs and successors in interest, hereby fully release and forever discharge each other and each other's officers, partners, members, representatives, agents, assigns, attorneys, heirs and successors in interest, from and on account of any and all claims (including the Claims) and causes of actions of every kind or nature whatsoever, which they, or any of them, presently have, had, or claim to have, whether known or unknown, arising out of or in any manner whatsoever, directly or indirectly, related to: (i) the Acquisition by Debtor from Buyer in 2018; (ii) the executive employment agreement between Debtor and Principal; (iii) any and all rent pertaining to the Leased Premises; (iv) any claims relating to the employment of Principal by Debtor; or (v) any other claim of whatever nature that might be made by the Parties in the Bankruptcy Case or otherwise arising prior to Closing (collectively "Claims").

The Parties are aware that they may hereafter discover claims or facts in addition to or different from those the Parties know or believe to be true with respect to the matters released herein. Nevertheless, it is the Parties' intention to fully, finally, and forever settle and release all such matters and claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release given herein shall be and remain in effect as a full and complete release of all such matters notwithstanding the discovery or existence of any additional or different claims or facts relative thereto. Accordingly, the Parties specifically waive the benefit of the provisions of Section 1542 of the Civil Code of the State of California, which provides as follows:

quality and description of the Assets, or the condition, quality, suitability, value, or merchantability of Debtor's interest in or rights to the Assets:

> **THE BUYER ACKNOWLEDGES AND AGREES THAT: (A) THE SALE OF THE ASSETS TO THE BUYER IS: ON AN "AS IS, WHERE IS" BASIS; WITHOUT ANY REPRESENTATION OR WARRANTY AS TO THE NATURE, QUANTITY, QUALITY OR DESCRIPTION OF THE ASSETS; (B) DEBTOR IS MAKING NO REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE CONDITION OR VALUE OF THE ASSETS; (C) THE SOLE REPRESENTATIONS AND WARRANTIES OF DEBTOR REGARDING THE ASSETS ARE THOSE SPECIFICALLY PROVIDED IN WRITING IN THIS AGREEMENT AND NO OTHER REPRESENTATIONS OR WARRANTIES ARE TO BE IMPLIED OR INFERRED. BUYER FURTHER ACKNOWLEDGES THAT PRIOR TO THE CLOSING DATE, BUYER HAS CONDUCTED AN INDEPENDENT INVESTIGATION OF ALL RELEVANT MATTERS RELATING TO OR AFFECTING THE ASSETS AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ASSETS, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INVESTIGATIONS. ACCORDINGLY, BUYER WILL ACCEPT THE ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."**

_____  
DEBTOR'S INITIALS

_____JW_____  
BUYER'S INITIALS

20.    Release.    Except as to such rights or claims as may be created by this Agreement, and only upon the Closing, each of the parties, on behalf of themselves, their officers, partners, members, representatives, agents, assigns, attorneys, heirs and successors in interest, hereby fully release and forever discharge each other and each other's officers, partners, members, representatives, agents, assigns, attorneys, heirs and successors in interest, from and on account of any and all claims (including the Claims) and causes of actions of every kind or nature whatsoever, which they, or any of them, presently have, had, or claim to have, whether known or unknown, arising out of or in any manner whatsoever, directly or indirectly, related to: (i) the Acquisition by Debtor from Buyer in 2018; (ii) the executive employment agreement between Debtor and Principal; (iii) any and all rent pertaining to the Leased Premises; (iv) any claims relating to the employment of Principal by Debtor; or (v) any other claim of whatever nature that might be made by the Parties in the Bankruptcy Case or otherwise arising prior to Closing (collectively "Claims").

The Parties are aware that they may hereafter discover claims or facts in addition to or different from those the Parties know or believe to be true with respect to the matters released herein. Nevertheless, it is the Parties' intention to fully, finally, and forever settle and release all such matters and claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release given herein shall be and remain in effect as a full and complete release of all such matters notwithstanding the discovery or existence of any additional or different claims or facts relative thereto. Accordingly, the Parties specifically waive the benefit of the provisions of Section 1542 of the Civil Code of the State of California, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**GENERAL PROVISIONS**

21.    <u>Governing Law</u>.    This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada, the United States Bankruptcy Code, the Federal Bankruptcy Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and the Federal Rules of Evidence and the Local Rules of Bankruptcy Procedure for the District of Nevada.

22.    <u>Modification</u>.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the parties hereto and approved by the United States Bankruptcy Court, District of Nevada.

23.    <u>Closing Date</u>.  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously at 12:01 AM PDT on the Closing Date, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

24.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

25.    <u>Captions</u>.    All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

26.    <u>Further Assurances</u>.    Each party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other party hereto for the purpose of giving effect to the transactions contemplated herein or the intentions of the parties with respect thereto.

27.    <u>Waiver</u>.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

28.    <u>Payment of Fees and Expenses</u>.    Each party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transaction described herein.

29.    <u>Survival</u>.  Except for the covenants and agreements to be performed after the Closing Date, none of the respective representations, warranties, covenants and

FINAL - 412235-v10

agreements of Debtor and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall survive the Closing.

30.     Assignments.   Except as specifically provided otherwise in this Agreement, neither this Agreement nor any interest herein shall be assignable (voluntarily, involuntarily, by judicial process, operation of law or otherwise), in whole or in part, by Buyer without first obtaining the prior written consent of Debtor and Secured Party.

31.     Binding Effect.   This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties hereto.

32.     Good Faith.   All parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after the Closing.

33.     Construction.   In the interpretation and construction of this Agreement, the parties acknowledge that the terms hereof reflect extensive negotiations between the parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either party hereto.

34.     Signing.   This Agreement may be executed by facsimile, .pdf e-mail or in electronic form and in counterparts, in which such case, such faxed or e-mailed signatures shall be deemed originals and all such counterparts, when taken together, shall be deemed a single instrument.

35.     Time is of the Essence.   Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

36.     Tax Effect.   None of the parties (nor such parties' counsel or accountants) has made or is making in this Agreement any representation to any other party (or such party's counsel or accountants) concerning any of the tax effects or consequences on the other party of the transactions provided for in this Agreement.  Each party represents that it has obtained, or may obtain, independent tax advice with respect thereto and upon which it, if so obtained, has solely relied.

37.     Bankruptcy Court Jurisdiction.   **BUYER AND DEBTOR AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING; TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO; AND/OR (ii) THE ASSETS, AND BUYER EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.**

38.     Notices; Time of Delivery; Addresses. Any notice, approval, consent, demand, request or communication required or permitted to be given under this Agreement shall be in writing, shall be addressed to the address(es) set forth below (as amended from time to time), shall be sent in one of the following manners, and shall be deemed to have been duly given or made as of: (i) if delivered personally by courier or otherwise, then as of the date delivered or if delivery is refused, then as of the date presented; (ii) if sent or mailed by FedEx, UPS, Express Mail or other overnight mail service that provides written

confirmation of receipt, then as of the date received; (iii) if mailed by certified U.S. Mail, return receipt requested, then as of the date of actual delivery; or (iv) if sent by facsimile or e-mail address(es), then either (a) as of the date on which the appropriate electronic confirmation of receipt is received by the sending party at or before 5:00 PM. (recipient's time) on any business day, or (b) as of the next business day if the time of the appropriate electronic confirmation of receipt received by the sending party is after 5:00 PM. (recipient's time) or is not a business day; provided, however, that no notice, approval, consent, demand, request or other communication delivered by e-mail shall be of any force or effect unless on its face it clearly states that it is intended to constitute a formal notice, approval, consent, demand, request or other communication under this Agreement.   All notices shall be addressed as follows:

|  |  |
|---|---|
| Buyer: | Haleakala Solar, Inc.<br>220 Ialo Street, Suite 1<br>Kahului, HA 96732<br>Attn: James Whitcomb<br>Telephone:  (808) 446-7341<br>Email:  jw@haleakalasolar.com |
| Principal | James Whitcomb<br>661 Kaapuni Place<br>Kihei, Hi. 96753<br>Telephone:  (808) 870-0577<br>Email:  jw@haleakalasolar.com |
| With a copy to: | James P. Hill<br>Sullivan Hill Rez & Engel, APLC<br>600 B Street, Suite 1700<br>San Diego, California 92101<br>Telephone:  (619) 595-3226<br>Email:  hill@sullivanhill.com |
| Debtor: | PetersenDean Hawaii, LLC<br>George Milionis, Esq.<br>General Counsel<br>39300 Civic Center Drive, Suite 300<br>Fremont, CA 94538<br>Telephone:  (510) 371-6555<br>Email:  gmilionis@petersendean.com |
| With a copy to: | Brett Axelrod<br>Fox Rothschild, LLP<br>1980 Festival Plaza Drive, Suite 700<br>Las Vegas, NV 89135<br>Telephone:  (702) 262-6899<br>Email:  baxelrod@foxrothschild.com |

FINAL - 412235-v10

| | |
|---|---|
| Secured Party | ACF FINCO I, LP |
| | c/o Andres Pinter |
| | Ares Management LLC |
| | 800 Corporate Pointe, 3rd Floor |
| | Culver City, CA 90230 |
| | Telephone: (310) 201-4235 |
| | Email: apinter@aresmgmt.com |
| | |
| With a copy to | William M. Noall |
| | Garman Turner Gordon LLP |
| | 7251 Amigo Street, Suite 210 |
| | Las Vegas, Nevada 89119 |
| | (725) 244-4575Email: wnoall@gtg.legal |

39.    <u>Waiver</u>.  Neither a course of conduct nor any waiver by either party with respect to a default or breach of any provision of this Agreement by the other party shall operate or be construed as a waiver of any subsequent default or breach or as a modification of this Agreement.

40.    <u>Entire Agreement; Modification</u>.    This Agreement shall constitute the entire agreement between the parties with respect to its subject matter.  This Agreement may be amended only by a written agreement executed by the parties hereto and may not be terminated except as provided herein or by an agreement in writing signed by all parties by their respective duly authorized officers.

*[REMAINDER OF PAGE INTENTIONALLY BLANK*

*SIGNATURES APPEAR ON FOLLOWING PAGE(S)]*

FINAL - 412235-v10

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

Haleakela Solar, Inc.
a Hawaii corporation

By: _____

Name: JAMES Whitcomb

_____
James Whitcomb

PetersenDean Hawaii, LLC,
a Hawaii limited liability company

By: _____

Name: _____

## ACKNOWLEDGEMENT AND CONSENT

The undersigned is the primary secured lender ("Secured Party) to Debtor and to the other debtors subject to joint administration of the Bankruptcy Court.  Secured Party hereby consents to the Transaction as set forth in the Agreement.  Secured Party acknowledges and agrees (i) that Buyer will use assets of the Debtor's estate in order to fulfill its obligations hereunder; (ii) and will perform services to complete the Unperformed Contracts, which will generate the New Revenue; and (iii) that Secured Party will have no claim to the New Revenue, which will be owned entirely by Buyer without lien or interest of Secured Party or any third party.

ACF Finco I, LP

By: _____

*[SIGNATURE PAGE TO ASSET PURCHASE AND INTERIM MANAGEMENT AGREEMENT]*

18

FINAL - 412235-v10

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

Haleakela Solar, Inc.                        PetersenDean Hawaii, LLC,
a Hawaii corporation                       a Hawaii limited liability company


By: _____     By: _____

Name: _____     Name:  Jeffrey Perea_____



_____
James Whitcomb


## ACKNOWLEDGEMENT AND CONSENT

The undersigned is the primary secured lender ("Secured Party) to Debtor and to the other debtors subject to joint administration of the Bankruptcy Court.  Secured Party hereby consents to the Transaction as set forth in the Agreement.  Secured Party acknowledges and agrees (i) that Buyer will use assets of the Debtor's estate in order to fulfill its obligations hereunder; (ii) and will perform services to complete the Unperformed Contracts, which will generate the New Revenue; and (iii) that Secured Party will have no claim to the New Revenue, which will be owned entirely by Buyer without lien or interest of Secured Party or any third party.

ACF Finco I, LP

By: _____


*[SIGNATURE PAGE TO ASSET PURCHASE AND INTERIM MANAGEMENT AGREEMENT]*

FINAL - 412235-v10

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

Haleakela Solar, Inc.                    PetersenDean Hawaii, LLC,
a Hawaii corporation                     a Hawaii limited liability company


By: _____          By: _____

Name: _____          Name: _____




_____

James Whitcomb




## ACKNOWLEDGEMENT AND CONSENT

The undersigned is the primary secured lender ("Secured Party) to Debtor and to the other debtors subject to joint administration of the Bankruptcy Court.  Secured Party hereby consents to the Transaction as set forth in the Agreement.  Secured Party acknowledges and agrees (i) that Buyer will use assets of the Debtor's estate in order to fulfill its obligations hereunder; (ii) and will perform services to complete the Unperformed Contracts, which will generate the New Revenue; and (iii) that Secured Party will have no claim to the New Revenue, which will be owned entirely by Buyer without lien or interest of Secured Party or any third party.

ACF Finco I, LP

By: _____


*[SIGNATURE PAGE TO ASSET PURCHASE AND INTERIM MANAGEMENT AGREEMENT]*

18

Exhibit "A"
List of Unperformed Contracts

412235-v10

# EXHIBIT A-1

| Job Name | Job# | Division | Queue Level | Financing | Amount Financed | Contract Value | Billed To Date | Balance Due |
|---|---|---|---|---|---|---|---|---|
| Steven Rousso SOLAR-COMBO | 3808.00 | 74 | 6 | Cash | $0.00 | $36,519.00 | $31,191.15 | $17,759.50 |
| Jack Linklater SOLAR-COMBO | 3859.00 | 74 | 8 | Cash | $0.00 | $34,751.00 | $34,751.00 | $5,062.65 |
| Scott Koeberle SOLAR-COMBO | 3867.00 | 74 | 7 | Cash | $0.00 | $59,749.48 | $59,749.48 | $8,812.42 |
| Steven Mates SOLAR-COMBO | 3901.00 | 74 | 7 | Cash | $0.00 | $51,797.40 | $44,177.79 | $7,619.61 |
| Stevan O'Neill SOLAR-COMBO | 3972.00 | 74 | 7 | Cash | $0.00 | $36,414.20 | $36,414.20 | $17,707.10 |
| James & Daniel Perry SOLAR | 4045.00 | 74 | 7 | Cash | $0.00 | $41,504.00 | $41,504.00 | $6,075.60 |
| Mike Peterson SOLAR-COMBO | 4073.00 | 74 | 7 | Cash | $0.00 | $44,290.20 | $44,290.20 | $21,645.10 |
| Myles Ikeda SOLAR-COMBO SLF ZD | 3935.00 | 74 | 2 | Sunlight Fin | $0.00 | $39,379.00 | $0.00 | $39,379.00 |
| Doug Ashmore SOLAR-COMBO SFC ZD | 3838.00 | 74 | 7 | Svc Fin Co | $37,629.00 | $37,629.00 | $37,629.00 | $1,505.16 |
| Leilani Meyer SOLAR-COMBO | 4342.00 | 77 | 4 | Cash | $0.00 | $35,319.20 | $18,159.60 | $34,319.20 |
| Karen Smith SOLAR-COMBO | 4437.00 | 77 | 6 | Cash | $0.00 | $34,252.68 | $17,626.34 | $16,626.34 |
| Roy Sabalboro SHW-RPD | 3248.00 | 77 | 7 | Cash | $0.00 | $7,303.66 | $4,026.83 | $4,026.83 |
| Allen R Pantaleon SOLAR | 3431.00 | 77 | 3 | Cash | $0.00 | $14,258.33 | $12,269.59 | $6,629.16 |
| David H Baker SOLAR-COMBO SLF | 3450.00 | 77 | 9 | Cash | $29,699.55 | $37,349.55 | $37,349.55 | $2,700.00 |
| Kathy Ogata SHW | 3609.01 | 77 | 6 | Cash | $0.00 | $8,617.80 | $4,308.90 | $4,308.90 |
| Dolores Lum SHW RPD | 3683.00 | 77 | 9 | Cash | $0.00 | $7,989.53 | $7,989.53 | $4,369.77 |
| Renee Morimoto SOLAR-COMBO SF | 3691.00 | 77 | 8 | Cash | $75,000.00 | $79,098.74 | $79,098.74 | $37,500.00 |
| Dustin Hokama SOLAR-COMBO | 3920.00 | 77 | 4 | Cash | $0.00 | $41,253.62 | $33,641.19 | $21,052.92 |
| Lora & Roland Kanno SOLAR-COMBO | 4035.00 | 77 | 6 | Cash | $0.00 | $77,798.60 | $66,278.81 | $38,399.30 |
| Jeff Tonkel SOLAR | 4044.00 | 77 | 7 | Cash | $0.00 | $29,880.00 | $29,880.00 | $14,440.00 |
| Russell Ishizuka SOLAR-COMBO | 4110.00 | 77 | 5 | Cash | $0.00 | $30,539.89 | $15,769.94 | $29,539.89 |
| Gene Castagnetti SOLAR-COMBO | 4158.00 | 77 | 6 | Cash | $0.00 | $57,502.83 | $41,114.19 | $32,906.25 |
| Eddie Mamuad SOLAR-COMBO | 4201.00 | 77 | 6 | Cash | $0.00 | $57,394.60 | $29,197.30 | $28,197.30 |
| Christine Lutz SOLAR-COMBO | 4208.00 | 77 | 5 | Cash | $0.00 | $76,616.60 | $76,616.60 | $39,258.30 |
| Beverly Chang SOLAR-COMBO | 4210.00 | 77 | 6 | Cash | $0.00 | $47,700.60 | $24,350.30 | $46,700.60 |
| Jacqueline Hayashibara SOLAR-COMBO | 4268.00 | 77 | 9 | Cash | $0.00 | $35,627.48 | $35,627.48 | $5,194.12 |
| Barney Shiraishi SOLAR-COMBO | 4270.00 | 77 | 8 | Cash | $0.00 | $34,634.76 | $34,634.76 | $16,817.38 |
| Anthony Young SOLAR-COMBO | 4300.00 | 77 | 6 | Cash | $0.00 | $38,406.04 | $19,313.74 | $19,092.30 |
| Perfecto & Sergia Inciong SHW RPD | 4319.00 | 77 | 8 | Cash | $0.00 | $7,413.61 | $7,413.62 | $4,081.80 |
| Perfecto & Sergia Inciong SHW RPD | 4320.00 | 77 | 8 | Cash | $0.00 | $7,413.61 | $7,413.62 | $4,081.80 |
| Gene Yoshinaga SOLAR-COMBO | 4359.00 | 77 | 6 | Cash | $0.00 | $48,594.44 | $24,797.22 | $23,797.22 |
| Matt Trinacty SOLAR | 4380.00 | 77 | 4 | Cash | $0.00 | $17,357.18 | $1,000.00 | $16,357.18 |
| Donald Kanoa SOLAR-COMBO | 4388.00 | 77 | 5 | Cash | $0.00 | $31,866.18 | $1,000.00 | $30,866.18 |
| Raleigh Wong SOLAR-COMBO | 4390.00 | 77 | 9 | Cash | $0.00 | $43,493.60 | $43,493.60 | $6,374.04 |
| Chris Ulcak SOLAR | 4395.00 | 77 | 4 | Cash | $0.00 | $32,446.80 | $1,000.00 | $31,446.80 |
| Harold Haga SOLAR-COMBO | 4398.00 | 77 | 2 | Cash | $0.00 | $30,482.17 | $1,000.00 | $30,482.17 |
| Patricia HEE SHW RPD | 4411.00 | 77 | 9 | Cash | $0.00 | $7,413.61 | $7,413.61 | $4,081.80 |
| Kel Kado SHW RPD | 4414.00 | 77 | 9 | Cash | $0.00 | $7,303.66 | $3,276.83 | $4,026.83 |
| Steven Businger SOLAR | 4418.00 | 77 | 6 | Cash | $0.00 | $18,577.00 | $9,788.50 | $17,577.00 |
| Jayzlyn-Aleigh Gonsalves SLR-COMBO | 4433.00 | 77 | 6 | Cash | $0.00 | $77,498.64 | $39,249.32 | $38,249.32 |
| Thomas Leong SOLAR | 4438.00 | 77 | 7 | Cash | $0.00 | $11,094.95 | $6,047.48 | $5,047.47 |
| Roland Sakuma   SOLAR-COMBO | 4440.00 | 77 | 7 | Cash | $0.00 | $55,948.60 | $28,449.30 | $4,081.80 |
| Ken Suyama   SOLAR-COMBO | 4441.00 | 77 | 7 | Cash | $0.00 | $36,319.00 | $18,659.50 | $17,659.50 |
| Clark Trafford SOLAR-COMB SFC ZD | 4443.00 | 77 | 6 | Cash | $0.00 | $59,950.30 | $29,975.15 | $59,950.30 |
| Russell Lapierre SOLAR | 4444.00 | 77 | 5 | Cash | $0.00 | $20,900.00 | $1,000.00 | $19,900.00 |

| Job Name | Job# | Division | Queue Level | Financing | Amount Financed | Contract Value | Billed To Date | Balance Due |
|---|---|---|---|---|---|---|---|---|
| Al Hee   SOLAR-COMBO | 4459.00 | 77 | 5 | Cash | $0.00 | $104,690.59 | $1,000.00 | $103,690.59 |
| Tom Ingram   SOLAR-COMBO | 4463.00 | 77 | 5 | Cash | $0.00 | $56,751.40 | $1,000.00 | $55,751.40 |
| Sean Ishii | 4481.00 | 77 | 5 | Cash | $0.00 | $7,362.00 | $2,976.00 | $4,386.00 |
| Dianne Stewart   SOLAR | 4484.00 | 77 | 2 | Cash | $0.00 | $13,433.40 | $1,000.00 | $12,433.40 |
| Edwin Goto SHW RPD | 4489.00 | 77 | 6 | Cash | $0.00 | $6,613.36 | $2,681.68 | $3,931.68 |
| Edric Ching SHW RPD | 4490.00 | 77 | 5 | Cash | $0.00 | $7,979.84 | $3,364.92 | $4,614.92 |
| David D'Avirro   SOLAR-COMBO | 4493.00 | 77 | 5 | Cash | $0.00 | $32,087.50 | $1,000.00 | $31,087.50 |
| Chintana Griffin  SOLAR | 4495.00 | 77 | 5 | Cash | $0.00 | $26,458.50 | $1,000.00 | $25,458.50 |
| Daryl Kral SHW RPD | 4507.00 | 77 | 2 | Cash | $0.00 | $7,015.08 | $2,882.54 | $4,132.54 |
| Linda Kiyotoki   SOLAR | 4513.00 | 77 | 2 | Cash | $0.00 | $20,220.48 | $1,000.00 | $19,220.48 |
| Teresa Gaston SHW RPD | 4514.00 | 77 | 2 | Cash | $0.00 | $7,276.17 | $3,013.09 | $4,263.08 |
| DanHetrick-BT | 17724.00 | 77 | 6 | Cash | $0.00 | $29,800.00 | $1,000.00 | $28,800.00 |
| Bruce Altenhoff SOLAR-COMBO GS | 3517.00 | 77 | 7 | Greensky Reg | $32,500.00 | $32,453.95 | $32,453.95 | $9,736.19 |
| Roy K Nagasawa SOLAR-COMBO GS | 3666.00 | 77 | 9 | Greensky Reg | $35,500.00 | $34,476.12 | $34,476.12 | $7,057.65 |
| Phillip Acierto SOLAR-COMBO GS ZD | 3940.00 | 77 | 6 | Greensky Reg | $59,000.00 | $41,603.91 | $20,801.96 | $20,801.95 |
| Nicki Brown SOLAR-COMBO SFC/GS ZD | 4176.00 | 77 | 9 | Greensky Reg | $0.00 | $70,139.00 | $70,139.00 | $53,389.00 |
| Janice Imamura SOLAR-COMBO GS ZD | 4185.00 | 77 | 6 | Greensky Reg | $34,645.80 | $34,645.80 | $29,448.93 | $6,987.90 |
| John Kaai, Jr. SOLAR-COMBO GS ZD | 4434.00 | 77 | 6 | Greensky Reg | $41,074.00 | $41,074.00 | $20,537.00 | $41,074.00 |
| Rick Oshiro SOLAR-COMBO | 3787.00 | 77 | 6 | Hawaii Credi | $0.00 | $63,774.66 | $54,358.46 | $52,774.66 |
| Michael Gaston SLR-SLF-ZD-CMB SHW | 3167.00 | 77 | 7 | Sunlight Fin | $34,175.05 | $34,175.05 | $29,048.80 | $34,175.05 |
| Dori Demello   SOLAR-SLF-COMBO- B | 3219.00 | 77 | 6 | Sunlight Fin | $69,617.00 | $69,617.00 | $59,174.45 | $69,617.00 |
| John Long SOLAR-COMBO SLF | 3475.00 | 77 | 7 | Sunlight Fin | $27,840.20 | $27,840.20 | $23,664.17 | $27,840.20 |
| Harriet Clement SHW RPD | 3571.02 | 77 | 8 | Sunlight Fin | $7,810.00 | $8,560.00 | $8,560.00 | $4,655.00 |
| Nani Durante SOLAR-COMBO SLF | 3804.00 | 77 | 8 | Sunlight Fin | $34,365.84 | $34,365.85 | $29,210.98 | $34,365.85 |
| John S Endicott SOLAR-COMBO SLF ZD | 3823.00 | 77 | 6 | Sunlight Fin | $66,134.39 | $66,134.39 | $33,067.20 | $66,134.39 |
| Eli Low   SOLAR-COMBO SLF ZD | 4469.00 | 77 | 6 | Sunlight Fin | $63,068.36 | $63,068.36 | $31,534.18 | $63,068.36 |
| Ponciano Mencias SHW RPD SFC ZD | 4397.00 | 77 | 1 | Svc Fin Co | $0.00 | $14,735.00 | $0.00 | $14,735.00 |
| Michael Gaston SHW-SFC-ZD-CMB S | 3167.01 | 77 | 8 | Svc Fin Co | $7,354.00 | $7,354.00 | $7,354.00 | $7,354.00 |
| Silver BaldonadoSHW-SFC-ZD-CMB RPD | 3169.00 | 77 | 8 | Svc Fin Co | $0.00 | $11,572.00 | $11,572.00 | $0.00 |
| Debbie Uyematsu SOLAR-SFC-ZD | 3186.00 | 77 | 4 | Svc Fin Co | $68,997.13 | $41,100.72 | $34,935.61 | $41,100.72 |
| Calvin Maeda SOLAR-COMBO SFC | 3362.00 | 77 | 7 | Svc Fin Co | $61,490.00 | $49,666.32 | $0.00 | $49,666.32 |
| Calvin Maeda SHW SFC RPD | 3362.01 | 77 | 7 | Svc Fin Co | $7,329.97 | $8,079.97 | $0.00 | $8,079.97 |
| William Centeio SOLAR-COMBO SFC ZD | 3597.00 | 77 | 8 | Svc Fin Co | $43,450.36 | $43,450.36 | $38,161.12 | $43,450.36 |
| Giancarlo Gines SOLAR-COMBO SF | 3775.00 | 77 | 7 | Svc Fin Co | $61,490.00 | $44,946.00 | $38,204.10 | $44,946.00 |
| George Lumpkin SOLAR COMBO-SFC ZD | 3812.00 | 77 | 6 | Svc Fin Co | $39,213.01 | $34,324.49 | $34,374.48 | $34,324.49 |
| Norita Omoto SOLAR-COMBO SFC ZD | 3824.00 | 77 | 9 | Svc Fin Co | $33,757.00 | $33,757.50 | $33,757.50 | $1,460.01 |
| Byron Logan SOLAR-COMBO SFC ZD | 3889.00 | 77 | 5 | Svc Fin Co | $36,655.00 | $28,515.00 | $27,593.63 | $921.37 |
| Bryon Logan SHW RPD SFC ZD | 3891.00 | 77 | 5 | Svc Fin Co | $36,655.00 | $8,890.00 | $7,218.63 | $1,671.37 |
| Bennet Mathias SOLAR-COMBO SFC | 3924.00 | 77 | 8 | Svc Fin Co | $31,145.60 | $32,164.80 | $29,798.55 | $30,145.60 |
| Stan Shimaura SOLAR-COMBO SFC ZD | 3925.00 | 77 | 6 | Svc Fin Co | $33,957.40 | $33,957.40 | $32,488.74 | $1,468.66 |
| John Ricks SOLAR-COMBO SFC ZD | 3927.00 | 77 | 8 | Svc Fin Co | $31,453.52 | $31,453.52 | $31,453.52 | $1,572.68 |
| Karen Goo SOLAR-COMBO SFC ZD | 3966.00 | 77 | 7 | Svc Fin Co | $49,936.60 | $49,379.14 | $47,439.77 | $49,379.14 |
| Debbie Duffer SOLAR-COMBO SFC ZD | 4041.00 | 77 | 9 | Svc Fin Co | $38,994.40 | $38,994.40 | $38,994.40 | $1,842.49 |
| Linda Kamimoto SOLAR-COMBO SFC ZD | 4048.00 | 77 | 9 | Svc Fin Co | $66,780.25 | $77,822.13 | $77,822.13 | $13,963.52 |
| Nicholas Hottendorf SLR-COM SFC ZD | 4075.00 | 77 | 4 | Svc Fin Co | $0.00 | $67,272.40 | $66,217.35 | $67,272.40 |

| Job Name | Job# | Division | Queue Level | Financing | Amount Financed | Contract Value | Billed To Date | Balance Due |
|---|---|---|---|---|---|---|---|---|
| Nicholas Hottendorf SHW RPD SFC ZD | 4085.00 | 77 | 5 | Svc Fin Co | $0.00 | $8,478.50 | $6,582.45 | $8,478.50 |
| Jay Behrens SOLAR-COMBO SFC ZD | 4100.00 | 77 | 8 | Svc Fin Co | $0.00 | $56,017.41 | $56,017.41 | $2,800.90 |
| Patricia Calhau SOLAR-COMBO SFC ZD | 4115.00 | 77 | 9 | Svc Fin Co | $62,317.01 | $62,317.01 | $62,317.01 | $2,805.71 |
| Jennifer Liu SOLAR-COMBO SFC | 4130.00 | 77 | 6 | Svc Fin Co | $56,651.90 | $66,651.90 | $63,319.31 | $65,651.90 |
| Kelli Goya SOLAR-COMBO SFC ZD | 4133.00 | 77 | 8 | Svc Fin Co | $0.00 | $34,254.20 | $34,254.20 | $1,481.49 |
| Emma Boland SOLAR-COMBO SFC | 4168.00 | 77 | 2 | Svc Fin Co | $0.00 | $34,687.48 | $1,000.00 | $33,687.48 |
| Imelda Sanchez SHW SFC ZD | 4180.00 | 77 | 7 | Svc Fin Co | $6,045.00 | $6,795.00 | $5,742.75 | $1,052.25 |
| James Tapec SOLAR-COMBO SFC ZD | 4184.00 | 77 | 5 | Svc Fin Co | $42,959.00 | $42,959.00 | $0.00 | $42,959.00 |
| Chris Shimamoto SOLAR SFC | 4187.00 | 77 | 6 | Svc Fin Co | $19,661.60 | $20,661.60 | $19,628.52 | $19,661.60 |
| Imelda Sanchez SOLAR-COMBO SFC ZD | 4194.00 | 77 | 7 | Svc Fin Co | $37,691.00 | $37,691.00 | $35,806.45 | $2,143.97 |
| Shanika Velez SOLAR-COMBO SFC | 4205.00 | 77 | 7 | Svc Fin Co | $55,000.00 | $56,739.00 | $56,739.00 | $55,739.00 |
| Rohitashva Sharma SOLAR-COMBO SFCZD | 4230.00 | 77 | 7 | Svc Fin Co | $91,007.00 | $91,007.00 | $91,007.00 | $4,058.44 |
| Kevin Garcia SHW RPD SFC | 4244.00 | 77 | 7 | Svc Fin Co | $29,054.40 | $8,890.00 | $8,890.00 | $8,890.00 |
| Kevin Garcia SOLAR SFC | 4245.00 | 77 | 7 | Svc Fin Co | $29,054.40 | $21,914.40 | $21,914.40 | $20,914.40 |
| Ellen Rego SOLAR-COMBO SFC ZD | 4274.00 | 77 | 8 | Svc Fin Co | $38,313.40 | $38,313.40 | $38,313.40 | $1,676.21 |
| Paulo Peterson SOLAR-COMBO SFC | 4281.00 | 77 | 9 | Svc Fin Co | $55,259.00 | $56,259.00 | $56,259.00 | $0.00 |
| Joseph Manuel SOLAR-COMBO SFC | 4291.00 | 77 | 6 | Svc Fin Co | $45,000.00 | $62,749.00 | $31,874.50 | $61,749.00 |
| Joseph Manuel SHW RPD ZD | 4292.00 | 77 | 6 | Svc Fin Co | $45,000.00 | $12,134.42 | $5,692.21 | $12,134.42 |
| Elpidio Macaraeg SOLAR-COMBO SFC ZD | 4293.00 | 77 | 6 | Svc Fin Co | $32,739.00 | $32,739.00 | $16,369.50 | $32,739.00 |
| Dennis McPhee SOLAR-COMBO SFC ZD | 4294.00 | 77 | 9 | Svc Fin Co | $43,459.00 | $43,459.00 | $43,459.00 | $1,879.59 |
| Jayson Pangilinan SHW RPD SFC ZD | 4297.00 | 77 | 2 | Svc Fin Co | $0.00 | $9,290.00 | $0.00 | $9,290.00 |
| Ben & Milagros Tabin SOLARCOMBO SFC | 4310.00 | 77 | 7 | Svc Fin Co | $38,560.00 | $39,560.00 | $20,280.00 | $38,560.00 |
| Alfred Souza SOLAR-COMBO SFC ZD | 4324.00 | 77 | 5 | Svc Fin Co | $54,351.00 | $48,051.00 | $24,025.50 | $48,051.00 |
| Diane & Michael Oshiro SOLAR SFC-ZD | 4328.00 | 77 | 6 | Svc Fin Co | $31,153.40 | $22,498.40 | $21,781.87 | $716.53 |
| Anthony Young SHW | 4330.00 | 77 | 7 | Svc Fin Co | $7,553.92 | $7,553.92 | $3,776.96 | $7,164.64 |
| Ronald Stangeland SOLAR-COMBO GS ZD | 4339.00 | 77 | 6 | Svc Fin Co | $42,169.00 | $42,169.00 | $21,084.50 | $42,169.00 |
| Daniel Schwarz SOLAR-COMBO SFC ZD | 4353.00 | 77 | 8 | Svc Fin Co | $86,433.00 | $86,433.00 | $86,433.00 | $3,943.51 |
| Jeffrey Moore SOLAR-COMBO SFC ZD | 4360.00 | 77 | 6 | Svc Fin Co | $42,551.50 | $42,551.50 | $21,275.75 | $42,551.50 |
| Bob Makahilahila SOLAR-COMBO SFC ZD | 4366.00 | 77 | 9 | Svc Fin Co | $46,632.90 | $38,904.40 | $38,904.40 | $38,904.40 |
| Dave Mitsunaga SOLAR-COMBO SFC ZD | 4374.00 | 77 | 3 | Svc Fin Co | $49,058.49 | $42,661.50 | $0.00 | $42,661.50 |
| Dave Mitsunaga SHW RPD COMBO SFC ZD | 4375.00 | 77 | 3 | Svc Fin Co | $49,058.49 | $6,396.99 | $0.00 | $6,396.99 |
| Frances Ferreira SOLAR-COMBO SFC ZD | 4384.00 | 77 | 9 | Svc Fin Co | $33,113.90 | $33,113.90 | $33,113.91 | $1,432.17 |
| Tod Takahashi SOLAR-COMBO SFC ZD | 4421.00 | 77 | 6 | Svc Fin Co | $48,823.00 | $48,823.00 | $46,711.41 | $2,111.59 |
| Francoise Arrisgado SOL-COMBO SFCZD | 4422.00 | 77 | 6 | Svc Fin Co | $62,327.75 | $62,327.75 | $31,163.88 | $62,327.75 |
| Diana Oshiro SHW RPD | 4431.00 | 77 | 5 | Svc Fin Co | $31,153.40 | $9,405.00 | $7,938.47 | $1,466.53 |
| James Smith SOLAR-COMB SFC | 4452.00 | 77 | 6 | Svc Fin Co | $74,207.96 | $75,207.96 | $38,103.98 | $74,207.96 |
| Roslyn Catracchia SHW RPD SFC | 4454.00 | 77 | 7 | Svc Fin Co | $13,088.00 | $7,294.00 | $3,272.00 | $7,294.00 |
| Roslyn Catracchia SHW RPD SFC | 4455.00 | 77 | 7 | Svc Fin Co | $13,088.00 | $7,294.00 | $3,272.00 | $7,294.00 |
| Mark Marini SHW RPD | 4464.00 | 77 | 7 | Svc Fin Co | $81,326.85 | $8,893.85 | $4,071.93 | $8,893.85 |
| Mark Marini SOLAR-COMBO SFC ZD | 4465.00 | 77 | 6 | Svc Fin Co | $81,326.85 | $73,183.00 | $36,591.50 | $73,183.00 |
| Natalie Van Hooser SLR-COM SFC ZD | 4479.00 | 77 | 2 | Svc Fin Co | $69,090.67 | $61,267.64 | $0.00 | $61,267.64 |
| Natalie Van Hooser SHW RPD SFC ZD | 4480.00 | 77 | 2 | Svc Fin Co | $69,090.67 | $8,721.00 | $0.00 | $8,721.00 |
|  |  |  |  |  | $ 4,823,021.03 | $ | $ 3,300,704.09 | $ 3,040,986.22 |

**EXHIBIT A-2**

| Job Name | Job# | Division | Queue Level | Financing | Amount Financed | Contract Value | Billed To Date | Balance Due |
|---|---|---|---|---|---|---|---|---|
| Hauiki Guard House | 3338.00 | 10 | 8 | Cash | $0.00 | $22,502.16 | $10,696.91 | $11,805.25 |
| Shawn Privratsky SOLAR | 3480.00 | 75 | 9 | Cash | $0.00 | $46,706.74 | $45,706.73 | $1,000.01 |
| Dawn ROberts SOLAR-COMBO | 3521.00 | 75 | 8 | Cash | $0.00 | $66,759.85 | $56,895.88 | $32,879.92 |
| Gerald Klappert SOLAR-COMBO | 3774.00 | 75 | 9 | Cash | $0.00 | $103,636.76 | $103,636.76 | $15,395.51 |
| Erick Avena SOLAR-COMBO | 3877.00 | 75 | 6 | Cash | $0.00 | $93,006.79 | $47,003.40 | $46,003.39 |
| Tammy Gonsalves BATTERY SFC ZD | 4026.00 | 75 | 6 | Svc Fin Co | $0.00 | $13,999.00 | $13,299.00 | $13,999.00 |
| Tammy Gonsalves BATTERY | 4029.00 | 75 | 6 | Cash | $0.00 | $13,999.00 | $7,499.50 | $12,999.00 |
| Donald Decoite SOLAR-COMBO | 4156.00 | 75 | 8 | Cash | $0.00 | $102,995.00 | $87,695.75 | $50,997.50 |
| Brandon McCormick SHW RPD | 4256.00 | 75 | 8 | Cash | $0.00 | $7,909.40 | $3,579.70 | $4,329.70 |
| Lan Harper SOLAR-COMBO SFC ZD | 4302.00 | 75 | 6 | Svc Fin Co | $96,593.00 | $91,281.00 | $48,296.50 | $91,281.00 |
| Deborah Dennison SOLAR-COMBO | 4322.00 | 75 | 6 | Cash | $0.00 | $76,313.00 | $38,656.50 | $37,656.50 |
| Paul Petro SOLAR-COMBO | 4363.00 | 75 | 6 | Cash | $0.00 | $42,669.05 | $21,834.53 | $20,834.52 |
| Stewart Norrie Cottage - SOLAR | 4381.00 | 75 | 6 | Cash | $0.00 | $25,410.40 | $13,205.20 | $24,410.40 |
| Stewart Norrie Main - SOLAR | 4382.00 | 75 | 6 | Cash | $0.00 | $40,695.20 | $20,847.60 | $19,847.60 |
| Edward Baldwin SOLAR-COMBO | 4383.00 | 75 | 6 | Cash | $0.00 | $77,685.80 | $39,342.90 | $76,685.80 |
| Paul Stritmatter SOLAR COMBO | 4393.00 | 75 | 7 | Cash | $0.00 | $74,883.20 | $37,941.60 | $36,941.60 |
| Jean-Claude Madema-Sy SOLAR-COMBO | 4396.00 | 75 | 7 | Cash | $0.00 | $29,407.17 | $24,996.10 | $14,703.58 |
| Chuck Jackson SOLAR | 4406.00 | 75 | 7 | Cash | $0.00 | $19,574.10 | $10,287.05 | $9,287.05 |
| Bern Burkhater SOLAR-COMBO | 4415.00 | 75 | 6 | Cash | $0.00 | $34,921.13 | $17,960.57 | $17,013.56 |
| David Miller SOLAR-COMBO | 4417.00 | 75 | 7 | Cash | $0.00 | $93,233.00 | $47,116.50 | $92,233.00 |
| Gregory Jones SOLAR | 4419.00 | 75 | 3 | Cash | $0.00 | $45,596.68 | $1,000.00 | $44,596.68 |
| James Likes Batt Only | 4420.00 | 75 | 6 | Cash | $0.00 | $14,399.00 | $7,699.50 | $13,399.00 |
| Nicole David SOLAR SFC ZD | 4425.00 | 75 | 7 | Svc Fin Co | $0.00 | $27,679.52 | $13,839.76 | $27,679.52 |
| Michael Lofaro SOLAR | 4427.00 | 75 | 6 | Cash | $0.00 | $16,083.17 | $8,541.59 | $15,083.17 |
| Verne Murakami SOLAR-COMBO | 4436.00 | 75 | 6 | Svc Fin Co | $38,109.00 | $39,109.00 | $20,054.50 | $38,109.00 |
| John Israel III. SOLAR-COMBO | 4446.00 | 75 | 2 | Cash | $0.00 | $39,218.50 | $1,000.00 | $38,218.50 |
| John Israel III. SOLAR-COMBO | 4448.00 | 75 | 2 | Cash | $0.00 | $32,298.77 | $1,000.00 | $31,298.77 |
| Bob Wood SOLAR | 4456.00 | 75 | 6 | Cash | $0.00 | $15,568.48 | $8,284.24 | $14,568.48 |
| Mike Adams    SOLAR | 4458.00 | 75 | 5 | Cash | $0.00 | $14,658.63 | $7,829.32 | $13,658.63 |
| John Ritchie    SOLAR-COMBO | 4462.00 | 75 | 6 | Cash | $0.00 | $32,298.77 | $16,649.39 | $15,649.38 |
| Monsoon India   SOLAR-COMBO | 4468.00 | 75 | 1 | Cash | $0.00 | $149,780.12 | $1,000.00 | $148,780.12 |
| Guy Wilson SOLAR-COMBO | 4470.00 | 75 | 3 | Cash | $0.00 | $40,677.47 | $1,000.00 | $39,677.47 |
| Carol Holland SOLAR | 4471.00 | 75 | 3 | Cash | $0.00 | $18,711.91 | $1,000.00 | $17,711.91 |
| John Todd SOLAR | 4472.00 | 75 | 5 | Cash | $0.00 | $12,947.04 | $1,000.00 | $11,947.04 |
| Madeline Evangelista SHW RPD SFC ZD | 4476.00 | 75 | 1 | Svc Fin Pre | $0.00 | $6,350.62 | $0.00 | $6,350.62 |
| Spectrum Remove & Reinstall | 4477.00 | 10 | 1 | - | $0.00 | $285,366.23 | $0.00 | $285,366.23 |
| Thomas Dearborn  SOLAR-COMBO SLF ZD | 4478.00 | 75 | 1 | Sunlight Fin | $0.00 | $69,773.40 | $0.00 | $69,773.40 |
| Juvenal Ramos SHW RPD | 4482.00 | 75 | 2 | Cash | $0.00 | $10,904.82 | $4,802.41 | $6,202.41 |
| Erin Pasuca  SOLAR-COMB | 4486.00 | 75 | 2 | Cash | $0.00 | $33,400.00 | $1,000.00 | $32,400.00 |
| Peter Mueller  SOLAR SFC ZD | 4488.00 | 75 | 2 | Svc Fin Co | $0.00 | $12,653.56 | $0.00 | $12,653.56 |
| Robert Szakacs SOLAR | 4491.00 | 75 | 3 | Cash | $0.00 | $16,667.82 | $1,000.00 | $15,667.82 |
| Michael Martin SOLAR-COMBO | 4492.00 | 75 | 6 | Cash | $0.00 | $77,311.00 | $39,155.50 | $38,155.50 |
| Mickey Montgomery  SOLAR-COMBO | 4494.00 | 75 | 2 | Cash | $0.00 | $32,660.91 | $1,000.00 | $31,660.91 |
| Robbie Reneau SHW RPD | 4496.00 | 75 | 6 | Cash | $0.00 | $6,552.10 | $2,526.05 | $4,026.05 |

| Job Name | Job# | Division | Queue Level | Financing | Amount Financed | Contract Value | Billed To Date | Balance Due |
|---|---|---|---|---|---|---|---|---|
| Elizabeth Carter SOLAR | 4498.00 | 75 | 2 | Cash | $0.00 | $10,188.84 | $1,000.00 | $9,188.84 |
| James Gomes  SHW RPD | 4499.00 | 75 | 2 | Cash | $0.00 | $8,031.90 | $3,265.95 | $4,765.95 |
| Angela Goddard SOLAR-COMBO SFC ZD | 4501.00 | 75 | 2 | Svc Fin Co | $0.00 | $58,401.68 | $0.00 | $58,401.68 |
| Carol Hoopii  SOLAR | 4502.00 | 75 | 2 | Svc Fin Co | $0.00 | $37,422.00 | $0.00 | $37,422.00 |
| Cestmir Herstus  SOLAR-COMBO | 4503.00 | 75 | 1 | Cash | $0.00 | $32,263.28 | $1,000.00 | $31,263.28 |
| Bob Yonahara - SHW RPD | 4505.00 | 75 | 2 | Cash | $0.00 | $6,663.14 | $2,581.57 | $4,081.57 |
| Grace Gomes SOLAR-COMBO | 4506.00 | 75 | 2 | Cash | $0.00 | $39,062.60 | $1,000.00 | $38,062.60 |
| Lillian Torrecer SHW RPD | 4508.00 | 75 | 2 | Cash | $0.00 | $6,476.58 | $2,488.29 | $3,988.29 |
| Phillip Culver  BATTERY | 4510.00 | 75 | 2 | Cash | $0.00 | $14,899.00 | $1,000.00 | $13,899.00 |
| Brian Gabrielson SHW RPD | 4511.00 | 75 | 2 | Cash | $0.00 | $8,239.60 | $3,369.80 | $4,869.80 |
| Jerry Barrera SHW RPD | 4512.00 | 75 | 1 | Cash | $0.00 | $7,559.39 | $2,120.79 | $5,438.60 |
| David Politano SHW | 4515.00 | 75 | 1 | - | $0.00 | $8,094.40 | $4,047.20 | $8,094.40 |
| Jonathan Kindred  SOLAR | 17166.00 | 75 | 9 | Cash | $0.00 | $479,194.59 | $239,597.30 | $241,197.29 |
| | | | | | $ 0.00 | $ 2,844,752.27 | $ 1,097,351.89 | $ 2,063,611.36 |

Exhibit "B"
List of Existing A/R

| Name | Cust# | Total Contract | Current | Over 30 | Over 60 | Over 90 | Total |
|---|---|---|---|---|---|---|---|
| Alipio, Thomas | 613145 | $40,512.60 | $ - | $ - | $ - | $ 6,076.89 | $ 6,076.89 |
| Altenhof, Bruce | 57230 | $34,453.95 | $ - | $ - | $ - | $ 9,736.19 | $ 9,736.19 |
| Anbe, Stanley | 61237 | $6,471.20 | $ - | $ - | $ - | $ 750.00 | $ 750.00 |
| Arrisgado, Francoise | 613506 | $62,327.75 | $ 31,163.88 | $ - | $ - | $ - | $ 31,163.88 |
| Ayabe, Alison | 613690 | $193.72 | $ 193.72 | $ - | $ - | $ - | $ 193.72 |
| Baker, David H | 56481 | $35,399.55 | $ (1,950.00) | $ - | $ - | $ 2,700.00 | $ 750.00 |
| Beale, Calvin | 613037 | $42,959.00 | $ - | $ - | $ - | $ 1,814.72 | $ 1,814.72 |
| Behrens, Jay | 612941 | $56,017.41 | $ - | $ - | $ - | $ 2,800.90 | $ 2,800.90 |
| Beltran, Norma | 612881 | $56,388.41 | $ - | $ - | $ - | $ (49.99) | $ (49.99) |
| Brice, Barry | 793 | $13,000.00 | $ - | $ - | $ - | $ (17,395.00) | $ (17,395.00) |
| Brown, Nicki | 613047 | $70,139.00 | $ 31,085.50 | $ - | $ - | $ 22,403.50 | $ 53,489.00 |
| Buenavista, Anthony D | 613063 | $6,472.00 | $ - | $ - | $ - | $ (2,099.76) | $ (2,099.76) |
| Businger, Steven | 613499 | $18,577.00 | $ - | $ - | $ 788.50 | $ - | $ 8,788.50 |
| CC Engineering & Cons | 1189 | | $ 123,071.86 | $ - | $ - | $ 120,834.52 | $ 243,906.38 |
| Cabuyadao, Maria | 58813 | $12,939.26 | $ - | $ - | $ - | $ 2,094.63 | $ 2,094.63 |
| Calhau, Patricia | 612955 | $62,317.01 | $ - | $ - | $ - | $ 2,805.71 | $ 2,805.71 |
| Carley, William | 613232 | $7,413.61 | $ - | $ - | $ - | $ 750.00 | $ 750.00 |
| Castagnetti, Gene | 613002 | $57,502.83 | $ - | $ - | $ - | $ 16,517.61 | $ 16,517.61 |
| Catracchia, Roslyn | 613568 | $7,294.00 | $ 6,544.00 | $ - | $ - | $ - | $ 6,544.00 |
| Caywood, Hershel | 612995 | $366.50 | $ - | $ - | $ - | $ 100.00 | $ 100.00 |
| Centeio, William | 57971 | $43,450.36 | $ - | $ - | $ - | $ 38,161.12 | $ 38,161.12 |
| Chang, Beverly | 613094 | $47,700.60 | $ - | $ - | $ - | $ 23,350.30 | $ 23,350.30 |
| Chock, Gordon | 59399 | $31,421.48 | $ - | $ - | $ 422.00 | $ 22,999.48 | $ 23,421.48 |
| Clark, Jack Randolf | 60789 | $35,159.80 | $ - | $ - | $ - | $ 700.00 | $ 700.00 |
| Clark, Richard | 612867 | $7,209.00 | $ - | $ - | $ - | $ 750.00 | $ 750.00 |
| Clement, Harriet | 57730 | $17,800.00 | $ - | $ - | $ - | $ 13,055.00 | $ 13,055.00 |
| Cunningham, Robert & | 1343 | $9,359.16 | $ - | $ - | $ - | $ (1,000.00) | $ (1,000.00) |
| Demello, Dori | 1346 | $69,617.00 | $ - | $ - | $ - | $ 59,174.45 | $ 59,174.45 |
| Deponte, Waltin | 613295 | $55,989.00 | $ - | $ - | $ - | $ 8,248.35 | $ 8,248.35 |
| Drypolcher, Trudy & B | 866 | $42,843.00 | $ - | $ - | $ - | $ 4,284.30 | $ 4,284.30 |
| Duffer, Debbie | 612865 | $38,994.40 | $ - | $ 1,842.49 | $ - | $ - | $ 1,842.49 |
| Durante, Nani | 60044 | $34,365.85 | $ - | $ - | $ - | $ 29,210.98 | $ 29,210.98 |
| Emerick, John | 613123 | $9,319.37 | $ - | $ - | $ - | $ 4,659.69 | $ 4,659.69 |

| Name | Cust# | Total Contract | Current | Over 30 | Over 60 | Over 90 | Total |
|------|-------|----------------|---------|---------|---------|---------|-------|
| Endicott, John S | 60153 | $66,134.39 | $ - | $ | $ | $ 33,067.20 | $ 33,067.20 |
| F & H Construction | 945 | | $ | $ | $ | $ 3,912.51 | $ 3,912.51 |
| Ferreira, Frances | 613413 | $33,113.91 | $ 1,432.18 | $ | $ | $ - | $ 1,432.18 |
| Garces, Melvyn | 60949 | $14,000.00 | $ | $ | $ 329.20 | $ | $ 329.20 |
| Garcia, Kevin | 613134 | $30,804.40 | $ | $ | $ | $ 29,804.40 | $ 29,804.40 |
| Gaston, Michael | 1221 | $41,529.05 | $ | $ | $ | $ 36,402.80 | $ 36,402.80 |
| Gines, Giancarlo | 59749 | $62,347.88 | $ | $ | $ 954.88 | $ 53,651.10 | $ 55,605.98 |
| Goo, Karen | 60931 | $49,379.14 | $ | $ | $ | $ 47,439.77 | $ 47,439.77 |
| Goto, Edwin | 613633 | $6,613.36 | $ 2,681.68 | $ | $ | $ - | $ 2,681.68 |
| Goya, Kelli | 612971 | $34,254.20 | $ | $ | $ | $ 1,481.49 | $ 1,481.49 |
| Guzman, Catalina | 60112 | $21,587.50 | $ | $ | $ | $ (1,000.00) | $ (1,000.00) |
| Haga, Harold | 613455 | $30,482.17 | $ | $ | $ | $ 1,000.00 | $ 1,000.00 |
| Hau, Kathleen | 613084 | $7,591.62 | $ | $ | $ | $ 700.00 | $ 700.00 |
| Hayashibara, Jacqueli | 613166 | $35,627.48 | $ | $ | $ 194.12 | $ - | $ 5,194.12 |
| Hee, Patricia | 613478 | $7,413.61 | $ 750.00 | $ | $ | $ - | $ 750.00 |
| Higa, Jessica | 612972 | $89,846.32 | $ | $ | $ 675.11 | $ - | $ 6,675.11 |
| Higa, Kathy | 612889 | $32,413.40 | $ | $ 4,712.01 | $ | $ | $ 4,712.01 |
| Higashi, Gary | 612882 | $64,600.37 | $ | $ | $ | $ 64,600.37 | $ 64,600.37 |
| Hokama, Dustin | 60702 | $41,253.62 | $ | $ | $ | $ 13,440.49 | $ 13,440.49 |
| Hottendorf, Nicholas | 612915 | $75,750.90 | $ | $ | $ | $ 72,799.80 | $ 72,799.80 |
| Imamura, Janice | 613044 | $34,645.80 | $ | $ | $ | $ 1,791.03 | $ 1,791.03 |
| Inciong, Perfecto | 613260 | $14,287.32 | $ | $ | $ | $ 8,163.62 | $ 8,163.62 |
| Ishizuka, Russell | 612950 | $30,539.89 | $ | $ | $ | $ 14,769.94 | $ 14,769.94 |
| Kaai, John | 1212 | $41,074.00 | $ 20,537.00 | $ | $ | $ - | $ 20,537.00 |
| Kamimoto, Linda | 612883 | $77,822.13 | $ | $ | $ | $ 13,963.52 | $ 13,963.52 |
| Kaminaga, Michael | 613142 | $40,131.00 | $ | $ | $ 869.65 | $ - | $ 5,869.65 |
| Kanno, Lora & Roland | 612859 | $77,798.60 | $ | $ | $ | $ 26,879.51 | $ 26,879.51 |
| Kumar Sharma, Rohitas | 1588 | $91,007.00 | $ | $ | $ | $ 4,058.44 | $ 4,058.44 |
| Lien, Christina | 58145 | $52.64 | $ | $ | $ | $ 52.64 | $ 52.64 |
| Liu, Jennifer | 612968 | $66,651.90 | $ | $ | $ | $ 62,319.31 | $ 62,319.31 |
| Liu, Joe | 58895 | $248.08 | $ | $ | $ | $ 245.08 | $ 245.08 |
| Long, John | 56825 | $27,840.20 | $ | $ | $ | $ 23,664.17 | $ 23,664.17 |
| Low, Eli | 613604 | $63,068.36 | $ 31,534.18 | $ | $ | $ - | $ 31,534.18 |

| Name | Cust# | Total Contract | Current | Over 30 | Over 60 | Over 90 | Total |
|---|---|---|---|---|---|---|---|
| Lum, Dolores | 58871 | $7,989.53 | $ - | $ - | $ - | $ 4,369.77 | $ 4,369.77 |
| Lumpkin, George | 60081 | $34,374.48 | $ (2,880.08) | $ - | $ - | $ 37,254.56 | $ 34,374.48 |
| Luna, Carole | 613053 | $886.76 | $ - | $ - | $ - | $ 100.00 | $ 100.00 |
| Lutz, Christine | 613093 | $76,616.60 | $ - | $ - | $ - | $ 39,258.30 | $ 39,258.30 |
| Macaraeg, Elpidio | 613210 | $32,739.00 | $ - | $ - | $ - | $ 16,369.50 | $ 16,369.50 |
| Makahilahila, Robert | 613366 | $46,632.90 | $ 19,452.20 | $ - | $ 864.25 | $ 23,316.45 | $ 46,632.90 |
| Mamuad, Eddie | 60685 | $57,394.60 | $ - | $ - | $ - | $ 9,518.75 | $ 9,518.75 |
| Manuel, Joseph | 613209 | $62,749.00 | $ - | $ - | $ - | $ 36,566.71 | $ 36,566.71 |
| Marini, Mark | 613586 | $82,076.85 | $ 40,663.43 | $ - | $ - | $ - | $ 40,663.43 |
| Mathias, Bennet | 60739 | $32,164.80 | $ - | $ - | $ - | $ 27,779.35 | $ 27,779.35 |
| Mayo, Arline | 613154 | $37,653.40 | $ - | $ - | $ - | $ 3,726.09 | $ 3,726.09 |
| Mayo, Mercy | 613643 | $3,618.85 | $ 1,809.42 | $ - | $ - | $ - | $ 1,809.42 |
| McPhee, Dennis | 613212 | $43,459.00 | $ - | $ - | $ - | $ 1,879.59 | $ 1,879.59 |
| Meyer, Leilani | 613301 | $35,319.20 | $ - | $ - | $ - | $ 17,159.60 | $ 17,159.60 |
| Milare, Chadrick | 612970 | $37,787.69 | $ 1,144.54 | $ - | $ - | $ 5,346.47 | $ 6,491.01 |
| Moore, Jeffrey | 613348 | $42,551.50 | $ - | $ - | $ - | $ 21,275.75 | $ 21,275.75 |
| Morimoto, Renee | 58960 | $79,098.74 | $ - | $ - | $ - | $ 37,500.00 | $ 37,500.00 |
| Nagasawa, Roy K | 58785 | $34,526.11 | $ 7,057.65 | $ - | $ - | $ - | $ 7,057.65 |
| Nelms, Chris | 59116 | $36,256.92 | $ - | $ 5,288.54 | $ - | $ - | $ 5,288.54 |
| Ogata, Kathy | 58142 | $118,555.49 | $ - | $ - | $ - | $ 16,340.65 | $ 16,340.65 |
| Omoto, Norita | 60156 | $33,757.50 | $ - | $ - | $ 460.01 | $ - | $ 1,460.01 |
| Oshiro, Rick | 59936 | $63,774.66 | $ - | $ - | $ - | $ 43,358.46 | $ 43,358.46 |
| Oyadomari, Felice | 613136 | $56,305.00 | $ - | $ 3,583.78 | $ 130.50 | $ 44,503.80 | $ 52,218.08 |
| PD Hawaii | pdhw | | $ (3,726.09) | $ - | $ - | $ - | $ (3,726.09) |
| Pantaleon, Allen R | 56334 | $14,308.32 | $ - | $ - | $ - | $ 4,640.42 | $ 4,640.42 |
| Paresa, Betty | 613460 | $11,901.60 | $ - | $ (1,000.00) | $ - | $ - | $ (1,000.00) |
| Peacock, Mark | 60047 | $65,465.00 | $ - | $ - | $ - | $ 3,733.00 | $ 3,733.00 |
| Perez, Cynthia | 613143 | $8,609.16 | $ - | $ - | $ - | $ (3,929.58) | $ (3,929.58) |
| Peros, Abraham | 613060 | $61,671.00 | $ - | $ - | $ 624.01 | $ - | $ 2,624.01 |
| Puuwai O Makaha | 1601 | | $ - | $ - | $ - | $ 134,795.82 | $ 134,795.82 |
| Rego, Ellen | 613175 | $38,313.40 | $ - | $ - | $ - | $ 1,676.21 | $ 1,676.21 |
| Ricks, John | 60752 | $31,453.52 | $ - | $ - | $ - | $ 1,572.68 | $ 1,572.68 |
| Ritson, Vince | 613022 | $13,849.60 | $ - | $ - | $ - | $ 1,927.44 | $ 1,927.44 |

| Name | Cust# | Total Contract | Current | Over 30 | Over 60 | Over 90 | Total |
|---|---|---|---|---|---|---|---|
| Robinson, Glen | 612978 | $393.94 | $ - | $ - | $ - | $ 100.00 | $ 100.00 |
| Sabalboro, Roy | 1416 | $7,303.66 | $ - | $ - | $ - | $ 750.00 | $ 750.00 |
| Sakuma, Roland | 613556 | $8,149.74 | $ - | $ - | $ (50.00) | $ - | $ (50.00) |
| Sanchez, Imelda | 613050 | $6,795.00 | $ - | $ - | $ - | $ 259.42 | $ 259.42 |
| Schwarz, Daniel | 613335 | $20,359.00 | $ - | $ - | $ - | $ 3,943.51 | $ 3,943.51 |
| Shigemura, Gary | 1235 | $387.44 | $ - | $ - | $ - | $ (193.72) | $ (193.72) |
| Shimamoto, Chris M | 58829 | $30,415.84 | $ - | $ - | $ - | $ 18,628.52 | $ 18,628.52 |
| Shiraishi, Barney | 613169 | $34,634.76 | $ - | $ - | $ - | $ 16,817.38 | $ 16,817.38 |
| Smith, James | 613563 | $75,207.96 | $ 37,103.98 | $ - | $ - | $ - | $ 37,103.98 |
| Smith, Karen | 613553 | $34,252.68 | $ - | $ - | $ - | $ - | $ 1,000.00 |
| Soares, Steve | 1407 | $6,252.60 | $ - | $ - | $ - | $ 750.00 | $ 750.00 |
| Souza, Alfred | 613238 | $48,051.00 | $ - | $ - | $ - | $ 24,025.50 | $ 24,025.50 |
| Souza, Bunnette | 613353 | $228.69 | $ - | $ - | $ - | $ 228.69 | $ 228.69 |
| Stangeland, Ronald | 613298 | $42,169.00 | $ - | $ - | $ - | $ 21,084.50 | $ 21,084.50 |
| Szymanski, Tytus | 1278 | $96,194.00 | $ - | $ - | $ - | $ 9,519.40 | $ 9,519.40 |
| Tabin, Ben & Milagros | 613250 | $39,560.00 | $ - | $ - | $ - | $ 19,280.00 | $ 19,280.00 |
| Takara, Brent | 613243 | $42,959.00 | $ - | $ - | $ - | $ 6,443.85 | $ 6,443.85 |
| Takenaka, Steven | 613241 | $59,733.00 | $ - | $ - | $ 315.95 | $ 5,823.30 | $ 6,139.25 |
| Talion Construction, | 927 | $ - | $ - | $ - | $ - | $ 4,899.87 | $ 4,899.87 |
| Tester, Kenneth | 1158 | $1,703.51 | $ - | $ - | $ - | $ 425.87 | $ 425.87 |
| Thomas, Nancy | 613433 | $7,959.03 | $ - | $ (1,000.00) | $ - | $ - | $ (1,000.00) |
| Toma, Sharon | 613213 | $68,670.20 | $ 10,150.53 | $ - | $ - | $ 9,684.57 | $ 19,835.10 |
| Tonkel, Jeff | 612868 | $29,880.00 | $ - | $ - | $ - | $ 14,440.00 | $ 14,440.00 |
| Trafford, Clark | 613559 | $59,950.30 | $ 29,975.15 | $ - | $ - | $ - | $ 29,975.15 |
| Uyematsu, Debbie | 1267 | $41,100.72 | $ - | $ - | $ - | $ 34,935.61 | $ 34,935.61 |
| Velez, Shanika | 613090 | $56,739.00 | $ - | $ - | $ - | $ 55,739.00 | $ 55,739.00 |
| Whitcomb, Jim | 1291 | $25,165.26 | $ - | $ - | $ - | $ 25,165.26 | $ 25,165.26 |
| Wolf, Alan | 57217 | $7,763.09 | $ - | $ - | $ - | $ 750.00 | $ 750.00 |
| Wong, Raleigh | 613427 | $43,493.60 | $ 6,374.04 | $ - | $ - | $ - | $ 6,374.04 |
| Yamashita, Dylan | 57838 | $38,128.75 | $ - | $ - | $ - | $ 49.99 | $ 49.99 |
| Yee, Charlotte | 613088 | $13,157.12 | $ - | $ - | $ - | $ 0.57 | $ 0.57 |
| Young, Anthony | 613233 | $38,406.04 | $ - | $ - | $ - | $ 3,387.68 | $ 3,387.68 |
| | | $4,605,742.91 | $ 394,168.77 | $ 13,426.82 | $ 6,578.18 | $ 1,693,619.34 | $ 2,143,793.11 |

Exhibit "C"
List of Tangible Personal Property

412235-v10

## EXHIBIT C-1

| Vehicle # | Lic. # | Year | Make | Vin # | Location | Cost (new) | Currently Running | |
|---|---|---|---|---|---|---|---|---|
| 1 | 826MDG | 2006 | Chevy Express | 1GCHG39U761217635 | 96732 | 28,475 | yes | Joe G. |
| 3 | 136TV8 | 2013 | FORD E-250 | 1FTNE2EW1DDB13003 | 96732 | 28,785 | yes | Joey M. |
| 5 | 483MDH | 2008 | DODGE SXT | 1D7HE32K88S528203 | 96732 | 23,165 | yes | Oma S. |
| 9 | 508TTP | 2011 | FORD F-150 | 1FTNF1CF3BKD23959 | 96732 | 22,790 | yes | Service Dept. |
| 11 | 686TTY | 2013 | FORD F-150 | 1FTNF1CF3DKD97479 | 96732 | 24,070 | yes | Koa K. |
| 13 | 257MDJ | 2013 | FORD F-150 | 1FTFW1ET0DFA38980 | 96732 | 32,880 | yes | Roofing |
| 16 | 504TTU | 2012 | FORD E-250 | 1FTNE2EW7CDA27709 | 96732 | 27,630 | yes | Trevor C. |
| 17 | 238MDH | 2008 | FORD RANGER | 1FTYR10U08PA56847 | 96732 | 14,490 | yes | dead battery |
| 18 | 994TTU | 2012 | FORD F-150 | 1FTNF1CF1CKD33746 | 96732 | 23,500 | yes | Spare Install |
| 21 | 223MDH | 2007 | FORD F-150 | 1FTRF12277NA15120 | 96732 | 18,275 | yes | Ronald D. |
| 22 | 882TRR | 2004 | FORD RANGER | 1FTYR10D84PB27609 | 96732 | 14,575 | yes | dead battery |
| 23 | 615TTG | 2010 | DODGE RAM | 3D7JB1EP6AG133116 | 96732 | 20,610 | yes | Ikaika H. |
| 24 | 511TTP | 2011 | FORD F-150 | 1FTNF1CF1BKD23958 | 96732 | 22,790 | yes | Ernesto V. |
| 25 | 978MDM | 2008 | FORD F-350 | 1FSTW30RX8EB55337 | 96732 | 36,835 | yes | Roofing |
| 26 | 554MDJ | 2013 | ORD F-450 Dump Tru | 1FD0W4HT8DEA81340 | 96732 | 49,395 | yes | Roofing |
| 27 | 954MDE | 2007 | FORD CLF Flat Bed | 3FRLL45287V500530 | 96732 | 19,950 | yes | Shop Flat |
| 30 | 525MDH | 2007 | FORD E-250 | 1FTNE24L37DB01463 | 96732 | 24,530 | yes | Spare Electrical |
| 31 | 328MDR | 2019 | NISSAN VAN L | 1N6BF0KM0KN800825 | 96732 | 30,430 | yes | PD LEASE |
| 33 | LHS136 | 2017 | FORD F-150 ADMIN | 1FTEW1CG1HKD73566 | 96732 | 35,905 | yes | ADMIN |
| 34 | 720MDF | 2004 | FORD F-250 BIG RED | 1FTNX20L34EB86679 | 96732 | | yes | SHOP Big Red |

**EXHIBIT C-2**

| 11 | LICENSE PLATE | YEAR | MAKE | Model | VIN # |
|---|---|---|---|---|---|
| 1 | 581 TVW | 2008 | Dodge | PKUP | 3D7KR26D58G120118 |
| 2 | 311 TTC | 2009 | Dodge | PKUP | 1D3HB16P99J515987 |
| 3 | 587KBN | 2009 | CHEVY | Vanl | 1GCGG25C191128960 |
| 4 | 043 TTV | 2012 | FORD | PKUP | 1FTNF1CF7CKD33749 |
| 5 | 511 TTP | 2011 | FORD | PKUP | 1FTNF1CF3BKD32502 |
| 6 | 579 TTP | 2011 | FORD | PKUP | 1FTNF1CF1BKD32501 |
| 7 | 426 TTF | 2010 | FORD | Vans | 1FTNE2EW4ADA28975 |
| 8 | 130 TTV | 2012 | FORD | PKUP | 1FTNF1CF8CKD39723 |
| 9 | 130 TTW | 2011 | FORD | Vanl | 1N6BF0KX4CN116355 |
| 10 | 131 TTV | 2012 | FORD | PKUP | 1FTNF1CF9CKD39715 |
| 11 | 615 TVW | 2009 | FORD | PKUP | 1FTNF20519EA28840 |
| 12 | 474 MDA | 2005 | FORD | FTBD | 1FDWF365X5EB33108 |
| 13 | Maui | Maui | Maui | Maui | Maui |
| 14 | 389 TTD | 2012 | FORD | Van | 1FTNEW3ADA27557 |
| 15 | 305 MDD | 2006 | FORD | | 1FTSE34P16DA91431 |
| 16 | 188 TTV | 2012 | FORD | | 1FTNF1CF6CKD39722 |
| 17 | 267 TTV | 2003 | TOYOTA | TRK | 5TBRT34153S370325 |
| 18 | Maui | Maui | Maui | Maui | Maui |
| 19 | 823HDP | 2009 | CHEVY | Van | 1GHC44K19F142316 |
| 20 | 299 TTV | 2005 | CHEVY | PKUP | 1GCHK23U15F922871 |
| 21 | 544 TTW | 2000 | CHEVY | sold | 2GCEC19T5Y1409160 |
| 22 | 874 MDF | 2008 | Chevy | FTBD | 1GBDS14E488147110 |
| 23 | 759 MDL | 2011 | FORD | PKUP | 1FKR1AE089PA22766 |
| 24 | 259 TTY | 2012 | Nissan | Van | 1N6BK0KX2CN106214 |
| 25 | 291 TTX | 2012 | FORD | | 1FDSE3FL5CDA82183 |
| 26 | 522 MDD | 2002 | Ford | FTBD | FDWF37F12EB44825 |
| 27 | 575TTP | 2011 | FORD | PKUP | FTNF1CF9BKD32505 |
| 28 | 113 TWZ | 2019 | Nissan | Vanl | N6BF0KM7KN809277 |

## Warehouse Inventory

1-Forklift
2-Wheel Barrel
3-Tall Propane Tank
3-Small Propane Tank
2-Greentree pipe benders
1-Weed Wacker
2-Rigid Chop Saw
1-Dewalt Chop Saw
2-Portable lights
1-D25980 Pavement Bracker
3-Milwakee Bandsaw
1-Royobi Drill Press
1-Milwakee corded Drill
1-Portable Air Compressor
1-Milwakee Mudgun
1-Rigid Shop Vac
2-Pallet Banding Carriers
1-Pipe Threader
1-Echo PB-250LN  Leaf Blower
2-5 Gallon Gas Cans
Ladders
1-40ft
5-32ft
8-16ft
1-8ft
2-28ft
2-6ft
4-ladder Horns
1-ladder Stabilizer
71-Safety Cones
1-Retrackable ladder
7-Racks
6-Shovels
2-Scrub Brushes with poles
2-Water Hoses
1-Bolt Cutters
2-Dollies
3-Brooms

**EXHIBIT C-4**

# PDH Maui Inventory

| ITEM | # |
|---|---|
| Computer Monitor | 37 |
| Computer Processor | 25 |
| Computer Mouse | 21 |
| Computer Keyboard | 18 |
| Computer Mousepad | 12 |
| Telephone | 18 |
| Desk Chairs | 52 |
| Desks | 3 |
| Cubicles | |
| Cubicle Filing Cabinets | |
| Filing Cabinets | 62 |
| Bookshelf/Other Cabinets | 6 |
| OTHER: Xerox | 3 |
| OTHER: Laptops | 4 |
| OTHER: Conference Table | 1 |
| OTHER: Water Dispenser | 1 |
| OTHER: Refrigerator | 3 |
| OTHER: Microwave | 2 |
| OTHER: Coffee Maker | 2 |
| OTHER: TVs | 2 |
| OTHER: Shredder | 2 |
| OTHER: Lock Box | 2 |
| OTHER: MC/VISA | 1 |
| OTHER: Random Chairs | 18 |
| OTHER: Speakers | 18 |
| OTHER: White Boards/Cork Boards | 21 |
| OTHER: Tables | 2 |

**EXHIBIT C-5**

PDH Inventory

| Item | # |
|------|---|
| Computer Monitor | 45 |
| Computer Processor | 23 |
| Computer Mouse | 23 |
| Computer Keyboard | 25 |
| Computer Mousepad | 16 |
| Telephone | 21 |
| Desk Chairs | 34 |
| Desks | 38 |
| Cubicles | 9 |
| Cubicle Filing Cabinets | 19 |
| Filing Cabinets | 24 |
| Bookshelf/Other Cabinets | 24 |
| OTHER: Xerox | 2 |
| OTHER: Laptops | 7 |
| OTHER: Conference Table | 1 |
| OTHER: Water Dispenser | 2 |
| OTHER: Refrigerator | 2 |
| OTHER: Microwave | 2 |
| OTHER: Coffee Maker | 1 |
| OTHER: TVS | 5 |

| | |
|---|---|
| OTHER: Shredder | 2 |
| OTHER: Lock Box | 1 |
| OTHER: MC/VISA | 1 |
| OTHER: Random Chairs | 37 |
| OTHER: Speakers | 8 |
| OTHER: White Boards/Cork Boards | 14 |
| OTHER: Tables | 5 |

IN/R5:PD Hawaii, LLC
Run 07/28/20 at 04:11 PM

DIVISION 77 INVENTORY AS OF JULY 28, 2020

Page 1

| Category | Code | Description | U/M | Yard 77 Cost | Value (Cost x Units) | Units | Actual |
|---|---|---|---|---|---|---|---|
| PVC | conds1 | conduit strap 1" | ea | 0.36 | 16.56 | 46 | |
| | conds1.1/4 | conduit strap 1 1/4" | ea | 0.43 | 9.03 | 21 | |
| | coup1 | coupling 1" | ea | 0.22 | 0.88 | 4 | |
| | coup2 | coupling 2" | ea | 0.49 | 26.95 | 55 | |
| | fa1 | female adapter 1" | ea | 0.36 | 8.64 | 24 | |
| | fa1.1/4 | female adapter 1 1/4" | ea | 0.45 | 2.25 | 5 | |
| | gfci | GFCI | ea | 22.50 | -90.00 | -4 | |
| | hclamp | hose clamp | ea | 2.54 | 17.78 | 7 | |
| | iglue | insol glue | ea | 7.69 | 30.76 | 4 | |
| | indoort | gray indoor timer | ea | 54.71 | 109.42 | 2 | |
| | lockr1.1/4 | lock ring 1 1/4" | ea | 0.37 | 27.75 | 75 | |
| | lockr2 | lock ring 2" | ea | 0.58 | 5.80 | 10 | |
| | mv3/4e | mixing valve 3/4 ends | ea | 103.3846 | 413.54 | 4 | |
| | pbush1 | plastic bushing 1" | ea | 0.24 | 3.36 | 14 | |
| | pump115v | pump 115v | ea | 166.25 | 665.00 | 4 | |
| | rprv | roof PR valve | ea | 24.87 | 820.71 | 33 | |
| | solder | solder | ea | 19.14 | 153.12 | 8 | |
| | tcl15v | temp controller 115v | ea | 138.25 | 691.25 | 5 | |
| | ttg | tank temp garage | ea | 0.00 | 0.00 | 2 | |

Category "PVC" Total for 19 Materials:                                     2,912.80

| Thermal | 1/2"copper | 1/2 Copper Pipe 20' | ea | 20.06 | 300.90 | 15 | |
|---|---|---|---|---|---|---|---|
| | 1/2s45d | 1/2 sweat 45 degree | ea | 1.05 | 157.50 | 150 | |
| | 1/2s90d | 1/2 sweat 90 degree | ea | 0.51 | 20.40 | 40 | |
| | 1sx3/4fa | 1" sweat x 3/4 female adaptor | ea | 8.13 | 113.82 | 14 | |
| | 1x1/2.90d | 1" x 1/2" 90 degree | ea | 7.31 | 248.54 | 34 | |
| | 3/4"copper | 3/4 Copper Pipe 20' | ea | 7.00 | 56.00 | 8 | |
| | 3/4s45d | 3/4 sweat 45 degree | ea | 1.7796 | 24.91 | 14 | |
| | 3/4s90d | 3/4 sweat 90 degree | ea | 1.09 | 25.07 | 23 | |
| | 3/4sc | 3/4 sweat cap | ea | 3.52 | 147.84 | 42 | |
| | 3/4sfc | 3/4 sweat female coupling | ea | 0.75 | 31.50 | 42 | |
| | 34x312brnp | 3/4"x3 1/2" Brass Nipple | ea | 3.78 | 7.56 | 2 | |
| | FLXbrsh | Flux Brush | ea | 0.238 | 6.66 | 28 | |
| | Prosealnt | 1/2 PT DOPE THRD SEALANT | ea | 5.893 | 11.79 | 2 | |
| | bcf3/4 | brass cap female 3/4 | ea | 3.02 | 51.34 | 17 | |
| | bdb1/2 | boiler drain brass 1/2" | ea | 9.51 | 85.59 | 9 | |
| | bn3/4x21/2 | brass nipple 3/4 x 2 1/2" | ea | 3.36 | 20.16 | 6 | |
| | bpu1/2s | brass pump union 1/2 sweat | ea | 32.62 | 32.62 | 1 | |
| | brt3/4 | brass T - 3/4 x 3/4 x 3/4 | ea | 5.74 | 396.06 | 69 | |
| | brt3/4x1/2 | brass T - 3/4 x 1/2 x 3/4 | ea | 7.42 | 222.60 | 30 | |
| | bv1/2 | ball valve 1/2" | ea | 11.96 | 119.60 | 10 | |
| | bv3/4 | ball valve 3/4" | ea | 12.59 | 25.18 | 2 | |
| | chva1/2 | check valve 1/2" | ea | 21.36 | 149.52 | 7 | |
| | chva3/4 | check valve 3/4" | ea | 33.96 | 237.72 | 7 | |
| | cova1/2 | combo valve 1/2" | ea | 21.87 | 415.53 | 19 | |
| | cova3/4 | combo valve 3/4" | ea | 12.59 | 37.77 | 3 | |
| | dv3/4fp | drain valve 3/4" full port | ea | 19.44 | 213.84 | 11 | |
| | fb1/2x3/4 | female brass 1/2" sweat x 3/4 90d | ea | 12.62 | 126.20 | 10 | |
| | ma3/4 | male adaptor 3/4 | ea | 1.81 | 38.01 | 21 | |
| | mpg | Mapp Gas | ea | 10.2273 | 20.45 | 2 | |
| | mu3/4s3 | male union 3/4" sweat x 3" | ea | 20.18 | 1,674.94 | 83 | |
| | plug3/4 | plug 3/4 | ea | 3.20 | 166.40 | 52 | |
| | relf3/4 | red elbow LF 3/4 x 1/2 RB | ea | 6.00 | 90.00 | 15 | |

IN/R5:PD Hawaii, LLC
Run 07/28/20 at 04:11 PM

DIVISION 77 INVENTORY AS OF JULY 28, 2020

Page 2

| Category | Code | Description | U/M | Yard 77 Cost | Value (Cost x Units) | Units | Actual |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| Thermal | sc1 | 1" Sweat Coupling | ea | 0.6219 | 6.22 | 10 | |
| | sc3/4st | sweat coupling 3/4 stop | ea | 0.80 | 20.80 | 26 | |
| | shw34x12ft | 3/4"x1/2" Female Thread to Male Swt | ea | 3.9266 | 90.31 | 23 | |
| | shwthermet | Sunearth Hot Water Thermometer | ea | 12.5333 | -12.53 | -1 | |
| | solarbrick | SHW Tank Brick | ea | 0.6567 | 5.91 | 9 | |
| | srclx3/4 | sweat reducing coupling 1 x 3/4" | ea | 2.78 | 86.18 | 31 | |
| | swh3/4fsa | 3/4" Female Slip in Adapter | ea | 4.6609 | 195.76 | 42 | |
| | t1/2 | T - 1/2 x 1/2 x 1/2 | ea | 0.88 | 3.52 | 4 | |
| | t3/4 | T - 3/4 x 3/4 x 3/4 | ea | 2.13 | 29.82 | 14 | |
| | t3/4x1/2 | T - 3/4 x 1/2 x 3/4 | ea | 11.68 | 338.72 | 29 | |
| | wirebrush1 | 1" Wire Brush | ea | 2.6727 | 69.49 | 26 | |
| | wirebrush3 | 3/4" Wire Brush | ea | 2.2727 | 20.45 | 9 | |

Category "Thermal" Total for 44 Materials:                                    6,130.67

| | | | | | | | |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| adhesive | georp400 | Geocel RP 400 Caulk blk/brn/gry/ter | ea | 2.60 | 96.20 | 37 | |
| | pt | Plumbers Tape | roll | 0.28 | 11.48 | 41 | |

Category "adhesive" Total for 2 Materials:                                    107.68

| | | | | | | | |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| metal | ASCSDRF | Solder Flux (16oz. Aprox.) | box | 11.76 | 105.84 | 9 | |

Category "metal" Total for One Material:                                    105.84

| | | | | | | | |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| solaracces | NRmetercbl | Neurio Meter RS485 Cable | ea | 0.00 | 0.00 | 20 | |
| | SE320Opti | Optimizer 320W | ea | 48.85 | 3,272.95 | 67 | |
| | sm0114 | Blk Cable Ties 14-3/8" (100/pk) | ea | 15.00 | 60.00 | 4 | |

Category "solaracces" Total for 3 Materials:                                    3,332.95

| | | | | | | | |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| solarbreak | DG200NK | Neutral Block DG200NK | ea | 59.23 | 236.92 | 4 | |
| | chdp50a | Cutler Hammer Dual Pull 50AMP Break | ea | 12.97 | 12.97 | 1 | |
| | chdp60a | Cutler Hammer Dual Pull 60AMP Break | ea | 13.50 | 27.00 | 2 | |
| | chds20a | Cutler Hammer Single 20AMP Breaker | ea | 5.00 | 80.00 | 16 | |

Category "solarbreak" Total for 4 Materials:                                    356.89

| | | | | | | | |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| solarelec | DH364URK | CH SAF 200A RT DH364URK NF 600VHD | ea | 441.00 | 1,764.00 | 4 | |
| | se2032 | Knock out seal 1" | ea | 0.79 | 39.50 | 50 | |
| | smns22kA | Siemens 200 Amp Dbl Pole 22kA QPPH | ea | 142.79 | 428.37 | 3 | |

Category "solarelec" Total for 3 Materials:                                    2,231.87

| | | | | | | | |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| solaremt | emt0110 | EMT 1/2" Flex Connect 90* | ea | 1.19 | 32.13 | 27 | |
| | emt0111 | EMT 1/2" Flex Connect Straight | ea | 1.12 | 38.08 | 34 | |
| | emt0203 | EMT 3/4" Alum LB Cond Body | ea | 2.59 | 10.36 | 4 | |
| | emt0219 | EMT 3/4" RT Male Connector | ea | 0.84 | 42.00 | 50 | |
| | emt0318 | EMT 1" RT Coupling | ea | 1.39 | 30.58 | 22 | |

Category "solaremt" Total for 5 Materials:                                    153.15

| | | | | | | | |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| solarflash | ecurb3kit | ChemLink 3" E-Curb kit | ea | 12.00 | 96.00 | 8 | |

Category "solarflash" Total for One Material:                                    96.00

IN/R5:PD Hawaii, LLC
Run 07/28/20 at 04:11 PM

DIVISION 77 INVENTORY AS OF JULY 28, 2020

Page 3

| Category | Code | Description | U/M | Yard 77 Cost | Value (Cost x Units) | Units | Actual |
|---|---|---|---|---|---|---|---|
| solarinacc | SE200CT | SolarEdge 200A CT | ea | 23.9882 | 2,398.82 | 100 | _____ |
| | SE370Opti | SE 370w Optimizer | ea | 61.00 | 3,416.00 | 56 | _____ |
| | TBundle1 | Tesla 2Neurio 200A CTs, extwire,spl | ea | 0.00 | 0.00 | 2 | _____ |
| | Tskit | Tesla Multi Powerwall Stacking Kit | ea | 190.00 | 190.00 | 1 | _____ |
| | envsam120 | EnPhase Envoy Metered ENV-S-AM1-120 | ea | 379.00 | 6,064.00 | 16 | _____ |

Category "solarinacc" Total for 5 Materials:  12,068.82

| Category | Code | Description | U/M | Yard 77 Cost | Value (Cost x Units) | Units | Actual |
|---|---|---|---|---|---|---|---|
| solarinver | LGChemBat | LG Chem 9/8kW/h battery | ea | 4,936.00 | 4,936.00 | 1 | _____ |
| | LGChemBat2 | Secondary LG Chem. Dual needed | ea | 4,936.00 | 14,808.00 | 3 | _____ |
| | SE5.0kw | 5.0 KW 1 Grid Tied Inverter | ea | 728.51 | 5,828.08 | 8 | _____ |
| | SE7.6kwBat | 7.6KW 1 Grid Tied Inverter Battery | ea | 2,494.00 | 2,494.00 | 1 | _____ |
| | SEautoT | Auto-Transformer | ea | 228.648 | 1,829.18 | 8 | _____ |
| | Tpwbat2 | Tesla Powerwall - 2 | ea | 6,500.00 | 143,000.00 | 22 | _____ |
| | sienIQ7p | Enphase IQ7 P1US 72 cell. 295V | ea | 90.75 | 1,633.50 | 18 | _____ |

Category "solarinver" Total for 7 Materials:  174,528.76

| Category | Code | Description | U/M | Yard 77 Cost | Value (Cost x Units) | Units | Actual |
|---|---|---|---|---|---|---|---|
| solarrack | 1.5lflash | 1 1/2" Lead Flashing | ea | 12.00 | 216.00 | 18 | _____ |
| | 3/4lflash | 3/4" Lead Flashing | ea | 12.00 | 432.00 | 36 | _____ |
| | IR204B | IR 17ft rail black | ea | 53.43 | 427.44 | 8 | _____ |
| | IRUclamp | IR Universal Module Clamp | ea | 1.8642 | 419.44 | 225 | _____ |
| | IRcomp | IR Comp flashing Kit | ea | 9.18 | 569.16 | 62 | _____ |
| | IRmleB | IR Mircoinverter bolt | ea | 0.7455 | 122.26 | 164 | _____ |
| | IRsplc | IR 100 splice | ea | 3.9753 | 55.65 | 14 | _____ |
| | IRss30 | IR Stopper Sleeve - 30MM | ea | 0.306 | 37.94 | 124 | _____ |
| | IRss35 | IR Stopper Sleeve - 35MM | ea | 0.2783 | 191.47 | 688 | _____ |
| | IRss38 | IR Stopper Sleeve - 38MM | ea | 0.2783 | 24.21 | 87 | _____ |
| | IRss40 | IR Stopper Sleeve - 40MM | ea | 0.2783 | 45.36 | 163 | _____ |
| | IRtbolt | IR T-Bolt | ea | 1.3667 | 246.00 | 180 | _____ |
| | sr0301 | QuickmntPV 12"x12" Aluminium | ea | 16.52 | 66.08 | 4 | _____ |
| | sr150 | MC4 Connector - Female | ea | 1.80 | 313.20 | 174 | _____ |
| | sr151 | MC4 Connector - Male | ea | 1.80 | 257.40 | 143 | _____ |
| | srirgrdtl0 | IronRdg #RS-GDLG-002 Grnd Lug Tbolt | ea | 6.60 | 706.20 | 107 | _____ |
| | srir10029 | Iron Ridge L Feet 29-70000-017 | ea | 10.45 | 1,086.80 | 104 | _____ |
| | unistrut | Unirac Unistrut | ea | 0.00 | 0.00 | 2 | _____ |

Category "solarrack" Total for 18 Materials:  5,216.61

| Category | Code | Description | U/M | Yard 77 Cost | Value (Cost x Units) | Units | Actual |
|---|---|---|---|---|---|---|---|
| tanks | ec40 | 4x10 collector - Painted | ea | 958.00 | 1,916.00 | 2 | _____ |
| | ep24 | 3x8 collector - Chrome | ea | 550.26 | 1,100.52 | 2 | _____ |
| | ep40 | 4x10 collector - Painted | ea | 843.00 | 843.00 | 1 | _____ |

Category "tanks" Total for 3 Materials:  3,859.52

| Category | Code | Description | U/M | Yard 77 Cost | Value (Cost x Units) | Units | Actual |
|---|---|---|---|---|---|---|---|
| tilesolarp | CS250PBLK | Canadian CS6P-250-P Blk Frame | ea | 183.11 | 549.33 | 3 | _____ |
| | H285ALLBK | 285w Hyundai All Black module | ea | 203.57 | 1,424.99 | 7 | _____ |
| | JKM320M60 | JKM320M-60HBL Jinko 320 Watt 60Cell | ea | 188.80 | 755.20 | 4 | _____ |
| | LG285MBLK | LG Mono 285N1C Neon 285w Blk Frm | ea | 359.68 | 359.68 | 1 | _____ |
| | LG365BW | LG Solar 365w BW | ea | 345.00 | 15,870.00 | 46 | _____ |
| | PA330BW | Panasonic HIT 330w BW | ea | 303.60 | 6,072.00 | 20 | _____ |
| | REC320BB | REC 320 NPeak Black | ea | 172.80 | 14,688.00 | 85 | _____ |
| | SF310ALLBK | SilFab310w BoB | ea | 171.91 | 39,195.48 | 228 | _____ |
| | SPR327SP2 | Sunpwr SPR-327NE-WHT-D SmrtPk 3-5kw | ea | 954.84 | 954.84 | 1 | _____ |
| | SW290MSLV | SolarWorld 290W Mono Silver Frame | ea | 183.00 | 1,281.00 | 7 | _____ |

IN/R5:PD Hawaii, LLC                        DIVISION 77 INVENTORY AS OF JULY 28, 2020                Page 4
Run 07/28/20 at 04:11 PM

| Category | Code | Description | U/M | Yard 77 Cost | Value (Cost x Units) | Units | Actual |
|----------|------|-------------|-----|--------------|----------------------|-------|--------|
| Category "tilesolarp" Total for 10 Materials: | | | | | 81,150.52 | | |
| tools | bru | Paint Brushes | ea | 2.10 | 25.20 | 12 | _____ |
| Category "tools" Total for One Material: | | | | | 25.20 | | |
| TOTAL FOR 15 CATEGORIES FOR 126 MATERIALS: | | | | | 292,277.28 | | |

Exhibit "D"
List of Intellectual Property

**EXHIBIT D-1**

Schedule 3.9(a)

**Intellectual Property[3]**

Names: *[None]*

Trademarks:

| No. | Country of Filing | Owner | Registration Number | Filing Date | Expiration Date | Mark | Class |
|---|---|---|---|---|---|---|---|
| | | Haleakala Solar, Inc. | | December 21, 2015 | | Haleakala Energy Solutions | Trade Name – No Category Selected |
| | | Haleakala Solar, Inc. | 4123518 | November 15, 2013 | November 14, 2018 | Haleakala Solar (& Design of Electric Chord in the Sun, the Letter "O" in word "Solar" represents the sun) | Service Mark-Building Construction and Repair (37) |
| | | Haleakala Solar, Inc. | | December 22, 2008 | | Haleakala Solar Inc. (& Design of House with Elect…) | Trade Mark-Environmental Control Apparatus (11) |
| | | Haleakala Solar, Inc. | | November 12, 2015 | | Hots Energy Solutions | Trade Name-No Category Selected |
| | | Haleakala Solar, Inc. | | December 16, 2018 | | The Power Company | Trade Name-No Category Selected |

**Patents:** *[None]*

**Copyrights:** *[None]*

**Domain Names:** *[*healeakalasolar.com*]*

**Other Seller Intellectual Property (including software and invention disclosures) material to Seller's business or operations:** *[None]*

**Actions that must be taken by Seller within 90 days of Closing:** *[None]*

**Proceedings or actions pending or threatened:** *[None]*

_____

[3] Buyer and Seller understand that the information included herein is based off the information disclosed by Seller and/or Seller's Agent to Buyer. Seller and/or Seller's Agent agree to indemnify and hold Buyer harmless from any claims, demands, liabilities, losses, damages, punitive damages, errors, defects, obligations, complaints, costs (including but not limited to attorneys' fees), or damage of every kind and nature whatsoever arising out of or relating to any misrepresentation by Seller and/or Seller's Agent.

## <u>Exhibit D-2 – Intangible Property</u>
## <u>Real Property Leases Assumed – Domain Names</u>

1. 220 LALO ST, UNIT #1,
KAHULUI, HI 96732
REAL PROPERTY LEASE

2. 70 E KAAHUMANU AVE, UNIT C-3
KAHULUI, HI 96732
REAL PROPERTY LEASE

3. 99-1265 HALAWA VALLEY ST
AIEA, HI 96701
REAL PROPERTY LEASE

4.      Domain Names

      WWW.EDISONBATTERIES.CO
      WWW.EDISONBATTERY.CO
      WWW.HALEAKALASOLAR.COM
      WWW.HALEAKALASOLAR.NET
      WWW.HALEAKALASOLAR.ORG

Exhibit "E"
Form of Assignment

## ASSIGNMENT AND AUTHORIZATION

**THIS ASSIGNMENT AND AUTHORIZATION** (the "Assignment") is made and entered into as of August _____, 2020   (the "Effective Date") by and between James Whitcomb ("Principal") and Haleakala Solar, a Hawaii corporation ("Assignee"), on the one hand, and PetersenDean Hawaii, LLC, a Hawaii limited liability company, ("Assignor"), on the other.

WHEREAS, pursuant to the terms of that certain Asset Purchase and Interim Management Agreement, dated as of July 27, 2020, by and between Principal, Buyer and Debtor (the "Sale Agreement"), Buyer agreed to purchase all of the operational assets of Debtor ("Assets"), as described in the exhibits below and in the Bill of Sale executed in connection with this Agreement, which consist generally of all current contractual commitments of Debtor to customers for the purchase and installation of solar equipment and related roofing work that are expressly assumed by Buyer, the "Unperformed Contracts", as provided in Recital "D" of the Sale Agreement (and excluding all other similar contracts, the "Rejected Contracts", as provided in Sec. 2.1.b of the Sale Agreement), all accounts receivable, all books, records and systems, all furniture, fixtures and equipment ("FF&E", including but not limited to all trucks and tools, all inventory, certain leases, and all intellectual property), and pursuant to which Buyer has agreed to offer employment to the employees of Debtor, and to assume   defined financial and operational responsibility for the Business, upon the terms and subject to the terms and conditions set forth in the Sale Agreement, with such purchase transaction being subject to Bankruptcy Court Approval; and

WHEREAS, Debtor is a debtor in possession under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), Case No. BK-S-20-12826-mkn (the "Bankruptcy Case").  The Bankruptcy Case is jointly administered with other affiliated entities under the lead case of *Red Rose, Inc*, Case No. 20-12814-mkn.  Pursuant to that certain Order Approving Sale dated August ___, 2020, of the Bankruptcy Court, Debtor, as debtor in possession, agree to and does hereby agree to sell, transfer and assign to Buyer, Haleakala Solar, Inc., all of Debtor's right, title, and interest in and to that certain intangible property ("Intangible Property") listed in the following schedules attached hereto:

Exhibit "A-1" – Unperformed Contracts 74-77

Exhibit "A-2" – Unperformed Contracts 75 10

Exhibit "B-1" – Existing Accounts Receivable

Exhibit "D-1" – Intellectual Property – Schedule 3.9(a) from 3.2018 APA

Exhibit "D-2" – Intellectual Property Intangible Property – Real Property Leases and Domain
           Names

Exhibit G – Rejected Contracts

WHEREAS, in connection with the above described conveyance Debtor desires to and does hereby sell, transfer and convey to Buyer all of the Intangible Property, as a portion of all the Assets (with the other portion being FF&E, vehicles, equipment, furniture and inventory, all of which are also conveyed pursuant the Sale Agreement and as memorialized in a separate Bill

1

of Sale of even date).  Capitalized terms used herein and not defined shall have the meanings ascribed in the Sale Agreement.

NOW, THEREFORE, in consideration of the good and valuable consideration recited in the Sale Agreement, the receipt and sufficiency of which are hereby acknowledged, and as approved by the Final Sale Order, Debtor hereby grants, assigns, sells, sets over and delivers to Buyer, its legal representatives, successors and assigns, and Buyer hereby accepts all of Debtor's right, title and interest in and to all of the Intangible Property, as set forth in the schedules attached.

This Assignment is made without any covenant, warranty or representation by, or recourse against, Debtor.  Debtor agrees to cooperate with Buyer so that Buyer may enjoy to the fullest extent the rights conveyed under this Assignment.  Debtor hereby authorizes Buyer, its employees, agents and affiliates, to immediately transfer into the name of Buyer all contracts for the provisions of goods and services (including without limitation the Unperformed Contracts) and to collect the Existing A/R, and generally to undertake all actions that may be necessary or desirable to complete the terms of the Sale Agreement.   .

This Assignment may be executed in counterparts, each of which shall be an original and all of which counterparts taken together shall constitute one and the same agreement.

If any term or provision of this Assignment or the application thereof to any persons or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Assignment or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Assignment shall be valid and enforced to the fullest extent permitted by law.

IN WITNESS WHEREOF, the undersigned have executed this Assignment of Sale as of the date first set forth hereinabove.

IN WITNESS WHEREOF, Assignor and Assignees have executed this Assignment as of the date and year first written above.

**ASSIGNOR**                                          **ASSIGNEE**

PetersenDean Hawaii, LLC,                    Haleakela Solar, Inc.
a Hawaii limited liability company          a Hawaii corporation

By: _____EXHIBIT ONLY_____          By: ___EXHIBIT ONLY_____

Name: ____DO NOT SIGN_____          Name: __dDO NOT SIGN_____

*[Signature Page to Assignment and Authorization]*

2

Exhibit "F"
Form of Bill of Sale

## BILL OF SALE

**THIS BILL OF SALE** ("Bill of Sale") is made as of August _____, 2020 by and between James Whitcomb ("Principal") and Haleakala Solar, Inc., a Hawaii corporation ("Buyer"), on the one hand, and PetersenDean Hawaii, LLC, a Hawaii limited liability company, ("Debtor"), on the other.

WHEREAS, pursuant to the terms of that certain Asset Purchase and Interim Management Agreement, dated as of July 27, 2020, by and between Principal, Buyer and Debtor (the "Sale Agreement"), Buyer agreed to purchase all of the operational assets of Debtor ("Assets"), as described in the exhibits below and in the Assignment and Authorization executed in connection with the Sale Agreement, which consist generally of all current contractual commitments of Debtor to customers for the purchase and installation of solar equipment and related roofing work that are expressly assumed by Buyer, the "Unperformed Contracts", as provided in Recital "D" of the Sale Agreement (and excluding all other similar contracts, the "Rejected Contracts", as provided in Sec. 2.1.b of the Sale Agreement), all accounts receivable, all books, records and systems, all furniture, fixtures and equipment ("FF&E"), including but not limited to all trucks and tools, all inventory, certain leases, and all intellectual property), and pursuant to which Buyer has agreed to offer employment to the employees of Debtor, and to assume defined financial and operational responsibility for the Business, upon the terms and subject to the terms and conditions set forth in the Sale Agreement, with such purchase transaction being subject to Bankruptcy Court Approval; and

WHEREAS, Debtor is a debtor in possession under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), Case No. BK-S-20-12826-mkn (the "Bankruptcy Case").  The Bankruptcy Case is jointly administered with other affiliated entities under the lead case of *Red Rose, Inc*, Case No. 20-12814-mkn.  Pursuant to that certain Order Approving Sale dated August __, 2020, of the Bankruptcy Court, Debtor, as debtor in possession, agreed to and does hereby agree to sell, transfer and assign to Buyer, Haleakala Solar, Inc., all of Debtor's right, title, and interest in and to that certain personal property ("Personal Property") listed in the following schedules attached hereto:

Exhibit "C-1" – Maui Vehicle Fleet

Exhibit "C-2" – Oahu Vehicle Fleet

Exhibit "C-3" – Warehouse Equipment and Tools

Exhibit "C-4" – Office Equipment Maui

Exhibit "C-5" – Office Equipment Oahu

Exhibit "C-6" – Inventory

Exhibit G – Rejected Contracts

412786-v5

WHEREAS, in connection with the above described Transaction, Debtor desires to and does hereby sell, transfer and convey to Buyer all of the Personal Property, as a portion of all the Assets (with the other portion being the Unperformed Contracts and other intangible property, which are also conveyed pursuant to the Sale Agreement and as memorialized in a separate Assignment and Authorization of even date). Capitalized terms used herein and not defined shall have the meanings ascribed in the Sale Agreement.

NOW, THEREFORE, in consideration of the receipt of the good and valuable consideration recited in the Sale Agreement, the receipt and sufficiency of which are hereby acknowledged, and as approved by the Final Sale Order, Debtor hereby grants, conveys, sells, sets over and delivers to Buyer, its legal representatives, successors and assigns, and Buyer hereby accepts all of Debtor's right, title and interest in and to all of the Personal Property, as set forth in the schedules attached.

This Bill of Sale is made without any covenant, warranty or representation by, or recourse against, Debtor. Debtor agrees to cooperate with Buyer so that Buyer may enjoy to the fullest extent the rights conveyed under this Bill of Sale. Debtor hereby authorizes Buyer, its employees, agents and affiliates, to immediately transfer into the name of Buyer all of the Personal Property, and generally to undertake all actions that may be necessary or desirable to complete the terms of the Sale Agreement.

This Bill of Sale may be executed in counterparts, each of which shall be an original and all of which counterparts taken together shall constitute one and the same agreement.

If any term or provision of this Bill of Sale or the application thereof to any persons or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Bill of Sale or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Bill of Sale shall be valid and enforced to the fullest extent permitted by law.

IN WITNESS WHEREOF, the undersigned have executed this Bill of Sale as of the date first set forth hereinabove.

**BUYER**                                          **DEBTOR**

Haleakela Solar, Inc.                          PetersenDean Hawaii, LLC,
a Hawaii corporation                          a Hawaii limited liability company

By: ___EXHBIT ONLY_____          By: ___EXHIBIT ONLY_____

Name: DO NOT SIGN_____          Name: ___DO NOT SIGN_____

*[Signature Page to Bill of Sale]*

2

412786-v5