BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for the Debtors*

Electronically Filed October 28, 2020

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

RED ROSE, INC.,

☐ Affects Beachhead Roofing and Supply, Inc.
☐ Affects California Equipment Leasing Association, Inc.
☐ Affects Fences 4 America, Inc.
☐ Affects James Petersen Industries, Inc.
☐ Affects PD Solar, Inc.
☐ Affects Petersen Roofing and Solar LLC
☐ Affects Petersen-Dean, Inc.
☐ Affects PetersenDean Hawaii LLC
☐ Affects PetersenDean Roofing and Solar Systems, Inc.
☐ Affects PetersenDean Texas, Inc.
☐ Affects Red Rose, Inc.
☐ Affects Roofs 4 America, Inc.
☐ Affects Solar 4 America, Inc.
☐ Affects Sonoma Roofing Services, Inc.
☐ Affects TD Venture Fund, LLC
☐ Affects Tri-Valley Supply, Inc.
☒ Affects All Debtors

Case No. BK-S-20-12814-mkn

Jointly Administered with
Case No. BK-S-20-12815-mkn
Case No. BK-S-20-12816-mkn
Case No. BK-S-20-12818-mkn
Case No. BK-S-20-12819-mkn
Case No. BK-S-20-12820-mkn
Case No. BK-S-20-12821-mkn
Case No. BK-S-20-12822-mkn
Case No. BK-S-20-12823-mkn
Case No. BK-S-20-12824-mkn
Case No. BK-S-20-12825-mkn
Case No. BK-S-20-12826-mkn
Case No. BK-S-20-12827-mkn
Case No. BK-S-20-12829-mkn
Case No. BK-S-20-12831-mkn
Case No. BK-S-20-12833-mkn

Chapter 11

**DEBTORS' MOTION FOR APPROVAL OF COMPROMISE, PURSUANT TO FED. R. BANKR. P. 9019, BY AND AMONG DEBTORS, ACF FINCO I, LP AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Hearing Date:  OST PENDING
Hearing Time:  OST PENDING

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1

Petersen-Dean, Inc. ("**PDI**"), Beachhead Roofing & Supply, Inc. ("**Beachhead**"), California Equipment Leasing Association, Inc. ("**California Equipment**"), Solar 4 America, Inc. ("**Solar 4**"), Fences 4 America, Inc. ("**Fences 4**"), James Petersen Industries, Inc. ("**JP Industries**"), PD Solar, Inc. ("**PD Solar**"), Sonoma Roofing Services, Inc. ("**Sonoma**"), Petersen Roofing and Solar LLC ("**Petersen Roofing**"), PetersenDean Texas, Inc. ("**PD Texas**"), Red Rose, Inc. ("**Red Rose**"), Roofs 4 America, Inc. ("**Roofs 4**"), Tri-Valley Supply, Inc. ("**Tri-Valley**"), Petersen Dean Hawaii LLC ("**PD Hawaii**"), Petersen Dean Roofing and Solar Systems, Inc. ("**PD Roofing**"), TD Venture Fund, LLC ("**TD Venture**" and, together with PDI, Beachhead, California Equipment, Solar 4, Fences 4, JP Industries, PD Solar, Sonoma, Petersen Roofing, PD Texas, Red Rose, Roofs 4, Tri-Valley, PD Hawaii and PD Roofing, collectively, the "**Debtors**" and each individually, a "**Debtor**"), in the above captioned jointly administered chapter 11 cases (collectively, the "**Bankruptcy Case**"), hereby file this motion (the "**Motion**") for the entry of an order, pursuant to Bankruptcy Rule 9019(a)[1], approving the *Claims Settlement and 363 Sale Support Agreement* ("**Settlement Agreement**")[2] by and between Debtors, ACF Finco I, LP ("**ACF**"), and the Official Committee of Unsecured Creditors[3] (the "**Committee**" and, collectively with Debtors and ACF, the "**Parties**").

---

[1] All references to "chapter" and "section" herein shall be to the "<u>Bankruptcy Code</u>" appearing in Title 11 of the U.S. Code; all references to a "<u>Bankruptcy Rule</u>" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "<u>Local Rule</u>" shall refer to the Local Rules of Bankruptcy Practice of the U.S. Bankruptcy Court for the District of Nevada.

[2] Capitalized terms not defined herein shall have the meanings assigned to them in the Settlement Agreement. The Parties are finalizing Exhibit B to the Settlement Agreement (the Stipulated Cash Collateral Budget) and will file a fully executed copy, attaching Exhibit B, shortly.

[3] On June 27, 2020, the Unites States Trustee appointed the Committee for Debtors Red Rose, PD Solar, PDI, PD Hawaii, PD Roofing and PD Texas, which Committee is comprised of the following entities (i) ABC Supply Company, Inc.; (ii) Beacon Sales Acquisition, Inc.; (iii) DJ Roof and Solar Supply, LLC, (iv) Export Development Canada/Exportations et Developpment Canada; (v) Fabian Covarrubias as Class Actions Representative; (vi) National Union Fire Insurance Company of Pittsburgh, Pa.; and (vii) Sterling National Bank, whose claims have been declared by the Committee to total approximately One Hundred Million Dollars ($100,000,000), with an overall creditor body owed approximately Two Hundred Fifty Million Dollars ($250,000,000) (collectively, the "**Unsecured Creditors Claims**").

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\115581627

The Settlement Agreement embodies an agreement between the Parties with respect to, among other things, the treatment of the ACF Secured Claim (defined below), the Unsecured Creditors Claims, and resolves the various disputes among the Parties in the Bankruptcy Case, including without limitation, with respect to the TD Venture 9019 Motion (defined below) and the Committee Objection (defined below).

The Debtors' DIP lender, LS DE LLC and LSQ Funding Group, L.C. (collectively, the "**DIP Factor**") has given limited consent to specific provisions in the Settlement Agreement, providing for segregation and use of certain identified assets that constitute its collateral, on the terms set forth in the *Limited Consent of DIP Factor to Segregation and Use of Proceeds of Identified Assets* (the "**DIP Factor Limited Consent**").

By this Motion, the Debtors request approval of the Settlement Agreement and authorization from the Court to take all actions contemplated by the Settlement Agreement (as described below).  The Motion is made and based upon the following memorandum of points and authorities, the *Declaration of Jeffrey C. Perea* (the "**Perea Declaration**") filed concurrently herewith, the papers and pleadings on file with the Court in the Bankruptcy Case, and any oral arguments the Court may entertain at the hearing on the Motion.  A true and correct copy of the Settlement Agreement is attached as **Exhibit 1** to the Perea Declaration.

DATED this 28th day of October, 2020.

**FOX ROTHSCHILD LLP**

By: _____*/s/Brett A. Axelrod*_____
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    *Counsel for the Debtors*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### PRELIMINARY STATEMENT

1.    The Settlement Agreement provides a comprehensive resolution of the disputes between the Parties and paves the way for the 363 Sale (defined below) to proceed.  The Debtors have a limited liquidity window within which to continue to market and sell their assets as a going concern, and the terms for the Stalking Horse Agreement require the Debtors to maintain their business as a going concern through the date of closing of the proposed 363 Sale of the Assets.  The Debtors' business and financial position has substantially deteriorated during the pendency of the Bankruptcy Case and given the exigent circumstances surrounding the Debtors, the Parties are extremely concerned that the Debtors will be required to liquidate through chapter 7 proceedings which will not maximize value for creditors if an auction is not conducted immediately for a 363 Sale of the Debtors' Assets in accordance with the timeline set forth in the Letter of Intent.  As set forth in greater detail below, the Committee has further determined it is in the unsecured creditors' best interests to support the 363 Sale of the Assets pursuant to the Stalking Horse Agreement, in concert with the provisions made for unsecured creditors set forth in the proposed Settlement Agreement.  Therefore, the Settlement Agreement should be approved because it is in the best interests of the Debtors' estates and creditors.

## II.

### JURISDICTION

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory bases for the relief requested herein are Bankruptcy Code section 105 and Bankruptcy Rule 9019(a).

4

Active\115581627

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## III.

## FACTUAL BACKGROUND

**A.    General Background**

5.    On June 11, 2020 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby initiating the Bankruptcy Case.

6.    The Debtors are continuing in possession of their property and are operating and managing their business, as debtors in possession, pursuant to Bankruptcy Code sections 1107(a) and 1108.  See generally Chapter 11 Case Docket.

7.    On June 23, 2020, this Court entered its Order directing the joint administration of the above-captioned Bankruptcy Case.  See Dkt. No. 94, Case No. bk-s-20-12814-mkn.

8.    The factual background relating to the Debtors' commencement of the Bankruptcy Case is set forth in detail in the *Omnibus Declaration of Jeffrey Perea in Support of First Day Motions* [Dkt. 20, Case no. BK-S-20-12814-mkn], which is incorporated herein by reference in its entirety.

**B.    The ACF Secured Claim**

9.    Certain of those Debtors comprised of PDI, Solar 4, PD Texas, PD Solar, Sonoma, Red Rose, PD Roofing, Tri-Valley, California Equipment, Fences 4, Roofs 4 and PD Hawaii are borrowers (the "**Borrowing Debtors**") under that certain secured revolving credit facility from ACF up to an aggregate principal amount of Thirty-Five Million Dollars ($35,000,0000) (the "**Loan**") pursuant to that certain Loan and Security Agreement dated June 29, 2017, and all amendments, restatements, supplements and other modifications thereto (the "**Loan Agreement**"; all capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement).  See Perea Declaration, ¶ 4  & Exhibit 1.

10.    The Loan Agreement, among other things, granted ACF a security interest in all of Borrowing Debtors' personal property in order to secure Borrowing Debtors' obligations under the Loan Agreement (the "**Collateral**"), including, but not limited to: all cash, Money (as defined in Section 1-201(24) of the UCC), Accessions, Accounts (including without limitation all Receivables and unearned premiums with respect to insurance policies insuring any of the Collateral and claims

5

against any Person for loss of, damage to, or destruction of any or all of the Collateral), Certificates of Title, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Health-Care-Insurance Receivables, Instruments, Inventory, Investment Property, Letter-Of-Credit Rights, Proceeds, Records, Software and Supporting Obligations, and all rights to payment for money or funds advanced or sold.  See Perea Declaration, ¶ 5 & Exhibit 1.

11.    ACF contends that the Borrowing Debtors' obligations to ACF are further secured by that certain Collection Account Agreement, dated June 16, 2017, entered into between Borrowing Debtors, ACF and Wells Fargo Bank, National Association (the "**Bank**"), pursuant to which Borrowing Debtors granted ACF control over all of Borrowing Debtors' deposit accounts held at the Bank.  See Perea Declaration, ¶ 6 & Exhibit 1.

12.    ACF contends that as a result of a covenant violation arising from a loan to James P. Petersen ("**J. Petersen**"), the founder of PDI, and in exchange for an interest rate reduction in the Loan and an extension of the Revolving Credit Termination Date under the Loan Agreement, and certain other covenant relief, J. Petersen executed that certain Amended and Restated Continuing Guaranty dated June 22, 2018 (together with all amendments, restatements, supplements and other modifications thereto, the "**Petersen Guaranty**"), whereby J. Petersen agreed to guarantee the Borrowing Debtors' obligations under the Loan, the Loan Agreement and all other agreements entered into in connection with the Loan by Borrowing Debtors, as amended, restated, supplemented or otherwise modified from time to time (the "**Loan Documents**"), including without limitation, all promissory notes and security agreements (the "**Petersen Guaranteed Obligations**").  See Perea Declaration, ¶ 7 & Exhibit 1.

13.    ACF contends that in exchange for accommodations by ACF to the Borrowing Debtors, TD Venture executed that certain Continuing Guaranty (Secured by Deed of Trust) dated November 15, 2018 (together with all amendments, restatements, supplements and other modifications thereto, the "**TD Venture Guaranty**" and, together with the Petersen Guaranty, the "**Guaranties**"), whereby TD Venture agreed to guarantee the Borrowing Debtors' obligations under the Loan, the Loan Agreement and all other Loan Documents (the "**TD Venture Guaranteed**

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**Obligations**" and, together with the Petersen Guaranteed Obligations, the "**Guaranteed Obligations**"). See Perea Declaration, ¶ 8 & Exhibit 1.

14.     TD Venture is an affiliate of the other Debtors, however, TD Venture has no employees, nor does it install any roofing/solar projects. See Perea Declaration, ¶ 9 & Exhibit 1.

15.     The obligations under the Petersen Guaranty are secured by (i) that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, dated November 15, 2018, granted by J. Petersen and Tricia Yeh Petersen ("**T. Petersen**" and, together with J. Petersen, the "**Trustors**") in favor of Lender (the "**Truckee Deed of Trust**"), encumbering that certain property located in the County of Placer, State of California, more particularly described in the Truckee Deed of Trust (the "**Truckee Property**"), and (ii) that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, dated November 15, 2018, granted by the Trustors in favor of Lender (the "**Aptos Deed of Trust**"), encumbering that certain property located in the County of Santa Cruz, State of California, more particularly described in the Aptos Deed of Trust (the "**Aptos Property**" and, together with the Truckee Property, the "**Trustors' Properties**"). See Perea Declaration, ¶ 10 & Exhibit 1.

16.     The obligations under the TD Venture Guaranty are secured by that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated November 15, 2018, granted by TD Venture in favor of Lender (the "**Hawaii Mortgage**"), encumbering that certain property located in the County of Maui, State of Hawaii, more particularly described in the Hawaii Mortgage (the "**Hawaii Property**" and, together with the Trustors' Properties, collectively the "**Properties**"). See Perea Declaration, ¶ 11 & Exhibit 1.

17.     TD Venture also owns an unencumbered membership interest in the Calistoga Ranch Club, a California Nonprofit Mutual Benefit Corporation, specifically identified as being Membership No. 035 (the "**Membership Interest**"). See Perea Declaration, ¶ 12 & Exhibit 1.

18.     The Loan is currently in default under the Loan Documents. The various defaults alleged by the Lender, as well as various allegations of improprieties that they have made against J. Petersen, are set forth in detail in the *Declaration of Andres Pinter* [Dkt. 45, Case no. BK-S-20-12814-mkn]. The Lender has also opposed the Debtors' use of cash collateral on a final basis

7

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

pursuant to that certain *Secured Creditor ACF Finco I, LP's Opposition to Final Order on Emergency First Day Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 361, 362, 363 and 552 and Fed. R. Bankr. P. 4001(b) and 4001(d): (I) Determining Extent of Cash Collateral; (II) Authorizing Borrowing Debtors to Use Cash Collateral and Provide Adequate Protection; (III) Granting Related Relief; and (IV) Scheduling Final Hearing* [Dkt. 440, Case no. BK-S-20-12814-mkn]. See Perea Declaration, ¶ 13 & Exhibit 1.

19.    On July 31, 2010, the Bankruptcy Court entered its *Final Order (I) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Granting Adequate Protection Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, (III) Granting Liens and Superpriority Claims, and (IV) Modifying the Automatic Stay, And (V) Scheduling a Final Hearing* [Dkt. 601, Case no. BK-S-20-12814-mkn] (the "**Cash Collateral Order**").  See Perea Declaration, ¶ 14 & Exhibit 1.

20.    As of the Petition Date, ACF was owed approximately Twenty-Eight Million Five Hundred Forty-Three Thousand Eight Hundred Fifty-Four Dollars ($28,543,854) plus professional fees and costs (the "**ACF Secured Claim**"), which sum is secured by a valid, perfected and enforceable first priority security interest in the Collateral. See Perea Declaration, ¶ 15 & Exhibit 1.

**C.    The TD Venture 9019 Motion**

21.    After considerable negotiations, Trustors, TD Venture and ACF (collectively, the "**Settling Parties**") determined that it is in their best interests to settle all of their respective disputes and controversies, including all of the Guaranteed Obligations and cash collateral disputes, and the Settling Parties executed that certain Settlement Agreement and Release of All Claims (the "**TD Venture Settlement Agreement**"), which subject to the Bankruptcy Court's approval with respect to TD Venture, resolves all disputes between the Settling Parties, including the Guaranteed Obligations. See Perea Declaration, ¶ 16 & Exhibit 1.

22.    On August 19, 2020, the Debtors filed that certain *Debtors' Motion for Approval of Compromise, Pursuant to Fed. R. Bankrk. P. 9019, by and among TD Venture Fund, LLC, James P. Petersen, Tricia Yeh Petersen and ACF Finco I, LP* [Dkt. 739, Case no. BK-S-20-12814-mkn] (the

8

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

"**TD Venture 9019 Motion**").  See Perea Declaration, ¶ 17  & Exhibit 1.

23.    On August 26, 2020, the Committee was appointed in the TD Venture chapter 11 case pursuant to that certain *Amended Notice of the Official Committee of Unsecured Creditors for the Estates of all Captioned Debtors* [Dkt. 811, Case no. BK-S-20-12814-mkn].  See Perea Declaration, ¶ 18  & Exhibit 1.

24.    The Committee has objected to the TD Venture 9019 Motion filing that certain *Objection of Official Committee of Unsecured Creditors to Debtors' Motion for Approval of Compromise, Pursuant to Fed. R. Bankrk. P. 9019, by and among TD Venture Fund, LLC, James P. Petersen, Tricia Yeh Petersen and ACF Finco I, LP* on September 9, 2020 [Dkt. 954, Case no. BK-S-20-12814-mkn] (the "**Committee Objection**").  See Perea Declaration, ¶ 19  & Exhibit 1.

25.    There is extensive discovery scheduled in connection with the TD Venture 9109 Motion and Committee Objection.  See *Scheduling Order re: Hearing on [TD Venture 9019 Motion]* [Dkt. 1081, Case no. BK-S-20-12814-mkn], and *Order Approving Stipulation to (A) Modify Discovery Deadlines for Scheduling Order Re: Hearing on [TD Venture 9019 Motion] and (B) Extend the Deadline to Object to the Debtors' Bid Procedures* [Dkt. 1211, Case no. BK-S-20-12814-mkn]  (collectively, the "**Scheduled Discovery**").   See Perea Declaration, ¶ 20.

**D.    The 363 Sale**

26.    The Debtors have continued to engage in extensive marketing efforts for the sale of substantially all of the Debtors' assets.  See Perea Declaration, ¶ 21  & Exhibit 1.

27.    On October 12, 2020, the Debtors and ACF entered into a non-binding Letter of Intent (the "**Letter of Intent**") for ACF to purchase substantially all of the assets of Debtors (the "**Assets**"), except those certain assets of Debtors specifically identified as, and agreed by the parties to be, excluded assets in a definitive asset purchase agreement containing terms and conditions satisfactory to the Debtors and ACF (the "**Stalking Horse Agreement**"), under Section 363 of the Bankruptcy Code, free and clear of any interest in such property other than the DIP Factoring and DIP Liens, as such terms are defined in the Letter of Intent (the "**363 Sale**").  Without limiting the foregoing, the Assets being sold pursuant to the 363 Sale shall include, without

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

limitation, all Debtors' bankruptcy estates' claims and causes of action under Chapter 5 of the Bankruptcy Code (e.g., preference, fraudulent conveyance and avoidance actions and claims), and all other claims and causes of action that constitute property of the Debtors' bankruptcy estates under Section 541 of the Bankruptcy Code, and/or any other applicable federal or state law, and all proceeds and rights to proceeds therefrom (collectively, the "**Chapter 5 Claims**").  See Perea Declaration, ¶ 22  & Exhibit 1.

28.    On October 19, 2020, the Debtors filed their *Motion for Order Pursuant to Sections 105(A), 363, 365, 503 and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure Approving and Authorizing: (A) Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets to the Stalking Horse Bidder; (B) Form and Manner of Notice of the Sale Hearing; (C) Sale of Substantially all of the Debtors' Assets Free and Clear of Liens Claims, Encumbrances, and Other Interests, Except the DIP Factoring and as Provided in the Stalking Horse Agreement; (D) Purchase Agreement Relating Thereto; (E) Assumption and Assignment of Certain of the Debtors' Executory Contracts and Unexpired Leases Related Thereto; and (F) Related Relief* [Dkt. 1172, Case no. BK-S-20-12814-mkn] (the "**Bidding Procedures Motion**").  A copy of the Letter of Intent is annexed as Exhibit G to the Bidding Procedures Motion.  See Perea Declaration, ¶ 23.

29.    The Debtors have a limited liquidity window within which to continue to market and sell their assets as a going concern, and the terms for the Stalking Horse Agreement require the Debtors to maintain their business as a going concern through the date of closing of the proposed 363 Sale of the Assets.  See Perea Declaration, ¶ 24  & Exhibit 1.

30.    The Debtors' business and financial position has substantially deteriorated during the pendency of the Bankruptcy Case and given the exigent circumstances surrounding the Debtors, the Parties are extremely concerned that the Debtors will be required to liquidate through chapter 7 proceedings which will not maximize value for creditors if an auction is not conducted immediately for a 363 Sale of the Debtors' Assets in accordance with the timeline set forth in the Letter of Intent.  See Perea Declaration, ¶ 25  & Exhibit 1.

Active\115581627

**E.** **The Settlement Agreement**

31.     After significant negotiations among the Debtors, the Committee and ACF, the Parties have determined it is in their collective best interests to come to an agreement with respect to the treatment of the ACF Secured Claim, the Unsecured Creditors Claims and the various disputes among the Parties in the Bankruptcy Case, including without limitation, with respect to the TD Venture 9019 Motion and the Committee Objection, and each of the Parties now desire to resolve any and all such disputes and have agreed upon treatment of their respective claims, pursuant to the terms and conditions set forth in the Settlement Agreement. See Perea Declaration, ¶ 26 & Exhibit 1.

32.     As part of the negotiations among the Parties, the Committee has further determined it is in the unsecured creditors' best interests to support the 363 Sale of the Assets pursuant to the Stalking Horse Agreement, pursuant to the terms and conditions set forth in the Settlement Agreement. See Perea Declaration, ¶ 27 & Exhibit 1.

**IV.**

**THE SETTLEMENT TERMS**

33.     The Settlement Agreement sets forth the following material terms:[4]

    a.     Support of 363 Sale.  The Committee and the Debtors shall support ACF's credit bid right to purchase the Assets by way of the 363 Sale, on the terms and conditions contemplated under the Letter of Intent and, the Stalking Horse Agreement, once executed and approved by the Bankruptcy Court pursuant to the Sale Order, as defined in the Letter of Intent.  The Committee agrees to affirmatively support the sale of the Assets by way of the 363 Sale, and shall not object to ACF's credit bid right, as more specifically set forth in the Letter of Intent, nor to an accelerated timeline to conduct the auction for the 363 Sale.  Without limiting the foregoing, the Committee agrees to affirmatively support the sale motion and the motion for the Bid Procedures Order, as defined below, and shall not file an objection to, the auction process under the 363 Sale, ACF's credit bid under the Stalking Horse Agreement, ACF's right to overbid as provided in the Bid Procedures Order, and the Assets subject to the 363 Sale as more particularly set forth below.  The Committee reserves the right to object to any irregularities in the operation of the auction if the same is not conducted in accordance with the Bid Procedures Order.

---

[4] This summary is qualified by the more specific terms of the Settlement Agreement.  To the extent of any discrepancy, the Settlement Agreement controls.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\115581627

i.  Assets.

    1.  It is acknowledged and agreed by the Parties that the Assets to be purchased shall exclude those certain assets of Debtors specifically identified as, and agreed by ACF and the Debtors, to be excluded assets in the Stalking Horse Agreement; provided, however, it is agreed that the consumer solar business of the Debtors, together with the accounts receivable for such consumer solar business (the "**Consumer Business Assets**") shall be excluded from the 363 Sale.

    2.  The Assets being purchased by ACF, or its permitted assignee, under the Stalking Horse Agreement shall include the Chapter 5 Claims.

    3.  An independent sale process for the Consumer Business Assets may be conducted by the Debtors and/or the Committee along with the 363 Sale, at their discretion and their own expense.

ii.  Terms of ACF's Credit Bid/Stalking Horse Agreement.

    1.  It is acknowledged and agreed by the Parties that the Stalking Horse will contain a due diligence period of thirty (30) days, with a unilateral right to extend such due Agreement diligence period by ACF for an additional ten (10) day period ("**Due Diligence Period**").  ACF shall have the right to terminate the Stalking Horse Agreement any time prior to the expiration of the Due Diligence Period, provided, however, ACF agrees that its right to terminate shall be exercised, if at all, at least three (3) business days prior to the sale bid deadline set forth in the Bid Procedures Order.

    2.  It is acknowledged and agreed by the Parties that a condition to ACF's purchase of the Assets under the Stalking Horse Agreement shall be an agreement by the DIP Factor to continue the financing being provided under the DIP Factoring to ACF for a period of one (1) year after the closing of the purchase of the Assets by ACF, or its assignee, as more particularly set forth in the Letter of Intent.  For purposes of the Settlement Agreement, the consummation of the purchase of the Assets pursuant to the Stalking Horse Agreement under the 363 Sale by ACF, or its assignee, may be referred to as the "**ACF 363 Sale Transaction.**"

    3.  ACF's minimum credit bid shall be equal to Ten Million ($10,000,000) of its outstanding Loan to Debtors and shall include a Two Hundred Fifty Thousand Dollars ($250,000) cash component.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

4. For purposes of ACF's credit bid, the Hawaii property will have an estimated value equal to the averages of the brokers' opinions of value obtained by the Committee and ACF, subject to an offset in the amount of ACF's payments of debt service on the senior loan on the Hawaii Property <u>plus</u> the amount of the estimated carry costs of the Hawaii Property, which carry costs shall include payment of the debt service on the senior loan on the Hawaii Property, costs and expenses for security and maintenance, costs and expenses for the liquidation of the Hawaii Property, but shall be subject to any adjustment for any rental income actually received by ACF from the Hawaii Property.

5. The Assets being purchased at the 363 Sale shall be sold free and clear of any interest in such property other than the DIP Factoring and DIP Liens, and the sale order to be sought by Debtors approving the 363 Sale shall have been entered by the Bankruptcy Court in a form reasonably acceptable to ACF, or its permitted assignee (the "**Purchaser**"), and Debtors, and shall include a finding that the Purchaser is a good faith purchaser under Section 363 of the Bankruptcy Code.

6. ACF shall be entitled to the following bid protections, to be contained in the proposed bid procedure order (the "**Bid Procedures Order**"): (i) the bid procedures to be employed and contained in the Bid Procedures Order for any possible overbid shall be standard and customary and shall be acceptable to the Purchaser, and the DIP Factor, as defined in the Letter of Intent, (ii) the Bid Procedures Order shall allow Purchaser a reasonable opportunity to further bid up to a maximum credit bid amount of Fifteen Million Dollars ($15,000,000.00) of Purchaser's outstanding Loan to Debtors with respect to any competing overbid, provided that in any given instance of an overbid by Purchaser, Purchaser shall not lose any of the bid protections set forth in the Bid Procedures Order, (iii) there can be no assurances that the DIP Factor will consent to the assumption of the DIP Factoring or provide further financing under the DIP Factoring to any other bidder, and (iv) unless otherwise specifically agreed to by Purchaser, Debtors may not accept any competing bid for the Assets unless such competing bid (A) is made in compliance with the Bid Procedures Order, (B) includes a deposit equal to an amount of not less than ten percent (10%) of the purchase price in the bid, and (C) exceeds the amount of the purchase price being paid under the Stalking Horse Agreement by at least One Hundred Thousand Dollars ($100,000.00), and is no less favorable than the Stalking Horse Agreement. The Bid Procedures Order shall further provide that subsequent overbids may only be in increments of Fifty Thousand Dollars ($50,000.00).

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

13

Active\115581627

iii.  Proceeds from Whitcomb Note.    In the event the ACF 363 Sale Transaction occurs, any funds received by ACF upon payment of that certain promissory note in the original principal amount of One Million Eight Hundred Thousand Dollars ($1,800,000), from James Whitcomb and Haleakala Solar, Inc., a Hawaii corporation, as maker, to Debtors, as payee, associated with the sale of certain assets of PD Hawaii under that certain Asset Purchase and Interim Management Agreement approved by the Bankruptcy Court on August 28, 2020 by that certain *Order Granting Motion of Debtor for Order Authorizing the Sale of Substantially All of its Assets Free and Clear of All Liens, Claims and Encumbrances, and For Related Relief* [Dkt. 954, Case no. BK-S-20-12814-mkn], shall be allocated among ACF and the Debtors' estates or their successors, in accordance with the following waterfall and paid within five (5) business days of receipt of such funds by ACF:

1.  First, One Million Dollars ($1,000,000.00) to ACF;

2.  The next Five Hundred Thousand Dollars ($500,000) shall be split 50/50, with fifty percent (50%) of the funds received being paid to ACF or its assignee, and fifty percent (50%) of the funds received being paid to the Debtors' estates or their successors; and

3.  All remaining funds received over the amounts set forth in subsections (1) and (2) above, shall be paid to ACF.

iv.  Payment of Professional Fees.    In the event the ACF 363 Sale Transaction occurs, the Parties agree that allowed fees for the estate professionals shall be paid pro rata from the Petition Date and from those certain assets identified on Exhibit "A" (the "**Identified Assets**"), and otherwise such fees shall be paid from the assets and proceeds remaining with the Debtors' estates or their successors after the ACF 363 Sale Transaction.  All fees for the above-mentioned professionals that are payable pursuant to sections 330 or 331 of the Bankruptcy Code or pursuant to the *Order Authorizing Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 331, and Fed. R. Bankr. P. 2016, Authorizing and Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF 660] (the "**Interim Compensation Order**") shall be paid pro rata from the Petition Date after entry of the Final Settlement and Sale Support Order at such time as estate funds from the Identified Assets become available in accordance with the Stipulated Cash Collateral Budget, as defined below.

v.  Stipulated Cash Collateral Budget.  The Parties acknowledge and agree that the Approved Budget attached as Exhibit 1 to the Cash Collateral Order is hereby replaced by that certain budget attached to the Settlement Agreement as Exhibit "B" (the "**Stipulated Cash Collateral Budget**").  From and after entry of the Final Settlement and Sale

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

14

Support Order, any reference to the Approved Budget under the Cash Collateral Order in the Bankruptcy Case shall refer to the Stipulated Cash Collateral Budget.

    vi.  <u>Waiver of Carve-Out</u>.  It is further acknowledged and agreed by the Parties that in consideration for the payment of professional fees as set forth in Section (a)(iv) above, that the professionals retained by the Debtors and the Committee hereby waive any right to payment pursuant to the Carve-Out in the amount not to exceed Three Hundred Thousand Dollars ($300,000), as such term is defined in Section 26 of the Cash Collateral Order.  Without limiting the foregoing, upon entry of the Final Settlement and Sale Support Order, the Parties agree that the Pre-Petition Collateral, as defined in the Cash Collateral Order, shall not be subject to the Carve-Out defined therein.

  b.  <u>Foreclosure</u>.  In the event ACF exercises its right to terminate the Stalking Horse Agreement, the Committee and Debtors, on behalf of themselves and the Debtors' estates, agree that ACF shall have the right, at ACF's option, to either foreclose on its Collateral, or upon ACF's written request, to have the Collateral, inclusive of the Chapter 5 Claims and commercial tort claims, deeded and transferred to ACF, or its assignee (the "**Foreclosure**"). The Committee and the Debtors, on behalf of themselves and the Debtors' bankruptcy estates, agree that the automatic stay, to the extent relief from the stay has not otherwise been granted to ACF under the Cash Collateral Order, is terminated with respect to ACF as to the Collateral and the Hawaii Property without the need for any further Bankruptcy Court orders.  Notwithstanding the foregoing, ACF may seek comfort orders from the Bankruptcy Court, and the Committee and the Debtors shall not file any objections to such relief provided it complies with the terms of the Settlement Agreement.  Notwithstanding the foregoing, ACF agrees that the Collateral to be foreclosed upon, or transferred to ACF, shall exclude the Consumer Business Assets.  Any Foreclosure would include a foreclosure or transfer of the Chapter 5 Claims and commercial tort claims to ACF; provided, however, any and all claims that the Debtors' estates may have against Trustors individually (the "**Petersen Claims**") shall not be part of the Collateral to be foreclosed upon, or transferred to ACF, as part of the Foreclosure.

    i.  <u>Payment of Professional Fees</u>.  In the event the Foreclosure occurs, the Parties agree that allowed fees for the estate professionals shall be paid pro rata from the Petition Date and from the Identified Assets, and otherwise such fees shall be paid from the assets and proceeds remaining with the Debtors' estates or their successors after the Foreclosure.  All fees for the above-mentioned professionals that are payable pursuant to sections 330 or 331 of the Bankruptcy Code or pursuant to the Interim Compensation Order shall be paid pro rata from the Petition Date after entry of the Final Settlement and Sale Support Order at such time as estate funds from the Identified Assets become available in accordance with the Stipulated Cash Collateral Budget.

    ii.  <u>Waiver of Carve-Out</u>.  It is further acknowledged and agreed by the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\115581627

Parties that in consideration for the payment of professional fees as set forth in Section (b)(i) above, that the professionals retained by the Debtors and the Committee hereby waive any right to payment pursuant to the Carve-Out in the amount not to exceed Three Hundred Thousand Dollars ($300,000), as provided in, and as such term is defined in, Section 26 of the Cash Collateral Order.    Without limiting the foregoing, upon entry of the Final Settlement and Sale Support Order, the Parties agree that the Pre-Petition Collateral, as defined in the Cash Collateral Order, shall not be subject to the Carve-Out defined therein.

    c.   <u>Chapter 5 Claims</u>.

        i.  The Assets being purchased by Purchaser shall include the Chapter 5 Claims, which are inclusive of Debtors' commercial tort claims.  The Parties agree that ACF shall have the right to commence and prosecute the Chapter 5 Claims and relief associated therewith in Debtors' Bankruptcy Cases, and the Final Settlement and Sale Support Order shall expressly preserve this right.

       ii.  In the event of an ACF 363 Sale Transaction, any proceeds received by ACF or its assignee on the recovery of any of the Chapter 5 Claims shall be allocated among the ACF or its assignee, and the Committee, in accordance with the following waterfall:

          1.  First, to the payment of all fees, costs and expenses incurred by or on behalf of ACF or its assignee for enforcement and collection of the Chapter 5 Claims;

          2.  Second, Two Hundred Fifty Thousand Dollars ($250,000) shall be repaid to ACF or its assignee to repay the Liquidation Trust Seed Loan, as defined below, to the extent such Liquidation Trust Seed Loan has not already been repaid from other sources of recovery as identified in the Settlement Agreement;

          3.  Third, One Million Five Hundred Thousand Dollars ($1,500,000) recovered shall be paid to ACF or its assignee; and

          4.  Fourth, all remaining recoveries over the amounts set forth in subsections (1), (2) and (3) above, shall be split 50/50, with fifty percent (50%) of the recovered amounts being paid to ACF or its assignee, and fifty percent (50%) of the recovered amounts being paid to the Debtors' estates or their successors.

      iii.  In the event of a Foreclosure and subsequent acquisition by ACF as a part of such Foreclosure of the Chapter 5 Claims, which are inclusive of Debtors' commercial tort claims but exclusive of any Petersen Claims, any proceeds received by ACF or its assignee on the recovery

16

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

of any of the Chapter 5 Claims shall be allocated among the ACF or its assignee, and the Committee, in accordance with the following waterfall:

1.  First, to the payment of all fees, costs and expenses incurred by or on behalf of ACF or its assignee for enforcement and collection of the Chapter 5 Claims;

2.  Second, Two Hundred Fifty Thousand Dollars ($250,000) shall be repaid to ACF or its assignee to repay the Liquidation Trust Seed Loan, to the extent such Liquidation Trust Seed Loan has not already been repaid from other sources of recovery as identified in the Settlement Agreement;

3.  Third, the next Four Million Dollars ($4,000,000) of recoveries shall be split 90/10, with ninety percent (90%) of the recovered amounts being paid to ACF or its assignee, and ten percent (10%) of the recovered amounts being paid to the Debtors' estates or their successors; and

4.  Fourth, all remaining recoveries over the amounts set forth in subsections (1), (2) and (3) above, shall be split 75/25, with seventy-five percent (75%) of the recovered amounts being paid to ACF or its assignee, and twenty-five percent (25%) of the recovered amounts being paid to the Debtors' estates or their successors.

5.  All funds to be paid under this Section shall be paid within five (5) business days of receipt of such funds by any Party.

d.  <u>Support of TD Venture 9019 Motion; Hawaii Property.</u>

i.  Immediately upon entry of a written order by the Bankruptcy Court approving the 9019 Settlement and Sale Support Motion, provided no objections were made to the 9019 Settlement and Sale Support Motion or all such oppositions are resolved and/or withdrawn at the hearing on the 9019 Settlement and Sale Support Motion, the Committee shall withdraw the Committee Objection and agree to affirmatively support the TD Venture 9019 Motion and transactions completed under the Settlement Agreement. In the event any oppositions made to the 9019 Settlement and Sale Support Motion were not so resolved or withdrawn prior to such entry of the written order by the Bankruptcy Court, then the Committee shall withdraw the Committee Objection and agree to affirmatively support the TD Venture 9019 Motion and transactions completed under the Settlement Agreement, at such time as the written order by the Bankruptcy Court approving the 9019 Settlement and Sale Support Motion becomes a final, non-appealable order.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

ii. Upon approval by the Bankruptcy Court of the TD Venture 9019 Motion, the Hawaii Property will be transferred to ACF or its assignee, as provided for under the Settlement Agreement. The net proceeds from the subsequent liquidation of the Hawaii Property by ACF or its assignee will be allocated as set forth in subsections (iii) or (iv) below, as applicable, after all transaction and closing fees and costs from the sale of the Hawaii Property are paid, including reimbursement and payment for the carry costs of the Hawaii Property, which carry costs shall include reimbursement to ACF for payment of the debt service on the senior loan on the Hawaii Property and costs and expenses for security and maintenance, but shall be subject to any adjustment for any rental income actually received by ACF from the Hawaii Property (the "**Hawaii Property Net Proceeds**").

iii. In the event the ACF 363 Sale Transaction occurs, the Hawaii Property Net Proceeds shall be allocated among ACF, or its assignee, and the Committee, in accordance with the following waterfall:

1. The first Four Million Dollars ($4,000,000) to ACF, or its assignee;

2. The next Five Hundred Thousand Dollars ($500,000) shall be split 50/50, with fifty percent (50%) of the amount being paid to ACF or its assignee, and fifty percent (50%) of the amount being paid to the Debtors' estates or their successors; and

3. All remaining Hawaii Property Net Proceeds over the amounts set forth in subsections (1) and (2) above, shall be paid to ACF, or its assignee.

iv. In the event the Foreclosure occurs, the Hawaii Property Net Proceeds shall be allocated among ACF, or its assignee, and the Committee, in accordance with the following waterfall:

1. The first Three Million Five Hundred Thousand Dollars ($3,500,000) to ACF, or its assignee; and

2. All remaining Hawaii Property Net Proceeds shall be split 50/50, with fifty percent (50%) of the amount being paid to ACF or its assignee, and fifty percent (50%) of the amount being paid to the Debtors' estates or their successors.

v. All funds to be paid under this Section shall be paid within five (5) business days of receipt of such funds by any Party.

e. <u>Liquidating Trust</u>.

i. Upon entry of the Final Settlement and Sale Support Order by the Bankruptcy Court, Debtors shall prepare a liquidating plan of

18

reorganization and disclosure statement, in form and substance satisfactory to the Debtors, the Committee and ACF, in their reasonable discretion (the "**Plan**"), which Plan shall ratify 9019 Settlement and Sale Support Order, as defined below.  The Plan shall establish a liquidating trust (the "**Liquidating Trust**") pursuant to a liquidating trust agreement in form and substance satisfactory to the Debtors, the Committee and ACF, in their reasonable discretion.  The Plan will provide that any assets remaining in the Debtors' estates after the ACF 363 Transaction as of the time the Plan goes effective will be transferred to the Liquidating Trust.  The Liquidating Trust shall serve as the successor to the Debtors' estates.  Provided the Plan proponent complies with Sections 1125 and 1126 of the Bankruptcy Code and so long as the Plan maintains the Release of Claims and is otherwise in compliance with the Settlement Agreement, ACF agrees to support the prosecution and vote in favor of the Plan.

ii.  Upon establishment of the Liquidating Trust pursuant to an approved Bankruptcy Court order, ACF shall loan the Liquidating Trust Two Hundred Fifty Thousand Dollars ($250,000) in order to initially fund the Liquidating Trust (the "**Liquidating Trust Seed Loan**"), which shall be repaid only from the sources of recovery set forth in Sections (c)(2) & (c)(3) above.

iii.  The amount of ACF's Secured Claim that does not become part of the ACF credit bid or the amount determined satisfied for purposes of the Foreclosure, as more particularly set forth in the Settlement Agreement, shall be treated as an unsecured claim in the Bankruptcy Case (the "**ACF Unsecured Claim**").  The ACF Unsecured Claim shall be offset by the Hawaii Property Net Proceeds allocated to ACF pursuant to Section (d) above.

iv.  In the event of an ACF 363 Sale Transaction, the following provisions shall apply:

1.  ACF agrees to subordinate the ACF Unsecured Claim to all other allowed general unsecured claims in the Bankruptcy Case, except to the extent of any agreed payments of proceeds or recoveries specifically set forth in the Settlement Agreement and except as to any recovery under the Petersen Claims, which shall be split 50/50, with fifty percent (50%) of the amount being paid to ACF or its assignee, and fifty percent (50%) of the amount being paid to the Debtors' estates or, upon the confirmation of the Plan, the Liquidating Trust.

2.  Without limiting the foregoing, in the event of an ACF 363 Sale Transaction, ACF shall not participate in any recoveries received by, or distributions to be made from the Liquidating Trust, except to the extent of any agreed payments of proceeds or recoveries specifically set forth in the Settlement

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\115581627

Agreement and except as to any recovery under the Petersen Claims, subject to any pro-rata distribution made to ACF on account of the ACF Unsecured Claim, to the extent any funds are available for distribution to the ACF Unsecured Claim.

3. Any additional amounts or recoveries received by the Debtors' estates or the Liquidating Trust from the Trustors shall be split 50/50, with fifty percent (50%) of the amount being paid to ACF or its assignee, and fifty percent (50%) of the amount being paid to the Debtors' estates or, upon confirmation of the Plan, the Liquidating Trust.

v. In the event of a Foreclosure, the following provisions shall apply:

1. None of the proceeds received by the Debtors' estates or the Liquidating Trust on the recovery of any of the Petersen Claims shall be allocated to ACF, subject to any pro-rata distribution made to ACF on account of the ACF Unsecured Claim, to the extent any funds are available for distribution to the ACF Unsecured Claim.

2. The Debtors or the Liquidating Trust (as applicable) and ACF shall enter into a funding, prosecution and sharing agreement with respect to the funding, control and allocation of recoveries of the claims to be held by the Debtors' estates or the Liquidating Trust (as applicable), which include D&O covered claims and the Petersen Claims, which agreement shall specifically provide that [ACF maintains control over the commencement and prosecution of the Chapter 5 Claims, at ACF's sole discretion] and shall allocate the split with respect to recoveries received by the Debtors' estates or the Liquidating Trust between the Debtors' estates or the Liquidating Trust (as applicable) and ACF, and shall otherwise be in form and substance acceptable to the Debtors and the Committee or, upon confirmation of the Plan, the Liquidating Trust and ACF, in their reasonable discretion.

f. Release of Claims. Effective immediately upon entry of the Final Settlement and Sale Support Order by the Bankruptcy Court, the Debtors and the Debtors' bankruptcy estates, and all those claiming through them or on their behalf, including, but not limited to, trustees, officers, directors, owners, shareholders, parents, subsidiaries, affiliates, members, partners, managers, employees, personal representatives, clients, attorneys, agents, spouses (current or former), executors, successors, or assigns (the "**Releasing Parties**"), hereby release, acquit, relieve and forever discharge ACF, and its trustees, officers, directors, owners, shareholders, parents, subsidiaries, affiliates, members, partners, managers, employees, personal representatives, clients, attorneys, agents, spouses (current or former), executors, successors, or assigns (the "**Released Parties**") from, and covenant not to directly or indirectly sue for or otherwise assert against

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

the Released Parties, in any forum, any and all claims, rights, actions, complaints, demands, causes of action, obligations, promises, contracts, covenants, agreements, controversies, suits, debts, expenses, damages, liens, attorneys' fees, costs, losses, judgments, costs of litigation and suits, interests, orders and/or liabilities of any nature whatsoever, whether arising at law or equity, whether or not now known, asserted or non-asserted, suspected or unsuspected, pending or threatened, matured or unmatured, fixed or contingent (collectively, "**Claims**"), which the Releasing Parties had, now have, or may claim to have against the Released Parties (either directly or indirectly), arising out of, or related to Claims asserted or which could have been asserted with respect to such Releasing Party's Claims in the Bankruptcy Case, or in any other action or proceeding, or any other act, event, occurrence, or matter whatsoever related to (i) the settlement of the Claims, (ii) the Bankruptcy Case, and/or (iii) the relationship and/or alleged relationship between the Releasing Parties and the Released Parties with regard to the Claims asserted or which could have been asserted with respect to such Releasing Party's Claims in the Bankruptcy Case (the "**Release of Claims**").

<u>See</u> Perea Declaration, Exhibit 1.

34.     The conditions precedent to the Settlement Agreement include:

a.  Debtors shall file a motion to approve the Settlement Agreement under Bankruptcy Rule 9019 of the Bankruptcy Code, no later than October 28, 2020, in form and substance satisfactory to the Debtors, the Committee and ACF, in their reasonable discretion (the "**9019 Settlement and Sale Support Motion**"), which the Parties agree to be heard on shortened notice.

b.  The Final Settlement and Sale Support Order, in form and substance satisfactory to the Debtors, the Committee and ACF, in their reasonable discretion, shall have been entered by the Bankruptcy Court, no later than November 13, 2020.

<u>See</u> Perea Declaration, Exhibit 1.

35.     The DIP Factor has consented to the segregation and use of the proceeds of the Identified Assets on the terms set forth in the DIP Factor Limited Consent annexed as Exhibit 2 to the Perea Declaration.  <u>See</u> Perea Declaration, Exhibit 1, pp. 21-22.

**V.**

**LEGAL AUTHORITY**

**A.**    <u>**Legal Standard.**</u>

"Compromises are a normal part of the process of reorganization."  <u>Protective Comm. for</u>

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations and internal quotation marks omitted).  Accordingly, Bankruptcy Rule 9019 provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

The Court is afforded "great latitude in approving compromise agreements."  Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1380-81 (9th Cir. 1986).  Moreover, "[t]he law favors compromise and not litigation for its own sake . . . ."  Id. at 1381.  Accordingly, to approve a settlement agreement, a bankruptcy court need not conduct a mini-trial on the merits of the claims or an exhaustive investigation into the underlying dispute between the parties.  United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).  It is sufficient that the court find that the settlement was negotiated in good faith and that it is fair and equitable.  A&C Props., 784 F.2d at 1381.

The Ninth Circuit has identified four factors that a bankruptcy court must consider in determining whether a proposed settlement agreement is reasonable, fair and equitable:

> (a)  the probability of success in the litigation;
>
> (b)  the difficulties, if any, to be encountered in the matter of collection;
>
> (c)  the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
> (d)  the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

A & C Props., 784 F.2d at 1381 (citations omitted).

In considering these factors, bankruptcy courts need only canvass the issues, not decide disputed facts and questions of law.  See Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997).  "If the court were required to do more than canvass the issue[s], 'there would be no point in compromising; the parties might as well go ahead and try the case.'"  Suter v.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Goedert (In re Suter), 396 B.R. 535, 548 (D. Nev. 2008) (quoting 10 Collier on Bankruptcy, ¶ 9019.02).    Additionally, "while creditors' objections to a compromise must be afforded due deference, such objections are not controlling." A & C Props., 784 F.2d at 1382.    Indeed, the settlement need not be the best that could have been achieved, but only must not fall "below the lowest point in the range of reasonableness." In re Pac. Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (quoting In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citations and internal quotation marks omitted)); accord Redwood Trust v. Am. Bldg. Storage, LLC (In re Am. Bldg. Storage, LLC), No. CC-06-1259-MOPAD, 2007 WL 7532281, at *5 (B.A.P. 9th Cir. Apr. 2, 2007) (not for publication).

**B.    The *A&C Properties* Factors Weigh in Favor of Approving the Settlement Agreement.**

The Settlement Agreement should be approved because the A&C Properties factors favor the approval.    The Debtors believe that the Settlement Agreement is in the best interests of all of their estates and creditors and therefore should be approved.    Specifically, if the Settlement Agreement is approved, then the Parties can proceed promptly to the 363 Sale, thus saving significant not only legal fees and expenses associated with an objection from the Committee, but also preventing the liquidation of the Debtors under chapter 7 that would likely ensue from the delay engendered by litigation.    The Debtors' business and financial position has substantially deteriorated during the pendency of the Bankruptcy Case and given the exigent circumstances surrounding the Debtors, the Parties are extremely concerned that the Debtors will be required to liquidate through chapter 7 proceedings which will not maximize value for creditors if an auction is not conducted immediately for a 363 Sale of the Debtors' Assets in accordance with the timeline set forth in the Letter of Intent. See Perea Declaration, ¶ 28 & Exhibit 1.

Moreover, approval of the Settlement Agreement will resolve the Committee Objection to the TD Venture 9019 Motion and clear the way for its prompt approval.    By divesting the Hawaii Property and the Membership Interest through the TD Venture Settlement Agreement, TD Venture will not only be able to reduce the balance of the Loan for the collective benefit of the Borrowing Debtors' estates, but it will also shed non-income producing assets that it does not have the financial wherewithal to maintain. See Perea Declaration, ¶ 29.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\115581627

Each of the A&C Properties factors is analyzed below:

- First, with respect to the probability of success in litigation, the Debtors believe that Parties have put forth solid arguments and evidence to support their positions with respect to the 363 Sale and TD Venture 9019 Motion. While the Debtors believe that the evidence presented thus far demonstrated a reasonable likelihood of success on contested issues before the Court, there is always uncertainty with litigation, and resolving the issues will provide Debtors with the ability to proceed promptly to a resolution of the Bankruptcy Case via the 363 Sale, the TD Venture Settlement Agreement, and the establishment of the Liquidating Trust in a manner that does not prejudice them, their estates or any other creditor. See Perea Declaration, ¶ 30.

- Second, with respect to any difficulties to be encountered in the matter of collections, this factor does not apply to this Court's analysis of the Settlement Agreement, as there are no amounts owed to the Debtors which are affected by this settlement. See Perea Declaration, ¶ 31.

- Third, "the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it," is arguably the most important factor when analyzing the pending Settlement Agreement. If the Settlement Agreement is not approved or does not become effective for any reason, resolution of the pending disputes between the Parties not only will require a substantial investment of Debtors' time and resources (see Scheduled Discovery), but the ensuing delay will likely force a chapter 7 liquidation of the Debtors' assets to the detriment of the Debtors, their creditors and estates. See Perea Declaration, ¶ 32.

- Finally, when analyzing the paramount interest of the creditors and a proper deference to their reasonable views in the premises, it is of utmost importance to note that the Committee and the Debtors' largest creditor have approved the terms of the Settlement Agreement after extensive negotiations. Moreover, the DIP Factor has given its Limited Consent to the Settlement Agreement. The terms of the Settlement Agreement were reached in good faith, and with the goal of reaching a compromised

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

resolution so that the Bankruptcy Case can proceed to a prompt resolution. <u>See</u> Perea Declaration, ¶ 33.

Therefore, it is in the Debtors' and their creditors' best interests to proceed with the Settlement Agreement on the terms set forth above and detailed in the Settlement Agreement itself.

## VI.

## NOTICE

Notice of this Motion will be served upon: (a) the Office of the United States Trustee for the District of Nevada; (b) counsel to the Committee; (c) counsel to ACF; (d) counsel to the DIP Factor; (e) all secured creditors; and (f) all parties that have filed a request for special notice in the Bankruptcy Case, pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary and that any additional notice should be excused.

## VII.

## CONCLUSION

The Settlement Agreement should be approved for the reasons set forth above. The Settlement Agreement is fair and equitable and was by all accounts negotiated in good faith and otherwise satisfactorily meets the Ninth Circuit's test for approving compromises of controversies under Bankruptcy Rule 9019.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that this Court enter an Order, in the form attached as **Exhibit A** hereto: (i) approving the Settlement Agreement; (ii) authorizing the Debtors to take all actions contemplated by the Settlement Agreement; and (iii) granting such further relief as the Court deems just and proper.

DATED this 28th day of October, 2020.

**FOX ROTHSCHILD LLP**

By:    _/s/Brett A. Axelrod_
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    *Counsel for Debtors*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\115581627

**EXHIBIT A**
**\*\*PROPOSED ORDER\*\***

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for Debtors*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-20-12814-mkn |
| RED ROSE, INC., | Jointly Administered with<br>Case No. BK-S-20-12815-mkn |
| ☐ Affects Beachhead Roofing and Supply, Inc. | Case No. BK-S-20-12816-mkn |
| ☐ Affects California Equipment Leasing<br>    Association, Inc. | Case No. BK-S-20-12818-mkn<br>Case No. BK-S-20-12819-mkn |
| ☐ Affects Fences 4 America, Inc. | Case No. BK-S-20-12820-mkn |
| ☐ Affects James Petersen Industries, Inc. | Case No. BK-S-20-12821-mkn |
| ☐ Affects PD Solar, Inc. | Case No. BK-S-20-12822-mkn |
| ☐ Affects Petersen Roofing and Solar LLC | Case No. BK-S-20-12823-mkn |
| ☐ Affects Petersen-Dean, Inc. | Case No. BK-S-20-12824-mkn |
| ☐ Affects PetersenDean Hawaii LLC | Case No. BK-S-20-12825-mkn |
| ☐ Affects PetersenDean Roofing and Solar<br>    Systems, Inc. | Case No. BK-S-20-12826-mkn<br>Case No. BK-S-20-12827-mkn |
| ☐ Affects PetersenDean Texas, Inc. | Case No. BK-S-20-12829-mkn |
| ☐ Affects Red Rose, Inc. | Case No. BK-S-20-12831-mkn |
| ☐ Affects Roofs 4 America, Inc. | Case No. BK-S-20-12833-mkn |
| ☐ Affects Solar 4 America, Inc. | |
| ☐ Affects Sonoma Roofing Services, Inc. | Chapter 11 |
| ☐ Affects TD Venture Fund, LLC | |
| ☐ Affects Tri-Valley Supply, Inc. | **ORDER GRANTING DEBTORS'** |
| ☒ Affects All Debtors | **MOTION FOR APPROVAL OF** |
| | **COMPROMISE, PURSUANT TO FED.** |
| | **R. BANKR. P. 9019, BY AND AMONG** |
| | **DEBTORS, ACF FINCO I, LP AND THE** |
| | **OFFICIAL COMMITTEE OF** |
| | **UNSECURED CREDITORS** |
| | |
| | Hearing Date:<br>Hearing Time: |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\115581627

The Court, having reviewed and considered the Debtors' Motion[5] for an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, for approval of the Settlement Agreement as more fully set forth in the Motion; and upon consideration of the *Declaration of Jeffrey C. Perea* in support thereof; and the Debtors having appeared by and through their counsel, Fox Rothschild LLP, and all other appearances having been noted on the record; the Court having stated its findings of fact and conclusions of law on the record at the hearing on the Motion, which findings of fact and conclusions of law are incorporated herein by this reference in accordance with Federal Rule of Civil Procedure 52, as made applicable by Bankruptcy Rule 9014; and it appearing that the relief requested is warranted on the grounds, among others, that the Settlement Agreement: (a) was negotiated in good faith and is fair and equitable, (b) contemplates an immediate resolution of the resolves claims or disputes between the Parties on terms favorable to the Debtors, their creditors and their estates; (c) avoids litigation which could prove to be protracted and expensive; and (d) is in the best interests of the Debtors, their creditors and estates because it resolves any claims or disputes between the Parties without the incurrence of additional expense and paves the way for the prompt resolution of the Bankruptcy Case via the 363 Sale, the TD Venture Settlement Agreement, and the establishment of the Liquidating Trust; after due deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED** that the Motion is GRANTED; and

**IT IS FURTHER ORDERED** that:

1.      The Settlement Agreement is approved;

2.      The Debtors are authorized to take all actions contemplated by the Settlement Agreement;

3.      This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

---

[5] All capitalized, undefined terms shall have the meaning ascribed to them in the *Debtors' Motion for Approval of Settlement, Pursuant to Fed. R. Bankr. P. 9019, by and Among Debtors, ACF Finco I LP and the Official Committee of Unsecured Creditors* (the "**Motion**").

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Prepared and Respectfully Submitted by:

**FOX ROTHSCHILD LLP**

By____*/s/Brett A. Axelrod*_____

    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    Telephone: (702) 262-6899
*Counsel for Debtors*


APPROVED/DISAPPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

BY: _____
    Edward M. McDonald, Jr.
    Trial Attorney for United States Trustee,
    Tracy Hope Davis


### <u>CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021</u>

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐    The Court has waived the requirement of approval in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion

☒    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

        EDWARD M. MCDONALD, JR.,
        OFFICE OF THE UNITED STATES
        TRUSTEE

        _Approved / Disapproved_

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Active\115581627